## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: PRUDENTIAL FINANCIAL, INC. DATA BREACH LITIGATION | Case No. 2:24-cv-06818-SRC-AME |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. iii

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL BACKGROUND ......................................................................................1

III.  TERMS OF THE PROPOSED SETTLEMENT ........................................................2

      A.  Settlement Class Definition ..............................................................................2

      B.  Monetary Benefits to Settlement Class Members.............................................2

      C.  Class Representative Awards, Attorneys' Fees, and Litigation Expenses..............4

      D.  The Proposed Notice Program and Claims Administration.................................4
          1.  Direct Notice to the Settlement Class .................................................4
          2.  Settlement Website ..............................................................................5
          3.  Opt-Outs and Objections......................................................................5

IV.   ARGUMENT AND AUTHORITIES .........................................................................6

      A.  The Settlement is "Fair, Reasonable, and Adequate" and Satisfies the
          Requirements of Rule 23(e)(2) and the Third Circuit's *Girsch* Factors .................6
          1.  Plaintiffs and Class Counsel Have Adequately Represented the Class ............7
          2.  The Settlement Was Negotiated at Arms'-Length.............................8
          3.  The Benefits Provided to the Class are Adequate...............................9
              i.    Costs, risks, and delay of trial and appeal..................................9
              ii.   Method of distributing relief to the Class .............................10
              iii.  Attorney's Fees and Expense Reimbursement Request..........................10
              iv.   Agreement Regarding Percentage of Opt-Outs Triggering
                    Prudential's Unilateral Right to Terminate the Agreement ...................11
          4.  The Settlement Treats Class Members Equitably.............................11

      B.  Certification of the Settlement Class is Appropriate ...........................................12
          1.  The Proposed Settlement Class is Ascertainable .............................13
          2.  The Certification Criteria of Rule 23(a) Are Satisfied....................13
          3.  The Rule 23(b) Certification Requirements Are Satisfied..............................15

      C.  The Court Should Approve the Proposed Notice Plan ..........................................16

i

D.  The Court Should Provisionally Appoint Class Counsel ......................................18

CONCLUSION ...........................................................................................................................18

# TABLE OF AUTHORITIES

*Cases*

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
  568 U.S. 455 (2013) ....................................................................................................15

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ...............................................................................................13, 15

*Bredbenner v. Liberty Travel, Inc.,*
  2011 WL 1344745 (D.N.J. Apr. 8, 2011) ...................................................................8

*C.P. v. N.J. Dep't of Educ.,*
  2022 WL 3572815 (D.N.J. Aug. 19, 2022) ...............................................................13

*Chiang v. Veneman,*
  385 F.3d 256 (3d Cir. 2004) ......................................................................................14

*Cullen v. Whitman Med. Corp.,*
  197 F.R.D. 136 (E.D. Pa. Oct. 3, 2000) ....................................................................11

*Ehrheart v. Verizon Wireless,*
  609 F.3d 590 (3d Cir. 2010) ........................................................................................6

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ...................................................................................................17

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) ................................................................................6, 7, 9

*In re Am. Fam. Enters.,*
  256 B.R. 377 (D.N.J. 2000) .........................................................................................7

*In re AremisSoft Corp. Sec. Litig.,*
  210 F.R.D. 109 (D.N.J. 2002) ......................................................................................7

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ........................................................................................9

*In re Ins. Brokerage Antitrust Litig.,*
  282 F.R.D. 92 (D.N.J. 2012) ........................................................................................8

*In re Nat'l Football League Players Concussion Injury Litig.,*
  821 F.3d 410 (3d Cir. 2016) ......................................................................................14

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) .................................................................................10, 16

iii

*In re Schering-Plough/Merck Merger Litig.*,
    2010 WL 1257722 (D. N.J. Mar. 26, 2010) ................................................................... 7

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
    967 F.3d 264 (3d Cir. 2020) ....................................................................................... 14

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
    2023 WL 1818922 (D.N.J. Feb. 8, 2023) ................................................................... 14

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ......................................................................................... 6

*Marcus v. BMW of N. Am. LLC*,
    687 F.3d 583 (3d Cir. 2012) ....................................................................................... 13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ................................................................................................... 17

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F.3d 353 (3d Cir. 2015) ....................................................................................... 16

*Pro v. Hertz Equip. Rental Corp.*,
    2013 WL 3167736 (D.N.J. June 20, 2013) ................................................................. 9

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) ....................................................................................... 14

*Sanders v. CJS Sols. Grp., LLC*,
    2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) .............................................................. 8

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ....................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................... 13

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
    899 F. Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995) ........................... 9

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................... 13, 14

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 13

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 13

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 14

Fed. R. Civ. P. 23(a)(4) ......................................................................................................... 14

Fed. R. Civ. P. 23(b) ............................................................................................................... 13

Fed. R. Civ. P. 23(b)(3) ............................................................................................... 13, 15, 16

Fed. R. Civ. P. 23(c)(2) ........................................................................................................... 17

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................... 17

Fed. R. Civ. P. 23(e) ............................................................................................................... 11

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................................... 17

Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 6

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................................ 7

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................................ 9

Fed. R. Civ. P. 23(e)(3) ........................................................................................................... 11

Fed. R. Civ. P. 23(g)(3) ........................................................................................................... 18

Fed. R. Civ. P. 23(g)(3)(1) ....................................................................................................... 18

## I.     INTRODUCTION

Plaintiffs respectfully move under Rule 23, for preliminary approval of a class action settlement between themselves and Defendant Prudential Financial, Inc. ("Prudential," together with Plaintiffs, the "Parties"). The proposed Class Action Settlement Agreement (the "Agreement" or "Settlement Agreement" or "SA"), if approved, will resolve the claims asserted by Plaintiffs and the Settlement Class and will provide substantial monetary relief to Settlement Class Members whose personal information and personal health information ("PHI") were impacted in a data security incident occurring on or about February 4, 2024 (the "Data Breach").

## II.    FACTUAL BACKGROUND

Prudential is a financial services company that provides retail and institutional clients with a range of services, including insurance, retirement and investment management. As such, Prudential collects, maintains, and stores its clients' personally identifiable information ("PII") and PHI. Plaintiffs are all current or former clients of Prudential.

Plaintiffs allege that on or about February 4, 2024, an unauthorized third party committed a ransomware attack, resulting in the exfiltration of the PII and PHI of approximately 2,556,210 individuals, including Plaintiffs and Class Members (the "Data Incident"). The contents of the Data Incident included personal information such as: full names, Social Security numbers, physical addresses, email addresses, dates of birth, phone numbers, health information, account numbers, credit card numbers, and Prudential ID numbers. On or about March 29, 2024, Prudential began notifying impacted individuals of the Data Incident.

On June 7, 2024, Plaintiff Connie Boyd filed the first putative class action lawsuit against Prudential in the District of New Jersey. Subsequently, six (6) related putative class action lawsuits were filed against Prudential in the District of New Jersey. On July 24, 2024, following earlier consolidation of the first two filed cases, proposed Co-Lead Class Counsel sought to consolidate

1

the remaining five (5) related class action lawsuits that were filed against Prudential in the District of New Jersey, three of which were voluntarily dismissed. On September 6, 2024, the District Court of New Jersey consolidated the remaining cases filed against Prudential concerning the Data Incident.

On October 17, 2024, Plaintiffs filed their Consolidated Class Action Complaint in the District of New Jersey. In response, on December 16, 2024, Prudential filed a Motion to Dismiss ("MTD"), which the Parties mutually agreed to stay pending mediation.

On March 17, 2025, the Parties engaged in mediation with experienced mediator and former Chief Judge of the District Court of New Jersey, the Honorable Freda L. Wolfson (Ret.) (the "Mediator"). The Parties engaged in extensive arm's-length settlement negotiations concerning a settlement of Plaintiffs' claims, ultimately resulting in a settlement.

Prudential did not discuss attorneys' fees, costs and expenses, nor service awards for Plaintiffs at any time, and Class Counsel did not discuss attorneys' fees, costs and expenses, nor service awards for Plaintiffs among themselves prior to reaching an agreement as to the material terms of the relief for Settlement Class Members.

## III.    TERMS OF THE PROPOSED SETTLEMENT

### A.    Settlement Class Definition

For Settlement purposes only, Plaintiffs seek certification of the following class:

All living individuals within the United States of America whose Private Information was compromised in the Data Incident.

### B.    Monetary Benefits to Settlement Class Members

The Settlement Agreement provides meaningful relief in the form of significant monetary compensation from a $4.75 million non-reversionary Settlement Fund to Settlement Class

Members who choose to take advantage of the Settlement. *See* Declaration of Kevin Laukaitis, attached herewith ("Laukaitis Decl."), SA ¶¶ 1.5, 3.35, 3.36.

All Settlement Class Members may select one of four methods to obtain monetary benefits under the Settlement. First, Settlement Class Members may elect to submit a claim for up to Five Thousand Dollars and Zero Cents ($5,000.00) for reimbursement of expenses or eligible losses in the form of Documented Out-of-Pocket Losses. SA, ¶¶ 3.17, 4.4. To receive a Documented Loss Payment, Settlement Class Members must submit a valid Claim Form that includes documentation supporting the loss and evidencing the loss incurred (such as receipts). *Id.*

Alternatively, Settlement Class Members may elect to submit a claim for one of three buckets of cash relief, as prescribed by Section 4.5 of the Settlement Agreement:

*SSN/TIN Impact Payments.* (SA, ¶¶ 3.45, 4.5). Certain Settlement Class Members may elect to receive SSN/TIN Impact Payments. For the approval of this benefit, the Settlement Administrator must confirm that the individual had their Social Security or Tax Identification Number exposed in the Data Incident. *Id.*

*CCPA Payments*. (SA, ¶¶ 3.6, 4.5). Certain Settlement Class Members may elect to submit a claim for CCPA Impact Payments. To receive CCPA Impact Payments, the individual must reside in California and the Settlement Administrator must confirm with the Settlement Administrator that the individual had their Driver's License, Passport, Non-U.S. National Identification Number, or Government ID number, or credit or debit card information or number, or health information exposed in the Data Incident. *Id.*

*Pro Rata Cash Payments.* Finally, in lieu of receiving SSN/TIN Impact Payments, or CCPA Impact Payments, Settlement Class Members, including those ineligible for SSN/TIN Impact Payments or CCPA Impact Payments, may elect to submit a claim for Pro Rata Cash

Payments. SA, ¶¶ 3.32, 4.5. The amount of the Pro Rata Cash Payments is to be calculated based on the funds remaining in the Settlement Fund following the payment of expenses, Fees and Awards, after payment of Documented Out-of-Pocket Losses, and based on the total number of claimants within each of the cash relief buckets. In no event will the Pro Rata Cash Payments be *per capita* greater than *per capita* SSN/TIN Impact Payments or CCPA Payments. *Id.*

### C.    Class Representative Awards, Attorneys' Fees, and Litigation Expenses

In recognition of the Class Representatives' service to the Class, Plaintiffs move the Court for an order awarding the application of a Class Representative Award not to exceed Two Thousand Dollars and Zero Cents ($2,000.00) per Class Representative. *Id.* ¶ 11.2. The Settlement Administrator will pay any Class Representative Awards ordered by the Court from the Settlement Fund. *Id.*

Plaintiffs will also move the Court for an order awarding Class Counsels' application of attorneys' fees, costs, and expenses in an amount not to exceed Thirty-Three percent (33%) or One Million Five Hundred and Eighty-Six Thousand Seven Hundred and Fifty Dollars ($1,586,750.00) of the Settlement Fund. *Id.* ¶ 11.1. The Settlement Administrator will pay any Fees and Expenses Award ordered by the Court from the Settlement Fund. *Id.*

### D.    The Proposed Notice Program and Claims Administration

After a competitive bidding process, the Parties mutually agreed to retain Simpluris, Inc. (the "Settlement Administrator") to perform settlement administration and notice services, subject to Court approval, the costs of which will be paid from the Settlement Fund. *Id.* ¶ 3.38.

#### 1.    Direct Notice to the Settlement Class

Plaintiffs propose individually notifying each Settlement Class Member via e-mail for Settlement Class Members for whom the Settlement Administrator has a valid email address or

through direct notice by U.S. Mail for Settlement Class Members for whom an email address is not available. *Id.* ¶ 6.3. Prudential will provide the name and last known mailing and/or email address of each known Class Member where available within ten (10) business days of the entry of the Preliminary Approval Order. *Id.* ¶ 6.2. Within twenty-five (25) days following receipt of the Settlement Class Members' data, the Settlement Administrator shall provide Short Form Notice to all Settlement Class Members via physical address or email address where available. *Id.* ¶ 6.3. An electronic version of the Short and Long Form Notices and the Claim Form shall also be provided on the Settlement Website. *Id.* If any Notice is returned as undeliverable, the Settlement Administrator shall re-mail the Short Form Notice to an updated address where available. *Id.*

The Notices to be sent to Settlement Class Members shall include a description of the material terms of the Settlement; the date by which Settlement Class Members may submit a claim; the date by which Settlement Class Members may object to or opt out of the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website. *Id.* at Exs. 2-3. Notice will also be posted on the Settlement Website. *Id.* ¶ 6.3. Settlement Members may submit their Claim Forms through the Settlement Website or by mail. *Id.* ¶¶ 3.7 and 6.3.

### 2.    The Settlement Website

The Settlement Administrator will establish a Settlement Website, which will contain pertinent Settlement information and will provide links to relevant case documents. *Id.* ¶ 6.3.

### 3.    Opt-Outs and Objections

All of the Notice documents shall explain: (i) the procedure by which a Settlement Class Member may exclude themselves from the Settlement prior to the Opt-Out Deadline; and (ii) the procedure for a Settlement Class Member to object to the Settlement or Plaintiffs' Counsel's

applications for awards of attorneys' fees or Service Awards to Representative Plaintiffs prior to the Objection Deadline. *Id.* at Exs. 2–3. The Notice shall also make clear that a Settlement Class Member may not both Opt-Out of the Settlement and also object to the Settlement. The proposed Opt-Out and Objection Deadlines are sixty (60) days after the date of the mailing of the Class Notice. *Id.* ¶ 3.20.

## IV.    ARGUMENT AND AUTHORITIES

### A.    The Settlement is "Fair, Reasonable, and Adequate" and Satisfies the Requirements of Rule 23(e)(2) and the Third Circuit's *Girsch* Factors

It is well established in this Circuit that the settlement of class action litigation is both favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

Rule 23(e)(2) sets forth the factors courts must consider in determining the fairness of a proposed class action settlement, including whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate  . . .; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). These factors overlap with those set forth by the Third Circuit in *Girsh*, which include:

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). The *Girsh* factors "are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D. N.J. Mar. 26, 2010) (quoting *In re Am. Fam. Enters.*, 256 B.R. 377, 418 (D.N.J. 2000)).

Here, the proposed Settlement satisfies each requirement of Rule 23(e) and satisfies all the *Girsch* factors.

### 1. Plaintiffs and Class Counsel Have Adequately Represented the Class

Pursuant to Rule 23(e)(2)(A), the Court considers whether the class representatives and class counsel adequately represented the class. Here, Plaintiffs, as the putative Class Representatives, have represented the Class admirably. They made themselves available to Class Counsel when necessary, reviewed filings, provided Class Counsel with documents and other evidence, and helped prosecute this case diligently. Laukaitis Decl. ¶ 17.

Class Counsel who negotiated the proposed Settlement on behalf of Plaintiffs are experienced and respected class action litigators with significant experience in data breach cases. *See id.* ¶ 15; *see also id.* at Exs. B-F (firm resumes). Prior to mediation, the Parties engaged in meaningful informal discovery, exchanging documents and information related to the composition of the Settlement and Prudential's investigation of the Data Breach. Laukaitis Decl. ¶ 7; *see also In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 124 (D.N.J. 2002) (approving settlement as fair and reasonable after class counsel "engaged in careful and extensive research, investigation, and analysis of the facts and circumstances surrounding the conduct of [Defendants'] business practices" and therefore had "a sufficient basis upon which to assess the strengths and weaknesses of the claims and the terms of the settlement"). Before any Settlement terms were negotiated, Class Counsel conducted extensive and lengthy interviews with Plaintiffs and putative Class Members,

analyzed the documents and information produced by Prudential in advance of mediation, and developed a thorough understanding of the complex technical issues underlying the claims and defenses in this matter, as well as the applicable laws of New Jersey and other relevant jurisdictions. *Id.* ¶ 8. Following the Parties' March 17, 2025 mediation, Class Counsel drafted the proposed Settlement and its exhibits, revised those drafts, and negotiated the details of the final proposed Settlement with counsel for Prudential. *Id.* ¶ 10. This factor weighs in favor of preliminary approval.

### 2. The Settlement Was Negotiated at Arms'-Length

A strong presumption of fairness attaches to a proposed settlement where, as here, the parties negotiate at arm's-length with the assistance of a mediator. *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (explaining that "a presumption of fairness exists where a settlement has been negotiated at arm's-length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors").

Here, the proposed Settlement is the product of hard-fought, arm's-length negotiations between experienced attorneys on both sides, including a formal mediation overseen by an experienced mediator and retired Chief Judge of this District, Honorable Freda L. Wolfson (Ret.). Laukaitis Decl. ¶ 9. This factor therefore weighs in favor of preliminary approval of the Settlement. *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties.'"); *Sanders v. CJS Sols. Grp., LLC*, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's-length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

### 3.  The Benefits Provided to the Class are Adequate

The proposed Settlement is a fair and reasonable result that delivers tangible and immediate benefits to all Class Members. In determining whether the benefits provided by a proposed class action settlement are adequate, Federal Rule of Civil Procedure 23(e)(2)(C) directs district courts to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations weighs in favor of preliminary approval here.

### i.  Costs, risks, and delay of trial and appeal

Comparing the proposed Settlement here with recoveries obtained for classes of consumer plaintiffs in other data breach settlements demonstrates the strength of this Settlement. Because the Settlement benefits outweigh the risks and uncertainties of continued litigation—including the attendant time and expenses associated with contested class-certification proceedings, completing merits discovery, pretrial motion practice, trial, and appeal—this factor weighs in favor of preliminary approval of the Settlement.

Relatedly, the fourth *Girsh* factor examines "the risks of establishing liability." *Girsh*, 521 F.2d at 157. In considering this factor, courts in this District have recognized that "[a] trial on the merits always entails considerable risk[s]." *Pro v. Hertz Equip. Rental Corp.*, 2013 WL 3167736, at *4 (D.N.J. June 20, 2013) (citing *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995)). Similarly, the fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d 201, 238 (3d Cir. 2001) (internal quotations and citation omitted).

9

District courts are instructed to weigh the potential damage award if the case were taken to trial balanced against the benefits of immediate settlement. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998). Here, in a complex data breach action like this one, there is no doubt extensive and costly expert discovery and testimony would occur should this matter proceed to trial, to say nothing of the extensive briefing and review of discovery related to the Data Incident.

The settlement provides certainty to the Settlement Class and substantial relief now. Thus, each of these *Girsch* factors also weighs in favor of preliminary approval of the Settlement.

### ii.   Method of distributing relief to the Class

The Settlement's proposed method of distributing relief to the class is not unduly burdensome and deters fraudulent claims. The list of Class Members will be provided by Prudential and validated by Simpluris. The Settlement provides for effective Notice to Class Members (SA ¶¶ 6.1-6.5), and a straightforward procedure for Class Members to submit claims for Settlement Benefits. *Id.* This factor therefore weighs in favor of preliminary approval.

### iii.   Attorney's Fees and Expense Reimbursement Request

Class Counsel have devoted significant time and financial resources to this litigation despite the uncertainties of prevailing on the merits, obtaining class certification, and establishing damages. Laukaitis Decl. ¶ 13. Prudential did not discuss attorneys' fees, costs and expenses, or service awards for Plaintiffs at any time, and Class Counsel did not discuss attorneys' fees, costs and expenses, or service awards for Plaintiffs among themselves prior to reaching an agreement as to the material terms of relief for the Settlement Class Members. Laukaitis Decl. ¶ 9. Plaintiffs intend to seek attorneys' fees in an amount not to exceed Thirty-Three percent (33%) or One Million Five Hundred and Eighty-Six Thousand Seven Hundred and Fifty Dollars ($1,586,750.00)

of the Settlement Fund. SA ¶ 11.1. Courts in the Third Circuit have identified contingent fee requests of this magnitude as squarely within the range of awards found to be reasonable. *See, e.g.*, *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. Oct. 3, 2000) (awarding one-third of $7.3 million common fund as "reasonable in consideration of other courts' awards"). Plaintiffs will file a separate motion with materials supporting the requested Fee Award and Costs in accordance with the Settlement Agreement. SA ¶ 11.1.

### iv. Agreement Regarding Percentage of Opt-Outs Triggering Prudential's Unilateral Right to Terminate the Agreement

Rule 23(e) requires the Court to consider any agreement reached between the Parties outside of the proposed Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."). Prudential has the unilateral right to terminate the Settlement Agreement if the number of opt-outs exceed an agreed upon percentage.  Laukaitis Decl. ¶ 16.

### 4. The Settlement Treats Class Members Equitably

Here, all Class Members are eligible to file claims for a portion of the Net Settlement Fund, depending on how the Data Incident applied to them. Class Members who can provide documentary evidence of any out-of-pocket expenses fairly traceable to the Data Incident may request reimbursement for those expenses. SA ¶¶ 3.17, 4.4. In addition, all Class Members identified by the Settlement Administrator as eligible may elect to receive SSN/TIN Impact Payments or CCPA Payments. SA ¶¶ 3.6, 3.45, 4.5. Alternatively, in lieu of receiving SSN/TIN Impact Payments or CCPA Impact Payments, and particularly for Settlement Class Members who may be ineligible for those forms of relief, Settlement Class Members may elect to submit a claim for Pro Rata Cash Payments. SA ¶¶ 3.32, 4.5.

This proposal treats all Class Members equitably. First, a claim for Documented Out-of-Pocket Losses can be made by any Settlement Class Member, regardless of whatever secondary bucket of relief they may otherwise be eligible for. Secondly, SSN/TIN Impact Payments have been stratified on account of the heightened issues surrounding potential dissemination of Social Security Numbers and Tax Identification Numbers, including a higher risk of identity theft. *See* Consolidated Complaint, ECF No. 30, ¶ 104 ("Now with the Private Information accessed in the Data Breach, cybercriminals can use or sell the Private Information to further harm Plaintiffs and Class Members in a variety of ways including: destroying their credit by opening new financial accounts and taking out loans in Class Members' names; using Class Members' names to obtain medical services improperly; using Class Members' Private Information to target other phishing and hacking intrusions; using Class Members' Private Information to obtain government benefits; and otherwise assuming Class Members' identities."). Similarly, the CCPA Impact Payments are stratified in reference to the California Consumer Privacy Act, to which California residents ordinarily have access to and would otherwise be able to access damages for, related to the dissemination of other certain personally identifying information. By stratifying these claims in a system wherein *all* Plaintiffs are still entitled to elect from a Pro Rata Cash Payment, Class Counsel recognizes both the increased gravity of harm associated with SSN and TIN exposure as well as the compromise of California residents with certain information exposed who otherwise have access to damages.

## B.  Certification of the Settlement Class is Appropriate

Parties seeking class certification for settlement purposes must satisfy the criteria of Federal Rule of Civil Procedure 23, including the requirements of Rule 23(a) and at least one

provision of Rule 23(b). *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, the proposed Settlement Class meets each requirement for conditional certification.

### 1. The Proposed Settlement Class is Ascertainable

"Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 593 (3d Cir. 2012) (collecting cases). Here, the proposed Class is readily ascertainable because Class Members will be identified using Prudential's own records. Indeed, Prudential mailed breach notification letters out to certain customers and clients. Thus, Prudential already possesses all the necessary information to readily identify and ascertain the Class.

### 2. The Certification Criteria of Rule 23(a) Are Satisfied

***Numerosity.*** Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Here, the size of the proposed Settlement Class is over 2.5 million individuals, which easily satisfies this requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.").

***Commonality.*** Rule 23(a)(2) further requires that the claims present common questions of law or fact. Fed. R. Civ. P. 23(a)(2). This requirement is met where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In other words, "the claims at issue . . . implicate a 'uniform course of conduct common to all class members subject to common proof in a single trial.'" *C.P. v. N.J.*

*Dep't of Educ.*, 2022 WL 3572815, at *6 (D.N.J. Aug. 19, 2022) (quoting *Chiang v. Veneman*, 385 F.3d 256, 266 (3d Cir. 2004)). "That burden is not onerous." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013). Here, there are multiple common questions of both law and fact. Plaintiffs' and putative Class Members' claims derive from the same Data Incident and allege the same wrongdoing—Prudential's alleged failure to implement reasonable and industry-standard cybersecurity safeguards to adequately protect their Private Information. Moreover, Plaintiffs' claims present the same legal questions, including whether Prudential owed Plaintiffs and the Class a duty of care to implement reasonable cybersecurity measures and whether Prudential breached that duty. Accordingly, the commonality requirement is satisfied.

> **_Typicality._** Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). Typicality assesses "whether the interests of the named plaintiffs align with those of the unnamed members . . . and, explicitly, whether the claims and facts of class representatives are sufficiently like those of unnamed class members." *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2023 WL 1818922, at *9 (D.N.J. Feb. 8, 2023). Plaintiffs satisfy the typicality requirement here because their claims arise out of the same Data Incident as other putative Class Members and present the same legal theories as would be presented if each Class Member filed their own individual case. Because Plaintiffs' claims arise out of the same Data Incident, the typicality requirement is met.

> **_Adequacy._** Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) (quoting *In re Nat'l Football League Players Concussion Injury Litig.*,

821 F.3d 410, 431 (3d Cir. 2016)). "For a class representative to be adequate, it must have 'a minimal degree of knowledge' about the case, . . . and have no conflict of interest with class counsel, . . . and members of the class." *Id.* (citations omitted). "Only fundamental conflicts will defeat the adequacy requirement." *Id.* (internal quotation marks omitted). Here, the proposed Class Representatives are more than adequate.

First, Plaintiffs have common interests with the putative Class Members in that they were all impacted by the same Data Incident, all received notification letters from Defendant, and their claims all present common questions of law and fact. Moreover, Plaintiffs have diligently prosecuted this action on behalf of the Class and their interests and those of the other Class Members are aligned. Laukaitis Decl. ¶ 17. Thus, Plaintiffs have and will continue to adequately represent the Class subject to the Court's decision to appoint them as Class Representatives.

Second, Plaintiffs have retained knowledgeable and well-qualified counsel who have successfully prosecuted many class actions, including data breach class actions. *Id.* at ¶ 15. Class Counsel have adequately represented the Class here.

### 3. The Rule 23(b) Certification Requirements Are Satisfied

Plaintiffs seek certification of the proposed Settlement Class under Rule 23(b)(3). The Court may certify a Rule 23(b)(3) class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,* 568 U.S. 455, 459 (2013). Both requirements are easily satisfied here.

***Predominance.*** The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 594. "It requires

more than a common claim . . . rather, issues common to the class must predominate over individual issues." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015) (citations omitted). Here, common questions of law and fact predominate because Plaintiffs' and Class Members' claims all arise from the same Data Incident, the same notification concerning the Data Incident, and the same alleged failures to implement reasonable cybersecurity practices. Plaintiffs' and Class Members' claims also present common questions of law: whether Prudential owed Plaintiffs and Class Members a duty to safeguard their sensitive information; whether Prudential breached that duty; whether Prudential's conduct or failure to act was the proximate cause of the Data Incident; and whether Plaintiffs and Class Members are entitled to recovery. These common issues, all of which arise from Prudential's common course of conduct, predominate here.

***Superiority.*** The superiority inquiry requires the court to balance, in terms of fairness and efficiency, the advantages of a class action treatment in comparison to alternative methods of adjudication. *In re Prudential Ins. Co.*, 148 F.3d at 316. Here, individual adjudication of these cases would be virtually impossible. Indeed, individual adjudication would likely mean the individual filing of potentially over 2.5 million cases, which would drain judicial and advocate resources. Thus, a class action is the superior mechanism for Plaintiffs and putative Class Members to seek legal redress here.

For each of these reasons, the Court should preliminarily certify the Settlement Class.

## C.  The Court Should Approve the Proposed Notice Plan

Finally, the Court should grant preliminary approval to the proposed Settlement because the proposed Notice Plan provides more than sufficient due process to absent Class Members. Consistent with Rule 23(e), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). "[B]est

notice practicable" means "'individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quoting Fed. R. Civ. P. 23(c)(2)).  The best practicable notice "is . . . reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed Notice Program provides absent Class Members physically mailed notices, email notices and a website dedicated to providing information to Class Members, affords an opportunity to submit claims, make objections, and to opt-out. Such notice which includes an interactive settlement website and communication with Class Members via interactive voice response ("IVR"), represents the "best notice that is practicable under the circumstances." *See generally* Declaration of Megan Brunner, attached herewith; *see also* Fed. R. Civ. P. 23(c)(2)(B).

As required by Rule 23, the proposed Long Form Notice (SA at Ex. 3) "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The Long Form Notice here also: describes the terms of the proposed Settlement, including requests for Awards for the Class Representatives and for an award of attorneys' fees and reimbursement of expenses; informs Class Members about their right to object to the Settlement (and how to do so); provides the date, time, and place of the Final Approval Hearing and the procedures for appearing at the hearing; and provides contact information for Class Counsel and the Settlement Administrator. *See* Long Form Notice, attached as Ex. 3 to the SA.

The Notices inform Class Members of the deadlines for objecting to the Settlement and excluding themselves from the Class and the deadlines themselves are reasonable. The Notices use plain language and are, thus, easy to understand. Should Class Members have any questions, the proposed Settlement requires Simpluris to establish a toll-free telephone number to answer their questions. SA ¶ 6.3. Thus, the proposed Notice Program provides ample due process.

### D.    The Court Should Provisionally Appoint Class Counsel

Plaintiffs request that the Court appoint Kevin Laukaitis of Laukaitis Law LLC, Daniel Srourian of Srourian Law Firm, P.C., Andrew J. Sciolla of Sciolla Law Firm, LLC, Steven M. Nathan of Hausfeld LLP, and Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC as Co-Lead Class Counsel for the Settlement Class. The Court previously appointed these individuals as Interim Co-Lead Counsel and Liaison Counsel. ECF No. 33. Class Counsel have vigorously represented the interests of Plaintiffs and Class Members since the inception of this litigation. Laukaitis Decl. ¶ 7. Considering their work in this litigation, their collective expertise and experience in handling similar actions, and the resources they committed to representing the Class, Class Counsel should be appointed Class Counsel for the proposed Settlement Class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

### V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:  (i) conditionally certifying the Settlement Class; (ii) granting preliminary approval of the Settlement Agreement; (iii) appointing Connie Boyd, Gina Adinolfi, John Moss, Stephanie Demaro, Anthony Guissarri, and Roger Menhennett as Class Representatives; (iv) appointing Kevin Laukaitis of Laukaitis Law LLC, Daniel Srourian of Srourian Law Firm, P.C., Andrew J. Sciolla of Sciolla Law Firm, LLC, Steven M. Nathan of Hausfeld LLP, and Joseph J. DePalma of Lite DePalma

Greenberg & Afanador, LLC as Co-Lead Class Counsel; (v) approving the Notice Program and Notices and directing that Notice be sent to the Settlement Class Members; (vi) approving the Claim Form and Claims process; (vii) ordering the Settlement's opt-out and objection procedures; (viii) appointing the Settlement Administrator; (ix) staying all deadlines in the Action pending Final Approval of the Settlement; (x) enjoining and barring all members of the Settlement Class from initiating or continuing in any litigation or asserting any claims against Prudential and the Released Parties arising out of, relating to, or in connection with the Released Claims prior to the Court's decision to grant Final Approval of the Settlement; and (xi) setting a date for the Final Approval Hearing; and (xii) granting such other and further relief as the Court deems just and proper.

|  |  |
|---|---|
| Dated: May 30, 2025 | **LITE DEPALMA GREENBERG & AFANADOR, LLC**<br>*/s/ Joseph J. DePalma*<br>Joseph J. DePalma (NJ Bar #002151982)<br>Catherine B. Derenze (NJ Bar #275852018)<br>570 Broad Street, Suite 1201<br>Newark, New Jersey 07102<br>Telephone: (973) 623-3000<br>Facsimile: (973) 623-0858<br>jdepalma@litedepalma.com<br>cderenze@litedepalma.com<br>**HAUSFELD LLP**<br>Steven M. Nathan*<br>33 Whitehall Street, Fourteenth Floor<br>New York, NY 1004<br>Tel: (646) 357-1100<br>snathan@hausfeld.com<br><br>**SCIOLLA LAW FIRM LLC**<br>Andrew J. Sciolla (NJ Bar #018892006)<br>Land Title Building<br>100 S. Broad Street, Suite 1910<br>Philadelphia, PA 19110<br>T: (267) 328-5245<br>F: (215) 972-1545<br>andrew@sciollalawfirm.com |

**LAUKAITIS LAW LLC**
Kevin Laukaitis (NJ Bar #155722022)
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com

**SROURIAN LAW FIRM**
Daniel Srourian*
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
T: (213) 474-3800
F: (213) 471-4160
daniel@slfla.com

*Admitted Pro Hac Vice*

***Attorneys for Plaintiffs and the Proposed Classes***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing was sent via

CM/ECF to all counsel of record.

Date:   May 30, 2025                          /s/ *Joseph J. DePalma*
                                             Joseph J. DePalma