**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: PRUDENTIAL FINANCIAL, INC. DATA BREACH LITIGATION | Case No. 2:24-cv-06818-SRC-AME |

**DECLARATION OF KEVIN LAUKAITIS**
**IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Kevin Laukaitis, declare under penalty of perjury as follows:

1.      I am an attorney duly admitted to the bars of the states of Pennsylvania and New Jersey. I am the Owner of Laukaitis Law LLC, and am Co- Lead Counsel for Plaintiffs, along with Steven M. Nathan of Hausfeld LLP, Daniel Srourian of Srourian Law Firm, P.C., Andrew J. Sciolla of Sciolla Law Firm, LLC, and Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC (hereinafter collectively referred to as "Class Counsel") in the above referenced action (the "Action"). I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support, filed contemporaneously herewith.

2.      Plaintiffs Connie Boyd, Gina Adinolfi, John Moss, Stephanie Demaro, Anthony Guissarri, and Roger Menhennett (collectively, "Plaintiffs" or "Settlement Class Representatives"), and Prudential Financial, Inc. ("Defendant" or "Prudential") have reached an agreement to settle this Action pursuant to the terms of the Settlement Agreement, attached hereto as **Exhibit A**.[1]

---

[1] All capitalized terms not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

3.      The Settlement provides substantial monetary benefits to the Settlement Class and multiple avenues for Class Members to obtain those monetary benefits.

4.      On or about February 4, 2024, Defendant experienced a Data Incident impacting the PII and PHI of approximately 2,556,210 individuals, including Plaintiffs and Class Members (the "Data Incident"). The contents of the Data Incident included protected personal information, including: full names, Social Security numbers, physical addresses, email addresses, dates of birth, phone numbers, health information, account numbers, credit card numbers, and Prudential ID numbers. On or about March 29, 2024, Prudential began notifying impacted individuals of the Data Incident.

5.      On October 17, 2024, Plaintiffs filed their Consolidated Class Action Complaint. Defendant filed a Motion to Dismiss on December 16, 2024, after which the Parties began to engage in settlement discussions.

6.      On December 24, 2024, the Parties stipulated to stay the case, including briefing and disposition of Defendant's pending Motion to Dismiss, pending the outcome of forthcoming meditation.

7.      Prior to mediation, the Parties engaged in meaningful informal discovery, exchanging documents and information related to the composition of the Settlement and Prudential's investigation of the Data Breach. Indeed, since the inception of this litigation Class Counsel have vigorously represented the interests of Plaintiffs and Class Members.

8.      Before any Settlement terms were negotiated, Class Counsel conducted extensive and lengthy interviews with Plaintiffs and putative Class Members, analyzed the documents and information produced by Prudential in advance of mediation, and developed a thorough

understanding of the complex technical issues underlying the claims and defenses in this matter, as well as the applicable laws of New Jersey and other relevant jurisdictions.

9.      The proposed Settlement was reached here following extensive arm's-length settlement discussions between the Parties. Between October 2024 and March 2025, Prudential provided Plaintiffs information pursuant to Federal Rules of Evidence Rule 408 and agreed to engage in mediation in March of 2025. The Parties scheduled and attended a mediation with former Chief Judge of the District Court of New Jersey, the Honorable Freda L. Wolfson (Ret.). At the end of the March 17, 2025 arm's-length, day-long mediation session with Judge Wolfson at her office in New Jersey, the Settling Parties agreed to a mediator's recommendation of a non-reversionary, all-cash $4,750,000.00 common fund class-wide settlement. The Settling Parties continued negotiations of the terms and reached an agreement in principle on April 9, 2025. Prudential did not discuss attorneys' fees, costs and expenses, or service awards for Plaintiffs at any time, and Class Counsel did not discuss attorneys' fees, costs and expenses, or service awards for Plaintiffs among themselves prior to reaching an agreement as to the material terms of relief for the Settlement Class Members.

10.     Following the Parties' March 17, 2025, mediation, Class Counsel drafted the proposed Settlement and its exhibits, revised those drafts, and negotiated the details of the final proposed Settlement with counsel for Prudential.

11.     The Settlement was achieved only after a thorough pre-complaint investigation that culminated in the preparation of a detailed consolidated amended complaint, the consideration of relevant informal discovery, months of informal settlement negotiations, and a formal mediation.

12.     By the time the Settlement in principle was reached, Plaintiffs and Class Counsel were well informed of the strengths and weaknesses of the Action. Although Plaintiffs and Class

Counsel believe that the factual and legal claims asserted in the Action are meritorious, Plaintiffs and Class Counsel recognize the outcome of the litigation and the claims asserted in the litigation are uncertain, and that protracted litigation of this Action to final judgment would entail substantial cost, risk, and delay of benefits and relief for Plaintiffs and all Settlement Class Members. Class Counsel investigated the facts relating to the claims and defenses alleged and the underlying events in the Action, made a thorough study of the legal principles applicable to the claims and defenses asserted in the Action, and conducted a thorough assessment of the strengths and weaknesses of the claims in the Action.

13.     Class Counsel also already had, and was prepared to further, devote significant time and financial resources to this litigation despite the uncertainties of prevailing on the merits, obtaining class certification, and establishing damages. After this thorough analysis, Plaintiffs and Class Counsel concluded that it would be in the best interests of the Settlement Class to enter into this Agreement.

14.     After the Settlement was reached, Class Counsel undertook a competitive bidding process to achieve an excellent Settlement Administrator for the Class—Simpluris, Inc. This included soliciting cost proposals from different settlement administrators. The Parties selected Simpluris after considering bids from multiple administration firms and believe that Simpluris will be able to meet the obligations imposed on the Settlement Administrator under the Settlement for a reasonable cost.

15.     It is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate considering the significant benefits to the Settlement Class as well as the risks and delays attendant to further protracted litigation. This view is informed by Class Counsel's decades of work litigating complex actions. Class Counsel also has extensive experience in successfully litigating data breach

class actions. *See* **Exhibit B** (Firm Resumé of Laukaitis LLC); **Exhibit C** (Firm Resumé of Hausfeld LLP); **Exhibit D** (Firm Resumé of Srourian Law Firm, P.C.); **Exhibit E** (Firm Resumé of Sciolla Law Firm, LLC); and **Exhibit F** (Firm Resume of Lite DePalma Greenberg & Afanador, LLC).

16.     Class Counsel represent that there are no agreements related to the Settlement other than those reflected in the Settlement Agreement itself, which reflects Prudential's unilateral right to terminate the Settlement Agreement in the event that more than the agreed upon percentage of Persons in the Settlement Class elect to exclude themselves from the Settlement Class, and an agreement with Simpluris to perform notice and settlement administration services if this Motion is granted by the Court.

17.     The Settlement Class Representatives here have represented the Class admirably. They made themselves available to Class Counsel when necessary, reviewed filings, provided Class Counsel with documents and other evidence, and helped prosecute this case diligently.

18.     The Settlement Class Representatives have also demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the Complaint; (iii) being available as needed throughout the litigation; and (iv) monitoring the litigation. Plaintiffs do not have any interests antagonistic to other class members.

19.     It is my opinion that the proposed class action settlement is fair, reasonable, and adequate and is an outstanding result for the Settlement Class Members.

Dated: May 30, 2025                           Respectfully submitted,

                                              */s/: Kevin Laukaitis*
                                              Kevin Laukaitis
                                              **LAUKAITIS LAW LLC**
                                              954 Avenida Ponce De Leon

Suite 205, #10518
San Juan, PR 00907
Telephone: (215) 789-4462
snathan@hausfeld.com

# EXHIBIT A

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") dated May 30, 2025 is made and entered into by and among the following individuals and entities: (1) Connie Boyd, Gina Adinolfi, John Moss, Stephanie Demaro, Anthony Guissarri, and Roger Menhennett ("Named Plaintiffs"), individually and on behalf of the Settlement Class,[1] and (2) Prudential Financial, Inc., ("Defendant," or "Prudential" and together with Named Plaintiffs, the "Settling Parties").

## I.    Factual Background

1.1    On June 7, 2024, Plaintiff Connie Boyd filed a putative class action in the United States District Court for the District of New Jersey, styled *Connie Boyd v. Prudential Financial, Inc.*, Case No. 2:24-cv-06818-SRC-AME. (ECF No. 1). Subsequently, on June 17, 2024, Plaintiff Gina Adinolfi filed a separate putative class action complaint in the same court, captioned *Gina Adinolfi v. Prudential Financial, Inc.*, Case No. 2:24-cv-07066. By order dated July 15, 2024, the *Boyd* and *Adinolfi* cases were consolidated into a Consolidated Action entitled *In Re: Prudential Financial, Inc. Data Breach Litigation* assigned docket number 2:24-cv-06818. (ECF No. 12). On July 08, 2024, Plaintiffs McKayla Smith and John Doe filed an additional putative class action complaint in the same court, titled *Smith et al v. Prudential Financial, Inc.*, 2:24-cv-07598. On July 10, 2024, Plaintiff Seth Khaner and Plaintiff Sandra Villareal separately filed putative class action complaints in the same court, titled *Khaner v. Prudential Financial, Inc.*, 2:24-cv-07671 and *Villareal v. Prudential Financial, Inc.*, 2:24-cv-07683. Similarly, on July 10, 2024, Plaintiffs Maureen Wright and Donald Wright filed an additional class action complaint in the same court, titled *Wright et al. v. Prudential Financial, Inc.*, 2:24-cv-07691. Finally, on July 11, 2024, Plaintiffs John Moss and Stephanie Demaro filed an additional class action complaint in the same court, titled *Moss et al. v. Prudential Financial, Inc.*, Case No. 2:24-cv-07715.

1.2    On July 24, 2024, Plaintiffs' counsel in the Consolidated Action filed an Amended Notice of Related Cases, identifying five (5) subsequently filed cases as being related to the Consolidated Action. (ECF No. 16). Three of those cases, *Smith v. Prudential Financial, Inc.*, 2:24-cv-07598 (ECF No. 11); *Villareal v. Prudential Financial, Inc.*, 2:24-cv-076830 (ECF No. 8); and *Khaner v. Prudential Financial, Inc.*, 2:24-cv-07671 (ECF No. 8) were voluntarily dismissed. On September 6, 2024, the Court consolidated the related actions into the first-filed action, *Connie Boyd v. Prudential Financial, Inc.*, under the caption, *In Re: Prudential Financial, Inc. Data Breach Litigation*, Case No. 2:24-cv-06818-SRC-AME (the "Action"). (ECF No. 29). On September 17, 2024, the Court appointed Kevin Laukaitis of Laukaitis Law LLC, Daniel Srourian of Srourian Law Firm, P.C., Andrew J. Sciolla of Sciolla Law Firm, LLC, Steven M. Nathan of Hausfeld LLP as Interim Co-Lead Class Counsel, and Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC as Interim Liaison Counsel. (ECF No. 33).

1.3    On October 17, 2024, Plaintiffs in the above actions filed a consolidated complaint (the "Consolidated Complaint"). The Consolidated Complaint asserts claims against Defendant for: (1) Negligence; (2) Negligence *per se*; (3) Breach of Implied Contract; (4) Breach of Confidence; (5) Breach of the Implied Covenant of Good Faith and Fair Dealing; (6) Unjust

---

[1] All undefined capitalized terms have the definitions set forth in Section III.

Enrichment; (7) Bailment; (8) Breach of Fiduciary Duty; (9) Declaratory Judgment; (10) Violations of New York General Business Law N.Y. Gen. Bus. Law § 349, *et seq*.; (11) Violation of the California Consumer Privacy Act Cal. Civ. Code § 1798.100, *et seq*. (12) Common Law Invasion of Privacy – Intrusion Upon Seclusion; (13) Invasion of Privacy – Cal. Const. Art. 1, § 1; (14) Violation of Cal. Civ. Code § 1798.81.5; (15) Violation of Cal. Bus. & Prof. Code § 17200; and (16) Violation of the New Jersey Consumer Fraud Act, N.J. S.A. §§ 56:8-1, *et seq*. arising out of a Data Incident that occurred with regard to Defendant's systems on no later than February 4, 2024 (referred to herein as the "Data Incident" or the "Incident.").

      1.4     Defendant filed its motion to dismiss the Consolidated Complaint on December 16, 2024 (ECF No. 35). The Settling Parties then began discussing an early class-wide resolution before briefing on Defendant's motion to dismiss was completed.

      1.5     The Settling Parties agreed to mediate their dispute with the assistance of Hon. Freda L. Wolfson (Ret.) – former Chief Judge of the District Court of New Jersey. The Settling Parties engaged in significant, informal discovery regarding the Incident ahead of the mediation. On March 17, 2025, the Settling Parties participated in an arm's-length, day-long mediation session with Judge Wolfson at her office in New Jersey, at the end of which the Settling Parties agreed to a mediator's recommendation of a non-reversionary, all-cash $4,750,000.00 common fund class-wide settlement. The Settling Parties continued negotiations of the terms and reached an agreement in principle on April 9, 2025.

## II.    <u>Recitals</u>

      2.1     The Settling Parties have determined that continued prosecution and defense of this Action would be burdensome, protracted, and expensive and that the outcome is uncertain. To mitigate the risk and expense of further litigation, the Settling Parties have agreed to settle the Action on the terms and conditions set forth herein.

      2.2     Class Counsel have conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in this settlement and how best to serve the interests of the Settlement Class. Through their own investigation and the negotiations described above, Class Counsel have considered, *inter alia*, (1) the sharply contested issues involved; (2) the risks, uncertainty, and cost of further prosecution of the Action; and (3) the benefits to be received by the Settlement Class pursuant to this Agreement. Thereafter, Class Counsel determined that a settlement with Defendant on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Settlement Class.

      2.3     Defendant denies all allegations of wrongdoing and disclaims all liability with respect to all claims asserted in the Consolidated Complaint. Neither this Agreement nor any related documents, nor the fact of settlement, nor any actions taken to carry out the settlement, are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, defense, or any point of fact or law on the part of any party. Nor shall that be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by Defendant or any Released Party in any current or future claim or proceeding. Defendant denies the material allegations contained in the Consolidated Complaint

2.4    This Agreement is intended to fully, finally, and forever resolve and release all Released Claims against Defendant and all other Released Parties from any and all claims, demands, actions, causes of action, damages, liabilities, costs, or expenses, whether known or unknown, arising at any time from any matter, dispute, or agreement associated with the events alleged in the Action, alleged in the Consolidated Complaint, or otherwise related to the Data Incident and occurring prior to the effective date of this Settlement and Release Agreement.

2.5    It is hereby agreed, by and between the Settling Parties, that, subject to the approval of this Court as provided for in this Agreement, the Action and Released Claims shall be fully and finally settled, compromised, and released, and the Action shall be dismissed with prejudice, on the terms and conditions herein.

## III.    **Definitions**

As used in this Agreement, the following terms have the meanings specified below:

3.1    "Action" means the consolidated class action captioned *In Re: Prudential Financial, Inc. Data Breach Litigation*, Case No. 2:24-cv-06818-SRC-AME pending in the United States District Court for the district of New Jersey.

3.2    "Administrative Costs" means all reasonable costs and expenses incurred by the Settlement Administrator in the administration of this Settlement, including, without limitation, all expenses or costs associated with the notice plan and providing Notice to the Settlement Class, CAFA notice to regulators, and reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

3.3    "Agreement" or "Settlement Agreement" means this agreement.

3.4    "Attorneys' Fees and Expenses Award" means the amount awarded by the Court to be paid to Class Counsel solely from the Settlement Fund, which amount shall be in full and complete satisfaction of Class Counsel's claim or request for payment of attorneys' fees and reimbursement for litigation expenses.

3.5    "CAFA Notice" means the notice required pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, et. seq.

3.6    "CCPA Payment" means a payment, at least $100 but no less than 2 times the amount determined to be the *Pro Rata* Cash Payment, not to exceed $599.00, available to Settlement Class Members who 1) reside in California and are therefore under the jurisdiction of the California Consumer Privacy Act ("CCPA"), ***and*** 2) who had one of the following sets of information involved in the Incident, as verified by Defendant and the Claims Administrator: a) Driver's License, Passport, Tax ID Number, Non-U.S. Identification Number, or other Government I.D.; b) Credit or Debit Card Information, or Credit or Debit Card Numbers; and/or c) Treatment, Diagnosis, Prescription Information, or Health Condition Information. The number of Settlement Class Members eligible for this bucket of relief is estimated to be approximately 7,805 individuals.

3

3.7    "Claim Form" means the written or online request for relief promulgated by the Settlement Administrator to be used by Settlement Class Members in making requests for Settlement Benefits, including Documented Out-of-Pocket Losses and one of the following buckets of additional relief: SSN/TIN Payments, CCPA Payments, or Pro Rata Cash Payments, a sample of which is attached as Exhibit 1 to this Settlement Agreement.

3.8    "Class Counsel" means Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC, with a mailing address of 570 Broad St., Suite 1201 Newark, NJ 07102, with the respective email of jdepalma@litedepalma.com, Kevin Laukaitis of Laukaitis Law, with a mailing address of 954 Avenida Ponce De Leon, Suite 205, #10518, San Juan, PR 00907 and with the respective email of klaukaitis@laukaitislaw.com; Daniel Srourian of, Srourian Law Firm, P.C. with a mailing address 468 N. Camden Dr., Suite 200, Beverly Hills, California 90210, with the respective email of daniel@slfla.com; Andrew J. Sciolla of Sciolla Law Firm, LLC with a mailing address Land Title Building, Suite 1910, 100 South Broad Street Philadelphia, PA 19110, with the respective email of andrew@sciollalawfirm.com; and; Steven M. Nathan of Hausfeld LLP, with a mailing address of 33 Whitehall Street, Fourteenth Floor New York, NY 10004, with the respective email of snathan@hausfeld.com.

3.9    "Claim Deadline" means the date by which Settlement Class Members must file a claim to receive benefits from the Settlement, as outlined herein. The Court shall set the Claim Deadline in the Preliminary Approval Order. The Settling Parties propose a Claims Deadline of ninety (90) days after mailing the Class Notice.

3.10    "Class Notice" or "Notice" means the notice of this Settlement contemplated by this Agreement, which shall include a Settlement Notice substantially in the form attached hereto as Exhibits 2 and 3, respectively. Exhibit 3 shall be posted on the Settlement Website.

3.11    "Class Representatives" mean the Named Plaintiffs.

3.12    "Class Representative Award" means such funds as may, in the Court's discretion, be awarded and paid solely from the Settlement Fund to the Named Plaintiffs in recognition of their time, effort, and service to the Settlement Class in pursuing the Action and in fulfilling their obligations and responsibilities as representatives of the Settlement Class.

3.13    "Consideration" or "Class Payment" means the cash sum of $4.75 million ($4,750,000.00) that Prudential will pay into the Settlement Fund to settle the Action in accordance with the terms of this Settlement Agreement.  Other than the Consideration or Class Payment, Prudential shall owe no additional monies of any kind under this Settlement Agreement.

3.14    "Court" means the United States District Court for the District of New Jersey.

3.15    "Defendant" means Prudential Financial, Inc. and any subsidiaries or affiliates, including but not limited to the Prudential Insurance Company of America.

3.16    "Defendant's Counsel" means Daphne Morduchowitz, of Seyfarth Shaw LLP, with a mailing address of 620 Eighth Avenue, New York, New York 10018, with the respective email of dmorduchowitz@seyfarth.com.

3.17    "Documented Out-of-Pocket Losses" means claims submitted by Settlement Class Members to reimburse out-of-pocket losses related to the Data Incident, capped at no more than $5,000 per claimant and supported by reasonable documentation as described in Section 4.3.

3.18    "Effective Date" means one (1) business day after all the following conditions have been satisfied:

    (a)    The Final Approval Order has been entered; and

    (b)(i)    If reconsideration and/or appellate review is not sought from the Final Approval Order, the expiration of the time for the filing or notice of any motion for reconsideration, appeal, petition, and/or writ; *or*

    (b)(ii)    If reconsideration and/or appellate review is sought from the Final Approval Order:

        (a)    the date on which the Final Approval Order is affirmed and is no longer subject to judicial review or

        (b)    the date on which the motion for reconsideration, appeal, petition, or writ is dismissed or denied, and the Final Approval Order and Judgment is no longer subject to judicial review.

3.19    "Final Approval Hearing" means the hearing held by the Court to determine whether to enter the Final Approval Order and Judgment.

3.20    "Final Approval Order" or "Final Approval Order and Judgment" or "Final Judgment" means the Court's Final Approval Order and Judgment, substantially in the forms attached hereto as Exhibit 5, which, among other things, approves this Agreement and the Settlement as fair, adequate, and reasonable and confirms the final certification of the Settlement Class.

3.21    "Incident" or "Data Incident" means the unlawful cyber-attack on certain of Prudential's systems that occurred on or about February 4, 2024, which is alleged to have exposed potentially sensitive information of Named Plaintiffs and the class of individuals they seek to represent in the Consolidated Action.

3.22    "Net Settlement Fund" means the balance of funds after subtracting the Administrative Costs, any applicable taxes, Class Representative Awards, if any, and Attorneys' Fees and Expenses Award awarded by the Court.

3.23    "Notice Program" means steps the Settlement Administrator takes to notify Settlement Class Members of the Settlement as set forth in Section VI of this Agreement.

3.24    "Objection Deadline" means the date to be set by the Court by which Settlement Class Members must file any objection to the Settlement in order for that objection to be effective. The Court shall set the Objection Deadline in the Preliminary Approval Order. The Settling Parties propose an Objection Deadline of sixty (60) days after the date of mailing of the Class Notice.

3.25    "Objection Notice" means a notice of intent to object to the Settlement filed by a Settlement Class Member by the Objection Deadline.

3.26    "Opt-Out" means a Settlement Class Member who (i) timely submits a properly completed and executed Request for Exclusion, and (ii) does not rescind that Request for Exclusion before the end of the Opt-Out Period.

3.27    "Opt-Out Deadline" means the date to be set by the Court by which Settlement Class Members must mail, email, or submit online a valid Request for Exclusion in order for it to be effective. The postmark date shall constitute evidence of the date of mailing for this purpose. The Settling Parties propose an Opt-Out Deadline of sixty (60) days after the date of mailing of the Class Notice.

3.28    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, agents or assignees.

3.29    "Personal Information" or "PI" means information that is or could be used, whether on its own or in combination with other information, to identify, locate, or contact a person, including, but not limited to, names, dates of birth, account numbers, Social Security numbers, driver's license numbers, addresses, phone numbers, email addresses,  or similar information.

3.30    "Preliminary Approval" means the date on which the Court enters the Preliminary Approval Order.

3.31    "Preliminary Approval Order" means the Court's order, substantially in the form attached hereto as Exhibit 4, granting, among other things, conditional certification of the Settlement Class, preliminary approval of this Agreement, appointment of the Settlement Administrator, approval of the form and method of Class Notice, permission for the Settlement Administrator to send the Class Notice to the proposed Settlement Class, and setting a date for the Final Approval Hearing.

3.32    "Pro Rata Cash Payments" means a claim for the amount remaining in the Net Settlement Fund after payment of valid Documented Out-of-Pocket Losses, SSN/TIN Impact Payments, and CCPA Payments, divided by all claimants electing this form of relief, not to exceed $599.00 per capita. In no event can a claimant electing for relief from this bucket receive more,

*per capita*, than a claimant under either of the SSN/TIN Impact Payment or CCPA Payment bucket.

3.33   "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, reimbursements, restitution, and attorneys' fees of any nature whatsoever, whether based on any law (including federal law, state law, local law common law, contract, rule, or regulation, including, without limitation, any consumer protection law, rule, regulations or regulatory promulgation,) or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen actual or contingent, liquidated or unliquidated, punitive or compensatory, monetary or nonmonetary, that have been pled in the Consolidated Complaint and that arise out of or relate to the Incident and claims pled in the Action or that are related to the facts, transactions, events, occurrences, acts, or omissions alleged in the Action and could have been advanced in the Action, as of the date of the Final Approval Order and Judgment (excluding, for avoidance of doubt, any claims to enforce the Settlement or the Final Approval Order and Judgment).

3.34   "Released Parties" means Defendant and any and all related parties, including without limitation, its present or past affiliates, divisions, predecessors, successors, assignees, parents, or subsidiaries and any and all current of former associates, employers, employees, agents or other persons acting on its behalf, officers, directors consultants, dealers, contractors, independent contractors, vendors, insurers, reinsurers, managers, managing directors, partners, principals, members, attorneys, accountants, administrators, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, indemnitees, , investment advisors, sellers, distributors, legal representatives, successors in interest, assigns and persons, firms, trustees, trusts, corporations, general or limited partners of Defendant, and any and all other individuals or entities in which Defendant has a controlling interest or which are affiliated with Defendant, or any other representatives of any of these persons and entities.

3.35   "Releasing Parties" means the Settlement Class Members, including the Settlement Class Representatives, who do not timely opt out of the Settlement; and Class Counsel.

3.36   "Request for Exclusion" means a fully completed and properly executed written request for exclusion from the Settlement, also known as an "opt-out request," that is timely delivered to the Settlement Administrator by a Settlement Class Member under Section VIII of this Agreement.

3.37   "Settlement Administration" means the Settlement Administrator's provision of notice of the Settlement to the Settlement Class and regulators, Requests for Exclusion and Objection Notices received from Settlement Class Members, the Settlement Awards, the distribution of Attorneys' Fees and Expenses Award, and the Class Representative Awards.

3.38   "Settlement Administrator" means Simpluris, Inc., a company experienced in administering class action claims generally and specifically those of the type at issue in this Settlement, to be mutually agreed upon by the Settling Parties, and approved by the Court. The

7

Settling Parties agree to Simpluris, Inc. as an appropriate Settlement Administrator subject to approval by the Court.

3.39    "Settlement Benefits" or "Settlement Awards" refers to the categories of awards available to Settlement Class Members, including Documented Out-of-Pocket Losses, SSN/TIN Impact Payments, CCPA Impact Payments, and Pro Rata Cash Payments.

3.40    "Settlement Class" means all individuals within the United States of America whose Private Information was compromised in the Data Incident. The Settlement Class excludes: (i) Prudential and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or Magistrate assigned to evaluate the fairness of this Settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Incident or who pleads nolo contendere to any such charge.

3.41    "Settlement Class Member" means a member of the Settlement Class.

3.42    "Settlement Fund" means the non-reversionary all cash settlement fund into which the Settlement Sum will be paid and from which the Settlement Administrator will distribute the Settlement Benefits, Class Representative Awards, the Attorneys' Fees and Expenses Award, and Settlement Administration fees. The Settlement Fund is a common fund that covers all payments required under this Agreement.

3.43    "Settlement Sum" means Four Million Seven Hundred Fifty Thousand United States Dollars ($4,750,000.00).

3.44    "Settlement Website" means a dedicated website established by the Settlement Administrator to provide information about the Agreement and Action upon which the documents below should be posted. The Settlement Website will also accept submitted online Claim Forms and timely Requests for Exclusion and Objections uploaded by Settlement Class Members.

3.45    "SSN/TIN Impact Payment" means a payment, at least $200.00 but no less than 3 times the amount of the *Pro Rata* Cash Payment, not to exceed $599.00, available to Settlement Class Members of any state, including California, whose Social Security number or Tax Identification Number was involved in the Incident, as verified by the Claims Administrator based on information provided by Defendant. The number of Settlement Class Members eligible for this bucket of relief is estimated to be approximately 12,366 individuals.

3.46    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Named Plaintiff, does not know or suspect to exist in his or her favor at the time of the release of the Released Parties arising out of or related to the Incident and claims pled in the Action that, if known by him or her, might have affected his or her decision with respect to the Settlement, and release of, the Released Parties, or might have affected his or her decision to participate in this Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Settlement Class Members, including the

8

Named Plaintiffs, expressly shall have and by operation of the Final Judgment shall have, released any and all Released Claims, including Unknown Claims.

3.47    All time periods herein stated in terms of "days" shall be in calendar days unless otherwise expressly stated. If any dates or deadlines specified herein fall on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day.

## IV.    Settlement Consideration

4.1    In consideration of the Settlement and releases provided herein, Defendant will pay the Settlement Sum into the Settlement Fund. The Settlement Administrator will hold the fund in a Qualified Savings Account ("QSF").  All funds held in the QSF shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be disbursed pursuant to the terms of this Settlement Agreement and/or further order of the Court.   In the event this Settlement Agreement fails for any of the reasons specified in Section XII, below, the contents of the QSF will revert to Prudential in accordance with the terms of that Section.

4.2    The Settlement Sum shall be the only source of payment for all costs of the Settlement, including: (a) Settlement Awards; (b) Administrative Costs; (c) the Attorneys' Fees and Expenses Award (if any); and (d) Class Representative Award (if any). Other than the Settlement Sum, Prudential shall owe no additional monies of any kind under this Settlement Agreement.

4.3    Settlement Awards are broken up into four buckets: 1) Documented Out-of-Pocket Losses, 2) SSN/TIN Impact Payments, 3) CCPA Payments, and 4) *Pro Rata* Cash Payments. Settlement Class Members may only select relief from *one* of those buckets and must elect only one of those buckets on their claim form. Settlement Class Members who elect more than one bucket are assumed, by the Settlement Administrator and Class Counsel, to select the highest dollar claim for which they are eligible.

4.4    Settlement Class Members may submit a claim for Documented Out-of-Pocket Losses up to five thousand dollars ($5,000) per individual.

    i.    "Documented Out-of-Pocket Losses" means the unreimbursed costs or expenditures incurred by a Settlement Class Member between February 4, 2024, and the Claims Deadline as result of the Data Incident. Documented Out-of-Pocket Losses may include, but are not limited to, unreimbursed costs, expenses, or charges incurred addressing or remedying identity theft, fraud, or misuse of personal information and/or other issues reasonably traceable to the Data Incident.

    ii.    Settlement Class Members who elect to submit a claim for reimbursement of Documented Out-of-Pocket Losses must provide to the Settlement Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address, (2) a brief description of the claimed out-of-pocket expenses, and (3) documentation supporting their claimed losses.

Documentation supporting the claimed losses can include receipts or other documentation supporting the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement but can be considered to add clarity to or support other submitted documentation.

iii.    Settlement Class Members seeking reimbursement for Documented Out-of-Pocket Losses must complete and submit either a written or online claim form to the Settlement Administrator, postmarked or electronically submitted on or before the Claims Deadline. The Settlement Class Member must verify the claim form with an attestation that the claimant believes that the losses or expenses claimed were incurred as a result of the Data Incident.

4.5    Settlement Class Members may alternatively submit a request for relief without any documentation or attestation, via written or online Claim Form, from one of the following buckets of relief for which they are eligible:

i.    SSN/TIN Impact Payments: Settlement Class Members from any state whose Social Security numbers or Tax Identification Numbers were exposed as a result of the Data Incident may file a claim for a portion of Net Settlement Fund, at least $200 but no less than 3 times the value of the *Pro Rata* Cash Payment, up to $599.00. No out-of-pocket losses are required to make this claim. Only those Settlement Class Members whom the Settlement Administrator has confirmed, based on information to be provided by Defendant, had their Social Security or Tax Identification Number exposed in the Incident are eligible for this relief.

ii.    CCPA Payments: Settlement Class Members in California for whom certain information was exposed as a result of the Data Incident may file a claim for a portion of the Net Settlement Fund, at least $100 but no less than 2 times the value of the *Pro Rata* Cash Payment, up to $599.00. This information is limited to: 1) Driver's license, passport, Non-U.S. National Identification Number, or Other Government ID; 2) Credit or Debit Card Information, or Credit or Debit Card Number, and 3) Treatment, Diagnosis, or Prescription Information, or Health Condition Information. No out-of-pocket losses are required to make this claim. Only those Settlement Class Members whom the Settlement Administrator has confirmed, based on information to be provided by Defendant, had one or more of the types of information at issue in this subheading exposed in the Incident ***and*** who reside in California are eligible for this relief.

iii.    Pro Rata Cash Payments: Settlement Class Members, with no documented out-of-pocket losses, no Social Security number exposed, and no California CCPA claim, can claim a pro rata cash payment by submitting a timely and valid Claim Form for a portion of the Net Settlement Fund. The amount of the cash payment shall be increased or decreased on a pro rata basis, based on the funds remaining in the Settlement Fund, if any, following the payment of the following: the Attorneys' Fees and Expenses Award, any Service Awards, Administrative Costs, CAFA Notice, claims for Documented Out-of-Pocket Losses (as may be reduced

pro rata, if required), and claims for SSN/TIN Impact Payments, and CCPA Payments (collectively, the "Total Cost of Settlement").

iv.    Should the amount of claims exhaust the Net Settlement Fund, the claims paid to Settlement Class Members will be paid in this fashion: Documented Out-of-Pocket Losses first, then SSN/TIN Impact Payments, then CCPA Payments, and then Pro Rata Cash Payments.

## V.    <u>Preliminary and Final Approval of the Settlement</u>

5.1    The Parties stipulate to: (i) certification, for settlement purposes only, of the Settlement Class and subclasses (as defined above), pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (ii) appointment of Plaintiffs as the Settlement Class Representatives; and (iii) appointment of Class Counsel as lead counsel.

5.2    Certification of the Classes shall be binding only with respect to the Settlement of the Action and only if the Final Approval Order and Judgment contemplated by this Settlement Agreement becomes Final and the Effective Date occurs. Nothing in this Settlement Agreement shall serve in any fashion, either directly or indirectly, as evidence or support for certification of a class or classes other than for settlement purposes, and the Parties intend that the provisions herein concerning certification of the Classes shall have no effect whatsoever in the event the Final Approval Order and Judgement is not entered, as defined in Section XII.

5.3    If the Settlement Agreement is not finally approved by the Court for any reason whatsoever, then this Settlement Agreement will be void subject to Section XII below, and no doctrine of waiver, estoppel or preclusion will be asserted in any further litigated proceedings in this Action. No agreements made by or entered into by Defendant in connection with the Settlement Agreement may be used by Plaintiffs, any Settlement Class Member or any other person to establish any of the elements of liability in any further litigated proceedings, whether in the Action or any other judicial proceeding.

5.4    Class Counsel shall file the Settlement and Release Agreement in the Court and move for Preliminary Approval, requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit 4, or an order substantially similar to such form, which shall, *inter alia*:

(a)    Stay all proceedings in the Court, other than those related to approval of the Settlement;

(b)    Preliminarily certify the Settlement Class for Settlement purposes only and preliminarily approve the Settlement ;

(c)    Appoint Named Plaintiffs as the Class Representative for Settlement purposes only;

(d)     Appoint Class Counsel as counsel of the Settlement Class, for Settlement purposes only;

(e)     Approve the Notice Program;

(f)     Approve the form and contents of a long-form notice (the "Long Form Notice") to be posted on the Settlement Website substantially similar to the one attached hereto as Exhibit 3, and a short-form, summary notice to be emailed where possible and mailed to Settlement Class Members (the "Short Form Notice") substantially similar to the one attached hereto as Exhibit 2, which together shall include a fair summary of the Settling Parties' respective litigation positions, the general terms of the Settlement set forth in this Agreement, a description of the different Settlement Benefits available to Settlement Class Members, instructions for how to object to or submit a Request for Exclusion from the Settlement, and the date, time and place of the Final Approval Hearing;

(g)     Appoint the Settlement Administrator, Simpluris, Inc.;

(h)     Schedule an appropriate Opt-Out Deadline, Objection Deadline, and other Settlement-related dates and deadlines to be included in the Class Notice; and

(i)     Schedule the Final Approval Hearing.

5.5     Defendant will not oppose entry of the Preliminary Approval Order so long as it is substantially in the form attached to this Agreement as Exhibit 4 and is otherwise consistent with this Agreement.

5.6     Class Counsel and Defendant's counsel shall request that the Court hold a Final Approval Hearing after notice is completed and approximately 150 days after the entry of the Preliminary Approval Order, subject to the Court's availability, and grant Final Approval of the Settlement set forth herein.

5.7     After the Preliminary Approval, Plaintiffs shall move for Final Approval of the Settlement no later than 30 days prior to the Final Approval Hearing. Plaintiffs' motion shall attach a proposed Final Approval Order and Judgment substantially in the form of **Exhibit 5** hereto and shall, among other things:

(a)     Determine that the Agreement is fair, adequate, and reasonable;

(b)     Finally certify the Settlement Class for Settlement purposes only;

(c)     Determine that the Notice Program satisfied due process requirements;

(d)     Bar and enjoin any Settlement Class Members who did not timely Opt-Out in accordance with the requirements of the Agreement from asserting any of the Released Claims;

(e)     Release and forever discharge Defendant and the Released Parties from the Released Claims, as provided for in this Agreement; and

(f)     Determine whether and to what extent to approve Class Counsel's application for an Attorneys' Fees and Expenses Award and for Class Representative Awards to the Named Plaintiffs.

5.8    For the Effective Date to occur, the Court must enter a Final Approval Order and Judgment:

(a)     approving this Settlement Agreement without modification (except insofar as the Parties have agreed to such modification) as fair, reasonable and adequate to the Settlement Classes and direct its consummation according to its terms;

(b)     finding that the form and manner of notice implemented pursuant to this Settlement Agreement constitutes the best notice practicable under the circumstances; constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of Plaintiffs' claims, the terms of the proposed Settlement, the right to object to the proposed Settlement, the right to exclude themselves from the proposed Settlement, and the right to appear at the Final Approval Hearing; constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and meets the requirements of due process and applicable rules of civil procedure;

(c)     finding that all members of the Settlement Classes (except those who have timely and validly excluded themselves) shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue;

(d)     directing that upon the Effective Date, judgment be entered dismissing the Action with prejudice;

(e)     incorporating the release and covenant not to sue set forth in the Settlement Agreement, and forever barring any claims or liabilities related to any Released Claims; and

(f)     retaining continuing and exclusive jurisdiction over matters relating to the interpretation, administration, implementation, and enforcement of this Settlement Agreement.

## VI.    <u>Notice Program</u>

6.1    Within ten (10) business days after the later of entry of the Preliminary Approval Order and provision of detailed wiring instructions and an executed W-9 form by the Settlement Administrator Defendant will advance to the Settlement Administrator the estimated costs for Notice and Administration Expenses, which will be credited toward the Settlement Sum to be paid by Prudential.

6.2    Within ten (10) business days after entry of the Preliminary Approval Order, Defendant will provide the Settlement Administrator with a list of Settlement Class Members in an Excel spreadsheet that includes, to the extent available, the name, email address, and mailing address of each Settlement Class Member as reflected in Defendant's business records. The Settlement Administrator shall cause notice to be disseminated to the Settlement Class pursuant to the Preliminary Approval Order and the Notice Program as described herein, the costs of which shall be the Administrative Costs.

6.3    Within twenty-five (25) days of the Settlement Administrator's receiving the Settlement Class Member data described in Paragraph 6.2, notice shall be provided to the Settlement Class as follows:

(a)    The Settlement Administrator shall email the Short Form Notice to Settlement Class Members who have known valid email addresses. E-mails sent shall have a "return receipt" or other such function that permits the Settlement Administrator and/or its mailing agent to reasonably determine whether e-mails have been delivered and/or opened.  E-mails shall have a hyperlink that Settlement Class Member recipients may click and be taken to a landing page on the Settlement Website that contains the Class Notice and Claim Form, and they will also have a scannable Quick Response or "QR" code.

(b)    The Settlement Administrator shall mail the Short Form Notice via First Class U.S. mail to all Settlement Class Members, including those for whom known valid email addresses are available. The Short Form Notice will also print the link to the Settlement Website and have a scannable QR code that will direct individuals to a landing page on the Settlement Website that contains the Class Notice and Claim Form. Before mailing the Short Form Notice, the Settlement Administrator shall conduct a National Change of Address (NCOA) search and update the mailing addresses of Settlement Class Members accordingly. The Settlement Administrator shall also make reasonable efforts to find updated addresses for any Short Form Notice returned as undeliverable and, if found, re-mail the Short Form Notice to the new address within ten (10) days of receipt of the notification of undeliverability. The response deadlines shall be extended by 14 days for Settlement Class Members sent a re-mailed Short Form Notice.

14

(c)     The Settlement Administrator shall establish a dedicated Settlement Website. The Settlement Administrator shall post copies of the Short Form Notice and Long Form Notice approved by the Court and the Claim Form, on the website. The Settlement Administrator shall also post this Agreement, the Motion for Preliminary Approval of the Settlement, the Motion for Final Approval of the Settlement, and the Preliminary Approval Order, the Motion for the Attorneys' Fees and Expenses Award and Class Representative Awards, and the Final Approval Order and Judgment. The Settlement Administrator shall maintain and update the website throughout the settlement administration.

(d)     The Settlement Website will provide an option for Settlement Class Members to use their unique codes to upload objections to the Settlement or to upload their Requests for Exclusion.

(e)     The Settlement Administrator shall make available a toll-free number with interactive voice recognition, FAQs, and an option to speak to a live operator to address inquiries from Settlement Class Members.

6.4     The Notice Program shall be subject to approval by the Court. The Settlement Administrator may adjust the Long Form Notice and Short Form Notice approved by the Court in consultation with and agreement of the Settling Parties, as may be reasonable and necessary and not inconsistent with such approval; however, no such adjustments may be implemented without prior approval of the Court. Before the Final Approval Hearing, Class Counsel shall cause to be filed with the Court an appropriate declaration from the Settlement Administrator demonstrating compliance with the court-approved Notice Program.

6.5     The Notice Program shall commence within thirty (30) days of the entry of the Preliminary Approval Order and shall be completed as set forth therein.

6.6     In conformance with the time limitations set forth in 28 U.S.C. § 1715(b), the Settlement Administrator, within 10 days after the filing of the motion for preliminary approval, will cause the CAFA Notice to be prepared and sent to the appropriate officials.

6.7     No later than 21 days prior to the Final Approval Hearing, the Settlement Administrator shall file with the Court an affidavit or a declaration stating that the Notice required by the Settlement Agreement has been given in accordance with the terms of the Preliminary Approval Order.

## VII.    Exclusions/Opt-Outs

7.1     Each Settlement Class Member wishing to opt-out from the Settlement Class must individually sign and timely send a Request for Exclusion via: (1) U.S. mail, to the address designated by the Settlement Administrator; (2) e-mail, to the e-mail address designated by the Settlement Administrator; or (3) the Settlement Website, using a form prepared by the Settlement Administrator and made available for download and/or completion on the Settlement Website.

7.2    For a Request for Exclusion to be properly completed and executed, it must: (a) state the Settlement Class Member's full name, address, telephone number, and email address (if applicable); (b) contain the Settlement Class Member's personal signature or the signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Action (such as a trustee, guardian, or other person acting under a power of attorney); and (c) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement. All Requests for Exclusion must be submitted individually in connection with a Settlement Class Member; *i.e.*, one request is required for each Settlement Class Member seeking exclusion.

7.3    To be effective, a Request for Exclusion must be postmarked, emailed, or submitted online no later than the Opt-Out Deadline.

7.4    Within fourteen (14) days after the Opt-Out Deadline, the Settlement Administrator shall provide the Settling Parties with a complete and final list of all Opt-Outs who have timely and validly excluded themselves from the Settlement Class and, upon request, copies of the completed Requests for Exclusion. Class Counsel may file these materials with the Court, with any Personal Information other than names and cities and states of residence redacted, no later than seven (7) days prior to the Final Approval Hearing.

7.5    All Persons who Opt-Out from the Settlement Class shall not receive any benefits of or be bound by the terms of this Agreement. All Persons falling within the definition of the Settlement Class who do not Opt-Out shall be bound by the terms of this Agreement and the Final Approval Order entered thereon.

## VIII.    **Objections**

8.1    Each Settlement Class Member who does not file a timely Request for Exclusion may send an Objection Notice or may appear at the Final Approval Hearing to state an objection. The Class Notice shall instruct Settlement Class Members who wish to object to the Agreement to send their Objection Notices to the Settlement Administrator by mail, email, or via upload to the Settlement Website, or appear at the Final Approval Hearing. The Long Form Notice shall make clear that the Court can only approve or deny the Agreement and cannot change the terms. The Class Notice shall advise Settlement Class Members of the Objection Deadline.

8.2    Any Settlement Class Member who submits an Objection Notice must include in any such Notice: (i) his/her full name, address, telephone number, and e-mail address; (ii) the case name and number of the Action; (iii) the reason for the objection;  (iv) the objector's signature or the signature of someone authorized to sign on the objector's behalf; (v) the case name and civil action number of any other objections the objector or his or her counsel have made in any other class action cases in the last 4 years; and (vi) whether the objector intends to appear at the Final Approval Hearing on his or her own behalf or through counsel.  If represented by counsel, the objecting Settlement Class Member must also provide the name, address, and telephone number of his/her counsel.  Counsel for any objector must enter a Notice of Appearance no later than 14 days before the Final Approval Hearing.

8.3     Any Settlement Class Member who fails to timely submit to the Settlement Administrator an Objection Notice by mail, email, or via the Settlement Website or appear at the Final Approval Hearing shall not be permitted to object to the approval of the Agreement and shall be foreclosed from seeking any review of the Agreement or the terms of the Agreement by appeal or other means. To be timely submitted, an Objection Notice must be postmarked, emailed, or submitted online no later than the Objection Deadline. The Court, in its discretion, may permit discovery of any objector.

8.4     If the date for the Final Approval Hearing is changed, the Settlement Administrator will post the new hearing date on the Settlement Website and will provide notice of the new hearing date to Settlement Class Members who submitted timely objections to the Settlement.

8.5     Settlement Class Members cannot both object to and exclude themselves from this Agreement. The Settlement Administrator shall attempt to contact any Settlement Class Members who submit both a Request for Exclusion and an Objection Notice at least one time by email or, if no email address is available, by telephone where a telephone number is available, or by regular U.S. mail to give the Settlement Class Members an opportunity to clarify whether they choose to exclude themselves or proceed with their objection. The Settlement Class Member shall have until fourteen (14) days prior to the Final Approval Hearing to inform the Settlement Administrator regarding his or her final choice. Any Settlement Class Member who attempts to both object to and exclude themselves from this Agreement and fails to follow up regarding their final choice will be deemed to have excluded themselves from the Settlement and will be considered to have forfeited their objection.

## IX.    <u>Administration of the Settlement Fund</u>

9.1     The Settlement Administrator shall establish the Settlement Fund in a non-interest-bearing account. The Settlement Administrator shall administer the Settlement Fund, subject to the continuing jurisdiction of the Court and from the earliest possible date, as a qualified settlement fund ("QSF") as defined in Treasury Regulation § 1.468B-1, *et seq*. Any taxes owed by the Settlement Fund shall be paid by the Settlement Administrator out of the Settlement Fund. Defendant shall not have any other financial obligation under the Agreement. In addition, under no circumstances will Defendant have any liability for taxes or tax expenses under the Agreement.

9.2     In consideration of the releases, covenants, and other agreements set forth in this Settlement Agreement, Prudential shall pay the Settlement Sum, less the costs previously advanced to the Settlement Administrator, into the QSF by check or wire transfer within 30 days after Preliminary Approval, provided that, at least 20 days prior to payment of the Settlement Sum, Prudential has received from the Settlement Administrator written instructions specifying the payee, tax ID number, wire transfer instructions and/or physical address for delivery of the check with a contact person name and phone number and an executed W-9 form (if necessary).

9.3     The Settlement Administrator shall pay any additional notice and administration costs, Class Representative Awards (if any), and the Attorneys' Fees and Expenses Awards (if any) out of the Settlement Fund within five (5) days of the Effective Date, or within five (5) days

after the Court awards such Attorneys' Fees and Expenses Award and Class Representative Award, whichever is later.

9.4    The Settlement Administrator shall also determine the Settlement Awards to be paid to the Settlement Class Members according to the procedure set forth herein.

9.5    Neither Prudential nor its counsel shall have any role or responsibility in allocating or challenging the payment of distributions from the Settlement Fund.

9.6    Settlement Awards. The Net Settlement Fund shall be distributed between all Settlement Class Members who submit a valid claim form. Each Settlement Class Member's eligibility for monetary relief will be based in part on whether the claimant has documented out-of-pocket losses, whether their Social Security number was exposed, whether they are eligible for a California CCPA payment, or whether, absent any of the above, they are still a verified Settlement Class Member. Additionally, all other claimants with no out-of-pocket losses, no Social Security numbers exposed, or no California CCPA payment will share the remainder of the fund on a *pro rata* basis. No settlement funds shall revert to Defendant. The Claim Form allows eligible claimants to receive their settlement payment via a simple online or check payment option.

9.7    Settlement Class Members will be notified of the option to receive digital payment (such as Venmo, PayPal, or other options) in the Short Form Notice and will be directed to the Settlement Website to provide their preference. The Settlement Administrator shall distribute Settlement Awards by electronically transferring funds or mailing checks no later than thirty (30) days after the Effective Date. No Settlement Awards will be distributed without authorization from the Settling Parties. Settlement Award checks shall be valid for a period of ninety (90) days from issuance, and shall state, in words or substance, that the check must be cashed within ninety (90) days, after which time it will become void. To the extent that a Settlement Check is not cashed within the specified time period after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Settlement Class Member by email and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Settlement Class Member using advanced address searches or other reasonable methods; and (3) re-issue a check or mail the Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. Any reissued settlement checks issued to Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Settlement Class Members within that time.

9.8    The Settlement Administrator shall, within ten (10) days of receipt of notice of digital payment failure or of unclaimed digital payment, mail a paper check for the Settlement Award to each Settlement Class Member whose digital payment failed or who has not claimed their digital payment. In either event, the payment shall be subject to the issuance procedures set forth above in 9.6.

9.9    If there is any balance remaining in the Settlement Fund Account ninety (90) days after the Settlement Administrator completes the process for stopping payment on any Settlement

Award checks that remain uncashed, Class Counsel shall use its discretion regarding the proper distribution of remaining funds, including potentially making a second distribution to claimants on a "flat-rate" or other basis wherein all claimants are treated equitably, regardless of bucket claimed, for the sole purpose of a second distribution, or determining that the remaining funds will be distributed to a *cy pres* recipient approved by the Court. The Settling Parties propose the Electronic Privacy Information Center ("EPIC") as the *cy pres* recipient. EPIC is a 501(c)(3) nonprofit that advocates for consumer privacy protections. Neither the Settling Parties nor their counsel are affiliated with EPIC. In no event shall any of the Settlement Fund revert to Defendant.

9.10    No Person shall have any claim against the Settlement Administrator, Defendant, Defendant's Counsel, Class Counsel, and/or the Named Plaintiffs based upon distributions of benefits to Settlement Class Members.

9.11    No later than twenty-one (21) days prior to the Final Approval Hearing, the Settlement Administrator shall file with the Court an affidavit or a declaration stating that the Notice required by the Settlement Agreement has been given in accordance with the terms of the Preliminary Approval Order.

9.12    No later than twenty-one (21) days prior to the Final Approval Hearing, the Settlement Administrator shall file with the Court an affidavit or declaration stating that the CAFA Notice has been given in accordance with the statutory requirements.

## X.    Releases

10.1    Upon the Effective Date, and in consideration of the Settlement benefits described herein, each Settlement Class Member that did not submit a valid Request for Exclusion, and each Named Plaintiff, whether or not they received a Settlement Award, will be deemed by this Agreement and by operation of the Final Approval Order to have fully, finally, completely and unconditionally released, forever discharged, and acquitted the Released Parties from any and all of the Released Claims, and each Settlement Class Member, including each Named Plaintiff, will be deemed to have also released Unknown Claims.

10.2    The Agreement shall be the sole and exclusive remedy for any and all Released Claims, including Unknown Claims, of Settlement Class Members. Upon entry of the Final Approval Order, each Settlement Class Member shall be barred from initiating, asserting, or prosecuting against any Released Party any claims that are released by operation of the Agreement and the Final Approval Order.

10.3    With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date, the Releasing Parties expressly have, and by operation of the Final Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law or any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or
> releasing party does not know or suspect to exist in his or her favor
> at the time of executing the release and that, if known by him or her,
> would have materially affected his or her settlement with the debtor
> or released party.

Releasing Parties understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases. In connection with such waivers and relinquishment, Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the Settlement Agreement, but that they release fully, finally, and forever all Released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such addition or different facts. Plaintiffs and Defendant acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

10.4    Plaintiffs and each Settlement Class Member further covenant and agree that they will not sue or bring any action or cause of action, or seek restitution or other forms of monetary relief, including by way of third-party claim, crossclaim, or counterclaim, against any of the Released Parties in respect of any of the Released Claims; they will not initiate or participate in bringing or pursuing any class action against any of the Released Parties in respect of any of the Released Claims; if involuntarily included in any such class action, they will not participate therein; and they will not assist any third party in initiating or pursuing a class action lawsuit in respect of any Released Claims.

10.5    The releases set forth in this Section may be raised as a complete defense and bar to any action or demand brought in contravention of this Settlement Agreement, including but not limited to any and all future claims for contribution or indemnity (and related claims where the injury to the non-settling defendants is their liability or risk of liability to Settlement Class Members) related to the Released Claims.

10.6    It is expressly understood and acknowledged by the Parties that the release and covenant not to sue set forth in this Section together constitute essential and material terms of the Settlement Agreement to be included in the proposed Final Approval Order and Judgment.

10.7    Upon entry of the Final Approval Order, Defendant shall have fully, finally, and forever released, relinquished, and discharged as against Named Plaintiff, all claims arising out of, relating to or in connection with the institution, prosecution, assertion, defense, settlement, or resolution of the Action (excluding, for avoidance of doubt, any claims to enforce the Settlement or the Final Approval Order and Judgment).

## XI.    Attorneys' Fees and Class Representative Award

11.1    Class Counsel shall apply to the Court for an Attorneys' Fees and Expenses Award. Class Counsel will seek attorneys' fees in an amount not to exceed one-third of the Settlement

Sum, or One Million Five Hundred and Eighty-Six Thousand Seven Hundred and Fifty Dollars ($1,586,750.00). Class Counsel will also seek reimbursement of reasonable costs incurred of up to Fifty Thousand Dollars ($50,000) in prosecuting this action from the Settlement Fund. The Attorneys' Fees and Expenses Award will be payable solely from the Settlement Fund. Class Counsel will serve Defendant's Counsel with such application no later than sixty (60) days after the Court issues an Order granting Preliminary Approval. Defendant shall take no position with regard to Class Counsel's application for an Attorneys' Fees and Expenses Award if the application complies with the provisions of this section.

11.2    Class Counsel shall apply to the Court for a Class Representative Award of $2,000 for the Named Plaintiffs, payable solely from the Settlement Fund. Class Counsel will serve Defendant's Counsel with such application no later than sixty (60) days after the Court enters the Preliminary Approval Order. Defendant shall take no position with regard to Class Counsel's application for Class Representative Award to the extent it does not exceed $2,000 for each Named Plaintiff.

11.3    The Settlement Administrator shall pay through wired deposits the Attorneys' Fees and Expenses Award (if any) and Class Representative Award (if any) from the Settlement Fund to Class Counsel within five (5) days of the Effective Date, or within five (5) days after the Court awards such Attorneys' Fees and Expenses Award and Class Representative Awards, whichever is later. Class Counsel will instruct the Settlement Administrator as to the payment directions for the Attorneys' Fees and Expenses Award and the Class Representative Award.

11.4    The finality or effectiveness of this Agreement shall not depend upon the Court awarding any particular Attorneys' Fees and Expenses Award or Class Representative Awards. No order of the Court, or modification or reversal or appeal of any order of the Court concerning the amount(s) of the Attorneys' Fees and Expenses Award and/or Class Representative Awards shall affect whether the Judgment is final or constitute grounds for cancellation or termination of this Agreement.

11.5    With the sole exception of Prudential causing the payment of the Settlement Sum into the QSF, Prudential shall have no responsibility for, shall take no position with respect to, and have no liability whatsoever with respect to, any payment whatsoever to Class Counsel or allocation among Class Counsel.  The sole source of any payment of attorneys' fees shall be the Settlement Fund.

## XII.    Conditions of Settlement, Cancellation, or Termination

12.1    This Agreement is subject to and conditioned upon the occurrence of all of the following events:

(a)    The Court's entry of a Preliminary Approval Order;

(b)    The Court's entry of a Final Approval Order and Judgment; and

(c)    The occurrence of the Effective Date.

12.2    In the event that the Court declines to preliminarily or finally approve the Agreement, or the Court (or any other court) requires material modifications of the Settlement Agreement, and the Parties do not jointly agree to accept the Settlement Agreement as judicially modified or are unable to jointly agree to modify the Settlement Agreement for resubmission to the Court for approval as contemplated in 12.3, Plaintiffs and Defendant shall have the right to terminate   the Agreement by providing written notice of his, her or its election to do so ("Termination Notice"), through counsel, to all other Parties hereto within 7 days.

12.3    In the event the Agreement is not preliminarily or finally approved by the Court, or if final approval is reversed on appeal, the Settling Parties shall attempt to negotiate in good faith the terms of a new settlement agreement that, as closely as possible, approximates the provisions contained in this Agreement while addressing the issues that prompted the denial or reversal.

12.4    In the event of termination, this Agreement shall have no force or effect  and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if this Settlement Agreement had never been executed, and any orders entered by the Court in connection with this Settlement Agreement shall be vacated.

12.5 In the event of termination, the Settlement Fund (including the accrued interest thereon), less any Notice and Administration Expenses actually incurred or paid, and less any Taxes paid or due or owing, shall be refunded to Defendant in accordance with instructions provided by Defendant to Class Counsel no later than 7 days after termination.

12.6    Defendant shall have the unilateral right to terminate the Agreement and all of its payment obligations hereunder, except notice and settlement administration costs actually incurred, if more than the agreed upon percentage of Persons in the Settlement Class elect to exclude themselves from the Settlement Class pursuant to this Agreement. Defendant may exercise this right only by delivering written notice of intention to terminate to Class Counsel no later than ten (10) days following Defendant's receipt from the Settlement Administrator of the list containing all Opt-Outs referred to in Paragraph 7.4. Should this Agreement be terminated pursuant to this provision, the Parties will be restored to their respective litigation positions prior to the Mediation that led to this Agreement.

## XIII.    Miscellaneous Provisions

13.1    The Settling Parties and their counsel agree to undertake their best efforts and mutually cooperate to effectuate this Agreement, and the terms of the proposed Settlement set forth herein, including taking all steps and efforts contemplated by this Agreement, and any other steps and efforts which may become necessary by order of the Court or otherwise.

13.2    The Settling Parties intend this Agreement to be a final and complete resolution of all disputes between them with respect to the Action. The Agreement compromises claims that are contested and shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or defense. The Settling Parties each agree that the Settlement and this Agreement were

22

negotiated in good faith and at arm's length by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.

13.3    This Agreement may be amended only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest. Amendments may be made without additional notice to the Settlement Class Members unless such notice is required by the Court. No amendment to the Settlement Agreement may be made without Court approval once the Court has considered the Motion for Preliminary Approval.

13.4    Except as otherwise provided, this Agreement contains the entire agreement between the Settling Parties and supersedes any prior agreements or understandings between them. All terms of this Agreement are contractual and not mere recitals and shall be construed as if drafted by all Settling Parties to this Agreement. The terms of this Agreement are and shall be binding upon each of the Settling Parties to this Agreement, their agents, attorneys, employees, successors, and assigns, and upon all other Persons or entities claiming any interest in the subject matter hereof, including any Settlement Class Member.

13.5    This Agreement shall be subject to, governed by, construed, and enforced pursuant to the laws of the State of New Jersey. The Court will retain jurisdiction over the Settling Parties to enforce the Settlement until performance in full of the terms of the Agreement.

13.6    Before declaring any provision of this Agreement invalid, the Court will first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents, so as to define all provisions of this Settlement valid and enforceable. If any term or provision of this Agreement is held to be invalid or unenforceable, the remaining portions of this Agreement will continue to be valid and will be performed, construed, and enforced to the fullest extent permitted by law, and the invalid or unenforceable term will be deemed amended and limited in accordance with the intent of the Settling Parties, as determined from the face of the Agreement, to the extent necessary to permit the maximum enforceability or validation of the term or provision.

13.7    Except as otherwise specifically provided for herein, each party shall bear their own attorney's fees, costs, and expenses, taxable or otherwise, incurred by them in or arising out of the Action and shall not seek reimbursement thereof from any other party to this Agreement.

13.8    In any suit or court action to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the other their attorneys' fees and costs, including expert witness fees.

13.9    The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

13.10    As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

13.11   Any individual signing this Agreement on behalf of any Person represents and warrants that he or she has full legal right, power, and authority to execute and enter into the terms and conditions of this Agreement on behalf of such Person.

13.12   The Settling Parties, and each of them, acknowledge, warrant, represent, and agree that in executing and delivering this Settlement Agreement, through their counsel, they do so freely, knowingly, and voluntarily, that they had an opportunity to and did discuss its terms and their implications with legal counsel, that they are fully aware of the contents and effect of this settlement, and that such execution and delivery is not the result of any fraud, duress, mistake, or undue influence whatsoever.  Each Party acknowledges, agrees, and specifically warrants that he, she, or it has received independent legal advice with respect to the advisability of entering into this Settlement Agreement and the Releases, the legal effects of this Settlement Agreement and the Releases, and fully understands the effect of this Settlement Agreement and the Releases.

13.13   The Settling Parties believe this Agreement is a fair, adequate, and reasonable settlement of the Action, and arrived at this Agreement after arm's-length negotiations by experienced counsel and with the assistance of an experienced mediator.

13.14   The Settling Parties agree to submit to the jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of the Agreement and its exhibits, but for no other purpose.

13.15   All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement, including but not limited to those relating to all information exchanged for purposes of mediation or under the auspices of Federal Rule of Evidence 408 and its state law equivalent.

13.16   Any notice, instruction, application for Court approval, or application for Court orders sought in connection with this Agreement or other document to be given by any Settling Party to any other Settling Party shall be in writing and delivered by email, if to Defendant to the attention of the Defendant's Counsel, or if to the Named Plaintiffs or the Settlement Class to Class Counsel, or to other recipients as the Court may specify.

13.17   This Agreement may be executed by the Settling Parties or their authorized representatives in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Scanned signatures or signatures sent by email or facsimile shall be as effective as original signatures.

13.18   The Settling Parties agree and acknowledge that this Agreement carries no precedential value and is the result of extensive, arms-length negotiations.

13.19   The Settling Parties represent and warrant that they have not assigned or otherwise transferred (via subrogation or otherwise) any right, title, or interest to or in any of the Released Claims.

**IN WITNESS THEREOF**, the Settling Parties each acknowledge they have read the foregoing Agreement, accept and agree to the provisions contained in this Agreement, and hereby execute it voluntarily and with full understanding of its consequences. **IT IS SO AGREED**.


Connie Boyd, *individually and*                    Defendant's Counsel on behalf of Prudential
*as a Class Representative*                         Financial, Inc.
                                                    Signature: _____


Signature: _____


                                                    Date: _____

Date: _____



Gina Adinolfi, *individually and*
*as a Class Representative*


Signature: _____



Date: _____



John Moss, *individually and*
*as a Class Representative*


Signature: _____



Date: _____

Stephanie Demaro, *individually and
as a Class Representative*

Signature: _____

Date: _____

Roger Menhennett, *individually and
as a Class Representative*

Signature: _____

Date: _____

Plaintiffs' Counsel

Kevin Laukaitis

Signature: _____

Date: _____ May 30, 2025 _____

Andrew J. Sciolla

Signature: _____

Date: _____

Daniel Srourian

Signature: _____

Date: _____

Joseph J. DePalma

Signature: *Joseph J. DePalma*

Date: May 30, 2025

Steven M. Nathan

Signature: _____

Date: _____

27

Daniel Srourian

Signature: _____

Date: _____

Joseph J. DePalma

Signature: _____

Date: _____

Steven M. Nathan

Signature: _Steven Nathan_____

Date: _____May 30, 2025_____

Plaintiffs' Counsel

Kevin Laukaitis

Signature: _____

Date: _____

Andrew J. Sciolla

Signature: *Andrew Sciolla*

Date: May 30, 2025

Daniel Srourian

Signature: _____

Date: _____

Joseph J. DePalma

Signature: _____

Date: _____

Steven M. Nathan

Signature: _____

Date: _____

Plaintiffs' Counsel

Kevin Laukaitis

Signature: _____

Date: _____

Andrew J. Sciolla

Signature: _____

Date: _____


Daniel Srourian

Signature: _____

Date: _____ 05/30/25 _____

Joseph J. DePalma

Signature: _____

Date: _____

Steven M. Nathan

Signature: _____

Date: _____

27

**IN WITNESS THEREOF**, the Settling Parties each acknowledge they have read the foregoing Agreement, accept and agree to the provisions contained in this Agreement, and hereby execute it voluntarily and with full understanding of its consequences. **IT IS SO AGREED**.

Connie Boyd, *individually and*
*as a Class Representative*

Signature: _____

Date: _____

Defendant's Counsel on behalf of Prudential
Financial, Inc.
Signature: _____

Date: _____

Gina Adinolfi, *individually and*
*as a Class Representative*

Signature: _____

Date: _____

John Moss, *individually and*
*as a Class Representative*

Signature: _____

Date: _____

25

**IN WITNESS THEREOF**, the Settling Parties each acknowledge they have read the foregoing Agreement, accept and agree to the provisions contained in this Agreement, and hereby execute it voluntarily and with full understanding of its consequences. **IT IS SO AGREED.**

Connie Boyd, *individually and*
*as a Class Representative*

Signature: _____

Date: _____

Defendant's Counsel on behalf of Prudential Financial, Inc.
Signature: _____

Date: _____

Gina Adinolfi, *individually and*
*as a Class Representative*

Signature: _____

Date: _____

John Moss, *individually and*
*as a Class Representative*

Signature: *john moss* _____

Date: 30-May-2025 _____

Stephanie Demaro, *individually and*
*as a Class Representative*

Signature: _____
Stephanie DeMaro (May 30, 2025 15:02 EDT)

Date: 30-May-2025
_____

Roger Menhennett, *individually and*
*as a Class Representative*

Signature: _____

Date: _____

Anthony Guissarri, *individually and*
*as a Class Representative*

Signature: _____

Date: _____

26

**IN WITNESS THEREOF**, the Settling Parties each acknowledge they have read the foregoing Agreement, accept and agree to the provisions contained in this Agreement, and hereby execute it voluntarily and with full understanding of its consequences. **IT IS SO AGREED**.


Connie Boyd, *individually and*
*as a Class Representative*

Signature: _Connie Boyd_
Constance Boyd (May 30, 2025 13:40 CDT)

Date: _05/30/25_


Defendant's Counsel on behalf of Prudential Financial, Inc.
Signature: _____

Date: _____


Gina Adinolfi, *individually and*
*as a Class Representative*

Signature: ___/s/ Daniel Srourian___ as attorney-in-fact for Gina Adinolfi

Date: _May 30, 2025_


John Moss, *individually and*
*as a Class Representative*

Signature: _____

Date: _____


25

Stephanie Demaro, *individually and
as a Class Representative*


Signature: _____


Date: _____


Roger Menhennett, *individually and
as a Class Representative*

Signature: *Roger Menhennett*
Roger Menhennett (May 30, 2025 17:21 EDT)
_____

Date: 05/30/25
_____


Anthony Guissarri, *individually and
as a Class Representative*

Signature: *Andrew Sciolla*  as attorney-in-fact for Anthony Guissarri
_____

Date: 05-30-2025
_____

26

# EXHIBIT 1

*In Re: Prudential Financial, Inc. Data Breach Litigation*
Case No. 2:24-cv-06818
United States District Court for the District of New Jersey

**DATA INCIDENT SETTLEMENT CLAIM FORM**

---

## GENERAL INSTRUCTIONS

**Who is eligible to file a claim?** The court has defined the Class this way: "All individuals within the United States of America whose Private Information was compromised in the Data Incident."

**Excluded from the Settlement Class** are: (1) Prudential and its officers and directors; (2) anyone who validly excludes themselves from the Settlement; (3) the Judge in this case, and the Judge's family and staff, (2) anyone responsible for perpetrating the Data Incident.

**COMPLETE THIS CLAIM FORM IF YOU ARE A CLASS MEMBER AND WISH TO RECEIVE ONE OR MORE OF THE FOLLOWING SETTLEMENT BENEFITS**

---

## AVAILABLE BENEFITS

Prudential will establish a Settlement Fund of $4,750,000.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs, Service Awards for the Plaintiffs, and the costs of administering the Settlement. All of the remaining funds will be used to pay for the benefits described below.

You may claim **ONE** of the following benefits:

    (1)  Documented Out-of-Pocket Losses
    (2)  Social Security Number/Tax Identification Number Impact Payments
    (3)  CCPA Payments (available to California residents only)
    (4)  Pro Rata Cash Payments

You may claim **ONE** benefit. If you claim more than one benefit, you will receive payment only for the highest value benefit.

These benefits are explained on the following page. Please read the explanations carefully before completing this Claim Form.

*In Re: Prudential Financial, Inc. Data Breach Litigation*
Case No. 2:24-cv-06818
United States District Court for the District of New Jersey

**DATA INCIDENT SETTLEMENT CLAIM FORM**

## EXPLANATION OF BENEFITS (CLAIM ONLY ONE)

**(1) Documented Out-of-Pocket Losses.** If you incurred actual, underlined documented out-of-pocket losses due to the Data Incident, you can get back up to **$5,000.00**. The losses must have occurred between February 4, 2024, and [Claims Deadline].

This benefit covers out-of-pocket expenses like:

- fees for credit reports, credit monitoring, or freezing and unfreezing your credit;
- cost to replace your IDs;
- charges incurred from actual identity theft, fraud, or other misuse of your personal information.

You need to send proof, like receipts, to show how much you spent or lost. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone are not enough to make a valid claim.

**(2) Social Security Number/Tax Identification Number Impact Payments.** If your Social Security Number or Tax Identification Number was exposed in the Data Incident, you can claim this benefit without proving you lost money.

We expect this payment to be **$200.00 - $599.00**. The actual payment amount will depend on the type of the different claims filed by all of the Class Members.

If you are not sure if you qualify for this benefit, please contact the Settlement Administrator.

**(3) CCPA Payments (available to California residents only).** If you live in California, a law called the California Consumer Privacy Act—CCPA—may allow you to claim a payment. To qualify, at least one of the following types of your personal information must have been exposed in the Data Incident:

- driver's license, passport, Non-U.S. Nation Identification Number, or other government-issued identification
- credit or debit card information
- treatment, diagnosis, prescription, or health condition

You can claim this benefit without proving you lost money.

We expect this payment to be **$100.00 - $599.00**. The actual payment amount will depend on the type of the different claims filed by all of the Class Members.

If you are not sure if you qualify for this benefit, please contact the Settlement Administrator.

**(4) Pro Rata Cash Payments.** If you do not qualify for benefits (1)–(3), you can still claim a Pro Rata Cash Payment. Once all litigation and administration costs have been paid, and all other benefits have been paid out, all of the money remaining in the Settlement Fund will be split evenly between Class Members who claim this benefit.

You can claim this benefit without proving you lost money.

We do not have a current estimate of how much this payment will be—it will depend on the type of different claims filed by all of the Class Members.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

<table>
<tr><td>

**Your claim must
be submitted
online or
postmarked by:
[DEADLINE]**

</td><td>

*In Re: Prudential Financial, Inc. Data Breach Litigation*
Case No. 2:24-cv-06818
United States District Court for the District of New Jersey

**DATA INCIDENT SETTLEMENT CLAIM FORM**

</td><td>

**Your claim must
be submitted
online or
postmarked by:
[DEADLINE]**

</td></tr>
</table>

The Settlement Agreement has complete details about these benefits. You can find a copy at www.[SettlementWebsite].com.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail: Prudential Data Incident Settlement, c/o Settlement Administrator, [PO Box Address].

**THE EASIEST WAY TO SUBMIT YOUR CLAIM IS ONLINE AT
www.[SettlementWebsite].com**

You may also print out and complete this Claim Form, and submit it by U.S. mail to:

Prudential Data Incident Settlement
c/o Settlement Administrator
[PO Box Address]

An electronic image of the completed Claim Form can also be emailed to info@[SettlementWebsite].com

You must submit online, mail, or email your Claim Form by **[Claims Deadline]**.

In the event the Settlement Administrator determines that your submitted Claim Form is incomplete or deficient in any other way, the Settlement Administrator will notify you of the deficiency. You will have an opportunity to cure the noted deficiency or to contact the Settlement Administrator to assist in curing the noted deficiency. You must then resubmit your Claim Form so the Claims Administrator can determine whether the noted deficiency has been cured.

In the event that you do not respond to the notice of deficiency or fail to take steps to cure the noted deficiency, you will be precluded from recovery in connection with the Settlement and if you fail to submit a request for exclusion, you will have released your claim.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

<table>
<tr><td>Your claim must be submitted online or postmarked by: [DEADLINE]</td><td>In Re: Prudential Financial, Inc. Data Breach Litigation<br>Case No. 2:24-cv-06818<br>United States District Court for the District of New Jersey<br><br>DATA INCIDENT SETTLEMENT CLAIM FORM</td><td>Your claim must be submitted online or postmarked by: [DEADLINE]</td></tr>
</table>

## I. CLASS MEMBER NAME AND CONTACT INFORMATION

Print your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this claim form. All fields are required. **Please print legibly.**

First Name

Last Name

Street Address

City

State

Zip Code

Email Address

Phone Number

Notice ID (if known)

## II. DOCUMENTED OUT-OF-POCKET LOSSES

☐ Check this box if you would like to claim reimbursement for <u>documented</u> out-of-pocket losses. You can get back up to $5,000.00

*Please complete the table below, describing the supporting documentation you are submitting.*

| Description of Documentation Provided | Amount |
|---|---|
| *Example: Fee for credit report* | *$40* |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL OUT-OF-POCKET LOSSES:** | |

If you have more expenses than rows, you may attach additional sheets of paper to account for them. Please print your name and sign the bottom of each additional sheet of paper.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

<table>
<tr><td>

**Your claim must
be submitted
online or
postmarked by:
[DEADLINE]**

</td><td>

*In Re: Prudential Financial, Inc. Data Breach Litigation*
Case No. 2:24-cv-06818
United States District Court for the District of New Jersey

**DATA INCIDENT SETTLEMENT CLAIM FORM**

</td><td>

**Your claim must
be submitted
online or
postmarked by:
[DEADLINE]**

</td></tr>
</table>

## III. SOCIAL SECURITY NUMBER/TAX IDENTIFICATION NUMBER IMPACT PAYMENT

☐ Check this box if you qualify and would like to claim a Social Security Number/Tax Identification Number Impact Payment.

You do not need to provide supporting documentation.

## IV. CCPA PAYMENT (AVAILABLE TO CALIFORNIA RESIDENTS ONLY)

☐ Check this box if you qualify and would like to claim a CCPA Payment.

You do not need to provide supporting documentation.

## V. PRO RATA CASH PAYMENT

☐ Check this box if you qualify and would like to claim a Pro Rata Cash Payment.

You do not need to provide supporting documentation.

## VI. PAYMENT SELECTION

Please select **one** of the following payment options, which will be used if you are claiming a cash payment.

☐ **PayPal**
   Email address, if different than you provided in Section 1:_____

☐ **Venmo**
   Mobile number, if different than you provided in Section 1:_____

☐ **Zelle**
   Email address or mobile number, if different than you provided in Section 1:_____

☐ **Virtual Prepaid Card**
   Email address, if different than you provided in Section 1:_____

☐ **Physical Check**
   Payment will be mailed to the address provided in Section 1.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com**

*In Re: Prudential Financial, Inc. Data Breach Litigation*
Case No. 2:24-cv-06818
United States District Court for the District of New Jersey

**DATA INCIDENT SETTLEMENT CLAIM FORM**

Your claim must
be submitted
online or
postmarked by:
[DEADLINE]

---

### VII. ATTESTATION & SIGNATURE

I swear and affirm on penalty of perjury that the information provided in this Claim Form, and any supporting documentation provided is true and correct to the best of my knowledge. I understand that my claim is subject to verification and that I may be asked to provide supplemental information by the Settlement Administrator before my claim is considered complete and valid.

_____          _____          _____
Signature                                        Printed Name                                        Date

# EXHIBIT 2

**TO:**           <<Email Address>>
**FROM:**     "Prudential Data Incident Settlement" <<info@[SettlementWebsite].com>>
**SUBJECT:**  Prudential Data Incident Settlement – You are Eligible to File a Claim

---

### LEGAL NOTICE

*In Re: Prudential Financial, Inc. Data Breach Litigation*
Case No. 2:24-cv-06818
United States District Court for the District of New Jersey

**If you were impacted by the February 2024
<u>Prudential Financial</u> data breach,
a proposed class action settlement may affect your rights,
and entitle you to a cash payment.**

*A court has authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*
***Please read this Notice carefully and completely.***

Dear << First >> << Last >>:

A Settlement has been reached with Prudential Financial, Inc. ("Prudential") in a class action lawsuit about the February 2024 cyberattack on certain of Prudential's systems (the "Data Incident"). Files containing private information were accessed.

Prudential denies that it did anything wrong, and the Court has not decided who is right. The parties have agreed to settle the lawsuit ("Settlement") to avoid the risks, disruption, and uncertainties of continued litigation.

A copy of the Settlement is available at www.[SettlementWebsite].com.

**<u>Who is included in the Settlement?</u>** The Court has defined the class as: "All individuals within the United States of America whose Private Information was compromised in the Data Incident."

**<u>What are the Settlement benefits?</u>** Prudential will establish a Settlement Fund of $4,750,000.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs, Service Awards for the Plaintiffs, and the costs of administering the Settlement. All of the remaining funds will be used to pay for the benefits described below.

You may claim **<u>ONE</u>** of the following benefits:

    (1)     Documented Out-of-Pocket Losses
    (2)     Social Security Number/Tax Identification Number Impact Payments
    (3)     CCPA Payments (available to California residents only)
    (4)     Pro Rata Cash Payments

**How do I receive a benefit?** Visit www.[SettlementWebsite].com to submit your claim.

To receive a paper copy and submit by US Mail, call 1-XXX-XXX-XXXX, or email your request to info@[SettlementWebsite].com. **Claims must be submitted online, mailed, or emailed by [DATE]**.

**Who represents me?** The Court appointed attorneys Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC; Kevin Laukaitis of Laukaitis Law; Daniel Srourian of Srourian Law Firm, P.C.; Andrew J. Sciolla of Sciolla Law Firm, LLC; and Steven M. Nathan of Hausfeld LLP, to represent you and other Class Members ("Class Counsel").

**What if I don't want to participate in the Settlement?** If you do not want to be legally bound by the Settlement, you must exclude yourself by [DATE] or you will not be able to sue Prudential for the claims made in *this* lawsuit. If you exclude yourself, you cannot get benefits from this Settlement. If you want to object to the Settlement, you may file an objection by [DATE]. The Settlement Agreement, available on the Settlement website at www.[SettlementWebsite].com, explains how to exclude yourself or object.

**When will the Court decide whether to approve the Settlement?** The Court will hold a hearing in this case on [DATE] at the [ADDRESS], to consider whether to approve the Settlement. The Court will also consider Class Counsel's request for attorneys' fees and costs of up to $1,586,750.00, and $2,000.00 for each of the Plaintiffs. You may attend the hearing at your own cost, but you do not have to.

This notice email is only a summary. For more information, call 1-XXX-XXX-XXXX or click here: **www.[SettlementWebsite].com**.

**User ID:** <<User ID>>

Prudential Data Incident Settlement
c/o Settlement Administrator
P.O. Box _____
Santa Ana, CA 92799-9958

*In Re: Prudential Financial, Inc.*
*Data Breach Litigation*
Case No. 2:24-cv-06818

> **IF YOU WERE IMPACTED BY THE**
> **FEBRUARY 2024**
> <u>**PRUDENTIAL FINANCIAL**</u> **DATA BREACH**
> **A PROPOSED CLASS ACTION SETTLEMENT**
> **MAY AFFECT YOUR RIGHTS,**
> **AND ENTITLE YOU TO A CASH PAYMENT.**

For more information about the proposed class
action settlement, including how to submit a claim,
exclude yourself, or submit an objection, please
visit www.[SettlementWebsite].com or call toll-free
1-XXX-XXX-XXXX

*A court has authorized this Notice.*

*This is <u>not</u> a solicitation from a lawyer.*

*You are <u>not</u> being sued.*

---

First-Class
Mail
US Postage
Paid
Permit #___

**«Barcode»**
Postal Service: Please do not mark barcode

Claim #: XXX- «LoginID» - «MailRec»
«First1» «Last1»
«Addr1» «Addr2»
«City», «St» «Zip»
«Country»

### Why am I receiving this notice?

A Settlement has been reached with Prudential Financial, Inc. ("Prudential") in a class action lawsuit about the February 2024 cyberattack on certain of Prudential's systems (the "Data Incident"). Files containing private information were accessed. Prudential denies that it did anything wrong, and the Court has not decided who is right. The parties have agreed to settle the lawsuit ("Settlement") to avoid the risks, disruption, and uncertainties of continued litigation. A copy of the Settlement is available at www.[SettlementWebsite].com.

### Who is included in the Settlement?

The Court has defined the class as: "All individuals within the United States of America whose Private Information was compromised in the Data Incident."

### What are the Settlement benefits?

Prudential will establish a Settlement Fund of $4,750,000.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs, Service Awards for the Plaintiffs, and the costs of administering the Settlement. All of the remaining funds will be used to pay for the benefits described below.

You may claim **ONE** of the following benefits:

(1) Documented Out-of-Pocket Losses
(2) Social Security Number/Tax Identification Number Impact Payments
(3) CCPA Payments (available to California residents only)
(4) Pro Rata Cash Payments

### How do I receive a benefit?

Visit www.[SettlementWebsite].com to submit your claim. To receive a paper copy and submit by US Mail, call 1-XXX-XXX-XXXX, or email your request to info@[SettlementWebsite].com. **Claims must be submitted online, mailed, or emailed by [DATE].**

### Who represents me?

The Court appointed attorneys Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC; Kevin Laukaitis of Laukaitis Law; Daniel Srourian of Srourian Law Firm, P.C.; Andrew J. Sciolla of Sciolla Law Firm, LLC; and Steven M. Nathan of Hausfeld LLP, to represent you and other Class Members ("Class Counsel").

### What if I don't want to participate in the Settlement?

If you do not want to be part of the Settlement, you must exclude yourself by [DATE] or you will not be able to sue Prudential for the claims made in *this* lawsuit. If you exclude yourself, you cannot get benefits from this Settlement. If you want to object to the Settlement, you may file an objection by [DATE]. The Settlement Agreement, available at www.[SettlementWebsite].com, explains how to exclude yourself or object.

### When will the Court approve the Settlement?

The Court will hold a hearing in this case on [DATE] at the [ADDRESS], to consider whether to approve the Settlement. The Court will also consider Class Counsel's request for attorneys' fees and costs of up to $1,586,750, and $2,00.00 for each of the six named Plaintiffs. You may attend the hearing at your own cost, but you do not have to.

**THIS NOTICE IS ONLY A SUMMARY.**
**VISIT WWW.[SETTLEMENTWEBSITE].COM**
**OR SCAN THIS QR CODE**
**FOR COMPLETE INFORMATION.**



# EXHIBIT 3

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*In Re: Prudential Financial, Inc. Data Breach Litigation*
Case No. 2:24-cv-06818
United States District Court for the District of New Jersey

**IF YOU WERE IMPACTED BY THE FEBRUARY 2024
<u>PRUDENTIAL FINANCIAL</u> DATA BREACH,
A PROPOSED CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS,
AND ENTITLE YOU TO A CASH PAYMENT.**

*A court has authorized this notice. This is not a solicitation from a lawyer.*
*You are not being sued.*
***Please read this Notice carefully and completely.***

- A Settlement has been reached with the Prudential Financial, Inc. ("Prudential" or "Defendant") in a class action lawsuit. This class action lawsuit concerned the cyberattack on certain of Prudential's systems that occurred in February 2024 (the "Data Incident"). Certain files that contained private information were accessed. These files may have contained personal information such as names; dates of birth; account numbers; Social Security numbers; driver's license numbers; addresses; phone numbers; email addresses.

- The lawsuit is called *In Re: Prudential Financial, Inc. Data Breach Litigation*, Case No. 2:24-cv-06818, pending in the United States District Court for the District of New Jersey (the "Litigation").

- Prudential denies that it did anything wrong, and the Court has not decided who is right.

- The parties have agreed to settle the lawsuit (the "Settlement") to avoid the costs and risks, disruptions, and uncertainties of continuing the litigation.

- Prudential's records indicate that you are a Class Member, and entitled to benefits under the Settlement. You may have received a previous notice directly from Prudential.

- Your rights are affected whether you act or don't act. ***Please read this Notice carefully and completely.***

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive benefits from this Settlement is by submitting a valid and timely Claim Form.<br><br>The fastest way to submit your Claim Form is online at www.[SettlementWebsite].com. If you prefer, you can download the Claim Form from the Settlement Website and mail it to the Settlement Administrator. You may also call or email the Settlement Administrator to receive a paper copy of the Claim Form. | **_____, 2025** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. You can hire your own lawyer at your own expense. | **_____, 2025** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object you may also file a claim for Settlement benefits. | **_____, 2025** |
| **DO NOTHING** | Unless you opt out of the Settlement, you are automatically part of the Settlement. If you do nothing, you will not receive benefits from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them—**are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

- In the event the Settlement Administrator determines that your submitted Claim Form is incomplete or deficient in any other way, the Settlement Administrator will notify you of the deficiency. You will have an opportunity to cure the noted deficiency or to contact the Settlement Administrator to assist in curing the noted deficiency. You must then resubmit your Claim Form so the Claims Administrator can determine whether the noted deficiency has been cured.

- In the event that you do not respond to the notice of deficiency or fail to take steps to cure the noted deficiency, you will be precluded from recovery in connection with the Settlement and if you fail to submit a request for exclusion, you will have released your claim.

2

Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ...................................................................................................... 3
WHO IS IN THE SETTLEMENT ........................................................................................ 4
THE SETTLEMENT BENEFITS .......................................................................................... 4
SUBMITTING A CLAIM FORM FOR SETTLEMENT BENEFITS ............................................. 6
THE LAWYERS REPRESENTING YOU .............................................................................. 6
EXCLUDING YOURSELF FROM THE SETTLEMENT ............................................................ 7
COMMENTING ON OR OBJECTING TO THE SETTLEMENT ................................................ 7
THE COURT'S FINAL APPROVAL HEARING .................................................................... 8
IF I DO NOTHING ......................................................................................................... 9
GETTING MORE INFORMATION ..................................................................................... 9

# Basic Information

### 1. Why was this Notice issued?

The United States District Court for the District of New Jersey authorized this Notice. You have a right to know about the proposed Settlement of this class action lawsuit, and about all of your options, before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The lawsuit is called *In Re: Prudential Financial, Inc. Data Breach Litigation*, Case No. 2:24-cv-06818, pending in the United States District Court for the District of New Jersey. The people that filed this lawsuit are called the "Plaintiffs" (or "Class Representatives") and the company they sued, Prudential Financial, Inc., is called the "Defendant."

### 2. What is this lawsuit about?

This lawsuit alleges that during the February 2024 targeted cyberattack on certain of Prudential's systems, certain files that contained private information were accessed. These files may have contained personal information such as names; dates of birth; account numbers; Social Security numbers; driver's license numbers; addresses; phone numbers; email addresses.

### 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are called the "Plaintiffs" or "Class Representatives." Together, the people included in the class action are called a "Class" or "Class Members." One court resolves the lawsuit for all Class Members, except for those who opt out from the settlement. In this Settlement, the Class Representatives are Connie Boyd, Gina Adinolfi, John Moss, Stephanie Demaro, Anthony Guissarri, and Roger Menhennett, and everyone included in this Action are the Class Members.

## 4. Why is there a Settlement?

The Court did not decide whether the Plaintiffs or the Defendant are right. Both sides have agreed to a Settlement to avoid the costs and risks of a trial, and to allow the Class Members to receive benefits from the Settlement. Plaintiffs and their attorneys think the Settlement is best for all Class Members.

# Who is in the Settlement?

## 5. Who is included in the Settlement?

The court has defined the Class this way: "All individuals within the United States of America whose Private Information was compromised in the Data Incident."

## 6. Are there exceptions to being included?

Yes. Excluded from the Class are: (1) Prudential and its officers and directors; (2) anyone who validly excludes themselves from the Settlement; (3) the Judge in this case, and the Judge's family and staff, (2) anyone responsible for perpetrating the Data Incident.

If you are not sure whether you are a Class Member, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail: Prudential Data Incident Settlement, c/o Settlement Administrator, [PO Box Address].

You may also view the Settlement Agreement at www.[SettlementWebsite].com.

# The Settlement Benefits

## 7. What does the Settlement provide?

Prudential will establish a Settlement Fund of $4,750,000.00. The Settlement Fund will first be used to pay court-approved attorneys' fees and costs, Service Awards for the Plaintiffs, and the costs of administering the Settlement. All of the remaining funds will be used to pay for the benefits described below.

You may claim **ONE** of the following benefits:

(1) Documented Out-of-Pocket Losses
(2) Social Security Number/Tax Identification Number Impact Payments
(3) CCPA Payments (available to California residents only)
(4) Pro Rata Cash Payments

You may claim **ONE** benefit. If you claim more than one benefit, you will receive payment only for the highest value benefit.

**EXPLANATION OF BENEFITS (<u>CLAIM ONLY ONE</u>)**

**(1) Documented Out-of-Pocket Losses.** If you incurred actual, <u>documented</u> out-of-pocket losses due to the Data Incident, you can get back up to **$5,000.00**. The losses must have occurred between February 4, 2024, and [Claims Deadline].

This benefit covers out-of-pocket expenses like:

- fees for credit reports, credit monitoring, or freezing and unfreezing your credit;
- cost to replace your IDs;
- charges incurred from actual identity theft, fraud, or other misuse of your personal information.

You need to send proof, like receipts, to show how much you spent or lost. You can also send notes or papers you made yourself to explain or support other proof, but those notes or papers alone <u>are not enough</u> to make a valid claim.

**(2) Social Security Number/Tax Identification Number Impact Payments.** If your Social Security Number or Tax Identification Number was exposed in the Data Incident, you can claim this benefit without proving you lost money.

We expect this payment to be **$200.00 - $599.00**. The actual payment amount will depend on the type of the different claims filed by all of the Class Members.

If you are not sure if qualify for this benefit, please contact the Settlement Administrator.

**(3) CCPA Payments (available to California residents only).** If you live in California, a law called the California Consumer Privacy Act—CCPA—may allow you to claim a payment. To qualify, at least one of the following types of your personal information must have been exposed in the Data Incident:

- driver's license, passport, Non-U.S. Nation Identification Number, or other government-issued identification
- credit or debit card information
- treatment, diagnosis, prescription, or health condition

You can claim this benefit without proving you lost money.

We expect this payment to be **$100.00 - $599.00**. The actual payment amount will depend on the type of the different claims filed by all of the Class Members.

If you are not sure if you qualify for this benefit, please contact the Settlement Administrator.

**(4) Pro Rata Cash Payments.** If you do not qualify for benefits (1)–(3), you can still claim a Pro Rata Cash Payment. Once all litigation and administration costs have been paid, and all other benefits have been paid out, all of the money remaining in the Settlement Fund will be split evenly between Class Members who claim this benefit.

You can claim this benefit without proving you lost money.

We do not have a current estimate of how much this payment will be—it will depend on the type of different claims filed by all of the Class Members.

The Settlement Agreement has complete details about these benefits. You can find a copy at www.[SettlementWebsite].com.

If you have questions about these benefits, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail: Prudential Data Incident Settlement, c/o Settlement Administrator, [PO Box Address].

## 8. What claims am I releasing if I stay in the Class?

If you stay in the class, you won't be able to be part of any other lawsuit against Prudential about the issues that this Settlement covers. The "release" section of the Settlement Agreement (Paragraphs 3.33–3.35) describes the legal claims that you give up if you remain in the Class. The Settlement Agreement is available at www.[SettlementWebsite].com.

# Submitting a Claim Form for a Settlement Payment

## 9. How do I submit a claim for a Settlement benefit?

The fastest way to submit your Claim Form is online at www.[SettlementWebsite].com.

If you prefer, you can download the Claim Form from the website and mail it to the Settlement Administrator at:

Prudential Data Incident Settlement
c/o Settlement Administrator
[PO Box Address].

You may also contact the Settlement Administrator to request a paper Claim Form by telephone, toll free, 1-XXX-XXX-XXXX, by email info@[SettlementWebsite].com, or by U.S. mail at the address above.

## 10. Are there any important Settlement payment deadlines?

If you are submitting a Claim Form online, you must do so by [Claims Deadline]. If you are submitting a claim by U.S. mail, the completed and signed Claim Form, including supporting documentation, must be postmarked no later than [Claims Deadline].

## 11. When will the Settlement benefits be issued?

The Court will hold a final approval hearing on [FA Hearing Date] (*see* **Question 18**). If the Court approves the Settlement, there may be appeals. We do not know if appeals will be filed, or how long it will take to resolve them if they are filed.

Please note that the Court can only approve or deny the Settlement Agreement; it cannot change the terms.

Settlement payments will be distributed if the Court grants final approval, and after any appeals are resolved.

6

Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com

# The Lawyers Representing You

## 12. Do I have a lawyer in the case?

Yes, the Court appointed attorneys Joseph J. DePalma of Lite DePalma Greenberg & Afanador, LLC; Kevin Laukaitis of Laukaitis Law; Daniel Srourian of Srourian Law Firm, P.C.; Andrew J. Sciolla of Sciolla Law Firm, LLC; and Steven M. Nathan of Hausfeld LLP, to represent you and other Class Members ("Class Counsel").

## 13. Should I get my own lawyer?

You will not be charged for Class Counsel's services. If you want your own lawyer, you may hire one at your expense.

## 14. How will Class Counsel be paid?

Class Counsel will ask the court to approve $1,586,750.00, which will be paid from the Settlement Fund.

Class Counsel will also ask for Service Awards of $2,000.00 for each of the Class Representatives. Service Awards will be paid from the Settlement Fund.

# Excluding Yourself from the Settlement

## 15. How do I opt out of the Settlement?

If you do not want to be part of the Settlement, you must formally exclude yourself from the Settlement. This is called a Request for Exclusion, and is sometimes also called "opting out." If you opt out, you will not receive a Settlement payment, but you will keep any rights you may have to sue Prudential on your own about the legal issues in this case.

If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You will not be eligible to receive any Settlement benefits if you exclude yourself.

The deadline to exclude yourself from the Settlement is **[Opt-Out Deadline]**.

The fastest way to opt out is online at www.[SettlementWebsite].com.

If you prefer, you can mail or email your own Request for Exclusion. To be valid it must have the following information:

(1) the name of the Action: *In Re: Prudential Financial, Inc. Data Breach Litigation*, Case No. 2:24-cv-06818, pending in the United States District Court for the District of New Jersey;

(2) your full name, mailing address, telephone number, and email address;

(3) personal signature (if submitting by email, include "/s/" followed by the full name at the end of the email); and

(4) the words "Request for Exclusion" or a clear and similar statement that you do not want to participate in the Settlement.

You may only exclude yourself—not any other person.

Mail your Request for Exclusion to the Settlement Administrator at:

Prudential Data Incident Settlement
ATTN: Exclusion Request
[PO Box Address]

Email your Request for Exclusion to: info@[SettlementWebsite].com

Your Request for Exclusion must be submitted, postmarked, or emailed by **[Opt-Out Deadline]**.

## Commenting on or Objecting to the Settlement

### 16. How do I tell the Court if I like or do not like the Settlement?

If you are a Class Member and do not like part or all of the Settlement, you can object to it. Objecting means telling the Court your reasons for why you think the Court should not approve the Settlement. The Court will consider your views.

Please note that the Court can only approve or deny the Settlement Agreement; it cannot change the terms.

You cannot object if you have excluded yourself from the Settlement (*see* **Question 15**)

You must provide the following information for the Court to consider your objection:

(1) the name of the Action: *In Re: Prudential Financial, Inc. Data Breach Litigation*, Case No. 2:24-cv-06818, pending in the United States District Court for the District of New Jersey;

(2) your full name, mailing address, telephone number, and email address;

(3) a clear description of all the reasons you object; include any legal support you may have for your objection;

(4) if you have hired your own lawyer to represent you at the Final Approval Hearing, provide their name, address and telephone number;

(5) whether or not you or your lawyer would like to speak at the Final Approval Hearing;

(6) list the names and civil action numbers of all cases in which you or your lawyer have objected in the past 4 years;

(7) your signature (or, if you have hired your own lawyer, your lawyer's signature).

For your objection to be valid, it must meet each of these requirements.

To be considered by the Court, you must mail, email, or upload your objection by **[Objection Deadline]**.

Mail your Objection to the Settlement Administrator at:

Prudential Data Incident Settlement
ATTN: Objections
[PO Box Address]

Email your Objection to: info@[SettlementWebsite].com

Upload your Objection on the Settlement website at: www.[SettlementWebsite].com

8

## 17. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

## The Court's Final Approval Hearing

## 18. When is the Court's Final Approval Hearing?

The Court will hold a final approval hearing on **[FA Hearing Date] at ____:____ Eastern Time,** in Room XXX of the United States District Court for the District of New Jersey, at [Court Address].

At the final approval hearing, the Court will decide whether to approve the Settlement. The Court will not be able to change the terms of the Settlement.

The Court will also decide how Class Counsel should be paid, and whether to award Service Awards to the Class Representatives who brought this Action on behalf of the Class. The Court will also consider any objections to the Settlement.

If you are a Class Member, you or your lawyer may ask permission to speak at the hearing at your own cost (*See* **Question 16**).

The date and time of this hearing may change without further notice. Please check www.[SettlementWebsite].com for updates.

## 19. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish, but you do not have to.

If you file an objection, you do not have to come to the Final Approval Hearing to talk about it; the Court will consider it as long as it was filed on time. You may also pay your own lawyer to attend, but you do not have to.

## If I Do Nothing

## 20. What happens if I do nothing at all?

If you do nothing, you will not receive a benefit from this Settlement.

You will also give up the rights described in **Question 8**.

## Getting More Information

## 21. How do I get more information?

This Notice is a summary of the proposed Settlement. The full Settlement Agreement and other related documents are available at the Settlement Website, www.[SettlementWebsite].com.

9

If you have additional questions, you can ask for free help any time by contacting the Settlement Administrator at:

- Email: info@[SettlementWebsite].com
- Call toll free, 24/7: 1-XXX-XXX-XXXX
- By mail: Prudential Data Incident Settlement, c/o Settlement Administrator, [PO Box Address].

You can obtain copies of publicly filed documents by visiting the office of the Clerk of the Court, [Court Address].

**DO NOT CONTACT THE COURT OR CLERK OF COURT REGARDING THIS SETTLEMENT**

10

Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit www.[SettlementWebsite].com

# EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| *IN RE: PRUDENTIAL FINANCIAL, INC. DATA BREACH LITIGATION* <br><br> This Document Relates To: ALL ACTIONS | **Case No. 2:24-cv-06818** |

ORDER PRELIMINARILY APPROVING
THE PROPOSED CLASS ACTION SETTLEMENT,
SCHEDULING HEARING FOR FINAL APPROVAL THEREOF AND
<u>APPROVING THE PROPOSED FORM AND PLAN OF CLASS NOTICE</u>

Plaintiffs Connie Boyd, Gina Adinolfi, John Moss, Stephanie Demaro, Anthony Guissarri, and Roger Menhennett ("Plaintiffs') on behalf of the Settlement Class, having applied for an order preliminarily approving the proposed settlement ("Settlement") of this Action against Defendant Prudential Financial, Inc. ("Prudential") in accordance with the Stipulation and Agreement of Settlement dated May 30, 2025 (the "Settlement Agreement"), between Plaintiffs and Prudential, the Court having read and considered the memorandum of law in support of this Motion, the Settlement Agreement, accompanying documents and exhibits, and the record herein, and Plaintiffs and Prudential (collectively, the "Parties") having consented to the entry of this Order,

NOW, THEREFORE, on this **__th** day of **_____, 2025,** upon application of the Parties,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1

1.      Unless otherwise defined herein, the Court adopts and incorporates the definitions in the Settlement Agreement for the purposes of this Order.

2.      The Court finds that it has subject matter jurisdiction to preliminarily approve the Settlement Agreement, including all exhibits thereto and the Settlement contained therein and that has personal jurisdiction over Plaintiffs, Prudential, and all Settlement Class Members.

3.      The Court finds that the applicable provisions of Rules 23(a), 23(b)(3), and 23(e) of the Federal Rules of Civil Procedure have been satisfied and that the Court will likely be able to approve the Settlement and certify the Settlement Class for purposes of judgment.

4.      For purposes of the Settlement only, the Court conditionally certifies the following Settlement Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3):

> All Persons in the United States who were affected by the Data Breach that Prudential made public in February 2024.

Excluded from the Class are (i) Prudential and its employees, franchisees, franchisees' employees, agents, affiliates, parents, and subsidiaries, whether or not named in the Class Action Complaint (ECF No. 1) or Consolidated Class Action Complaint (ECF No. 35) in this Action; (ii) all Settlement Class Members who timely and validly opt-out from the Settlement Class; (iii) any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff; and (iv) the attorneys representing the Parties in the Action.

5.      Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Federal Rules of Civil Procedure 23(a) and (b)(3), are satisfied in that:

a.  the Settlement Class is so numerous that joinder of all members is impracticable;

b.  there are questions of law or fact common to the Settlement Class;

c.  the claims of Plaintiff are typical of those of Settlement Class Members;

d.  Plaintiff and Class Counsel (defined below) fairly and adequately represent the  Settlement Class;

e.  common issues predominate over any individual issues affecting Settlement Class Members; and

f.  settlement of the Action on a class action basis is superior to other means of resolving this matter.

6.      The terms of the Settlement Agreement are hereby preliminarily approved. The Court finds that the Settlement was entered into at arm's length by experienced counsel and is sufficiently within the range of reasonableness, fairness, and adequacy, and that notice of the Settlement should be given as provided in this Order because the Court will likely be able to approve the Settlement under Rule 23(e)(2) of the Federal Rules of Civil Procedure.

7.      The Court appoints Connie Boyd, Gina Adinolfi, John Moss, Stephanie Demaro, Anthony Guissarri, and Roger Menhennett to serve as class representatives for settlement purposes only on behalf of the Settlement Class.

3

8.      The Court appoints Kevin Laukaitis of Laukaitis Law LLC, Daniel Srourian of Srourian Law Firm, P.C., Andrew J. Sciolla of Sciolla Law Firm, LLC, Steven M. Nathan of Hausfeld LLP, and Joseph J. DePalma of Lite DePalma Greenberg & Afanador, as Class Counsel for settlement purposes only, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

9.      The Court appoints Simpluris, Inc. as Settlement Administrator for purposes of the Settlement.

10.      A hearing will be held on a date of the Court's convenience on or after _____ in Courtroom ____ of this Courthouse before the undersigned, to consider the fairness, reasonableness, and adequacy of the Settlement (the "Fairness Hearing"). The foregoing date, time, and place of the Fairness Hearing shall be set forth in the Class Notice, which is ordered herein, but shall be subject to adjournment or change by the Court without further notice to Settlement Class Members, other than that which may be posted at the Court or on the Settlement website at www._____.com (the "Settlement Website").

11.      The Court reserves the right to approve the Settlement at or after the Fairness Hearing with such non-substantive modifications as may be consented to by the Parties and without further notice to the Settlement Class.

12.      All proceedings in this Action as to Prudential, other than such proceedings as may be necessary to implement the proposed Settlement or to effectuate the terms of the Settlement Agreement, are hereby stayed and suspended until further order of this Court.

13.    All Settlement Class Members and their legally authorized representatives, unless and until they have submitted a valid request to opt out or exclude themselves from the Settlement Class (hereinafter, "Request for Exclusion"), are hereby preliminarily enjoined (i) from filing, commencing, prosecuting, intervening in, or participating as a plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Released Claims; (ii) from filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on the Released Claims; and (iii) from attempting to effect an opt-out group, class, or subclass of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on the Release Claims.

14.    The Settlement Administrator is directed to carry out the Notice Plan in conformance with the Settlement Agreement, which shall begin no later than thirty (30) days after entry of this Order (hereinafter, the "Notice Date").

15.    Beginning no later than the Notice Date, the Settlement Administrator shall create and maintain the Settlement Website, www._____.com, until the termination of the administration of the Settlement.

16.    The Settlement Administrator shall maintain a toll-free interactive voice response telephone system containing recorded answers to frequently asked questions, along

with an option permitting callers to leave messages in a voicemail box. The Settlement
Administrator shall also maintain an email address to receive and respond to correspondence from
Settlement Class Members.

17.     The Court approves in form and substance the Long Form Notice, Short Form
Notice, and Claim Forms attached as Exhibits 1-3 to the Settlement Agreement. The Class
Notices (i) are the best notice practicable under the circumstances; (ii) are reasonably
calculated, under the circumstances, to apprise Settlement Class Members of the pendency and
status of this Action and of their right to object to or exclude themselves from the proposed
Settlement; (iii) are reasonable and constitute due, adequate, and sufficient notice to all persons
entitled to receive notice of the Fairness Hearing; and (iv) fully satisfy all applicable
requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other
applicable rules or laws. Non-substantive modifications to the forms of Class Notice may be
made without further order of the Court.

18.     Any Settlement Class Member that objects to the fairness, reasonableness, or
adequacy of any term or aspect of the Settlement, the application for attorneys' fees and
expenses, Incentive Awards, or the Final Approval Order and Final Judgment, may send an
Objection Notice or may appear at the Final Approval Hearing to state an objection.

19.     Any Settlement Class Member who submits an Objection Notice must include
in any such Notice: (i) his/her full name, address, telephone number, and e-mail address; (ii)
the case name and number of the Action; (iii) the reason for the objection; (iv) the objector's

6

signature or the signature of someone authorized to sign on the objector's behalf; (v) the case name and civil action number of any other objections the objector or his or her counsel have made in any other class action cases in the last 4 years; and (vi) whether the objector intends to appear at the Final Approval Hearing on his or her own behalf or through counsel. If represented by counsel, the objecting Settlement Class Member must also provide the name, address, and telephone number of his/her counsel. Counsel for any objector must enter a Notice of Appearance no later than 14 days before the Final Approval Hearing.

20.     Any Settlement Class Member who fails to timely submit to the Settlement Administrator an Objection Notice by mail, email, or via the Settlement Website or appear at the Final Approval Hearing shall not be permitted to object to the approval of the Agreement and shall be foreclosed from seeking any review of the Agreement or the terms of the Agreement by appeal or other means. To be timely submitted, an Objection Notice must be postmarked, emailed, or submitted online no later than the Objection Deadline. The Court, in its discretion, may permit discovery of any objector.

21.     If the date for the Final Approval Hearing is changed, the Settlement Administrator will post the new hearing date on the Settlement Website and will provide notice of the new hearing date to Settlement Class Members who submitted timely objections to the Settlement.

22.     Settlement Class Members cannot both object to and exclude themselves from this Agreement. The Settlement Administrator shall attempt to contact any Settlement Class Members who submit both a Request for Exclusion and an Objection Notice at least one time

by email or, if no email address is available, by telephone where a telephone number is available, or by regular U.S. mail to give the Settlement Class Members an opportunity to clarify whether they choose to exclude themselves or proceed with their objection. The Settlement Class Member shall have until fourteen (14) days prior to the Final Approval Hearing to inform the Settlement Administrator regarding his or her final choice. Any Settlement Class Member who attempts to both object to and exclude themselves from this Agreement and fails to follow up regarding their final choice will be deemed to have excluded themselves from the Settlement and will be considered to have forfeited their objection.

23.     Each Settlement Class Member wishing to opt-out from the Settlement Class must individually sign and timely send a Request for Exclusion via: (1) U.S. mail, to the address designated by the Settlement Administrator; (2) e-mail, to the e-mail address designated by the Settlement Administrator; or (3) the Settlement Website, using a form prepared by the Settlement Administrator and made available for download and/or completion on the Settlement Website.

24.     For a Request for Exclusion to be properly completed and executed, it must: (a) state the Settlement Class Member's full name, address, telephone number, and email address (if applicable); (b) contain the Settlement Class Member's personal signature or the signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Action (such as a trustee, guardian, or other person acting under a power of attorney); and (c) state unequivocally the Settlement Class

8

Member's intent to be excluded from the Settlement. All Requests for Exclusion must be submitted individually in connection with a Settlement Class Member; *i.e*., one request is required for each Settlement Class Member seeking exclusion.

25.       To be effective, a Request for Exclusion must be postmarked, emailed, or submitted online no later than the Opt-Out Deadline.

26.       Within fourteen (14) days after the Opt-Out Deadline, the Settlement Administrator shall provide the Settling Parties with a complete and final list of all Opt-Outs who have timely and validly excluded themselves from the Settlement Class and, upon request, copies of the completed Requests for Exclusion. Class Counsel may file these materials with the Court, with any Personal Information other than names and cities and states of residence redacted, no later than seven (7) days prior to the Final Approval Hearing.

27.       All Persons who Opt-Out from the Settlement Class shall not receive any benefits of or be bound by the terms of this Agreement. All Persons falling within the definition of the Settlement Class who do not Opt-Out shall be bound by the terms of this Agreement and the Final Approval Order entered thereon.

28.       The Settlement Administrator shall promptly process and review all Claim Forms for timeliness and eligibility to participate in the Settlement per the terms of the Settlement Agreement.

29.       To effectuate the Settlement and the Notice Plan, in accordance with the terms of this Order and the terms of the Settlement Agreement, the Settlement Administrator

shall be responsible for: (a) establishing a a Settlement Website for purposes of communicating with Settlement Class Members; (b) effectuating the Notice Plan, including running Settlement Class Members' email addresses through a deliverability analysis to ensure the email addresses are valid; (c) accepting and maintaining documents sent from Settlement Class Members, including Proofs of Claim and Release, and other documents relating to the Settlement and its administration; (d) determining the timeliness and validity of each Proof of Claim and Release submitted by Settlement Class Members; (e) corresponding with Settlement Class Members regarding any deficiencies in their Proofs of Claim and Release; (f) calculating and distributing each Authorized Claimant's Settlement Relief; (g) determining the timeliness and validity of all Requests for Exclusion received from Settlement Class Members; (h) preparing the opt-out list and a declaration attaching and attesting to the accuracy of such list, and providing the same to Class Counsel and Prudential's Counsel; and (i) providing Class Counsel and Prudential's Counsel with copies of any Requests for Exclusion (including all documents submitted with such requests).

30.     All Class Notice and Settlement Administration Costs shall be paid out of the Settlement Fund, pursuant to the Settlement Agreement.

31.     The Settlement Administrator shall maintain a copy of all paper communications related to the Settlement for a period of one (1) year after distribution of the Settlement Relief to Authorized Claimants and shall maintain a copy of all electronic communications related to the Settlement for a period of two (2) years after the distribution,

after which time all such materials shall be destroyed, absent further direction from the Parties

or the Court.

32.    The Court preliminarily approves the establishment of the Qualified Savings

Account as defined in the Settlement Agreement.

33.    Neither the Settlement Agreement, whether or not it shall become final, nor

any negotiations, documents, and discussions associated with it, nor the Final Approval Order

and Final Judgment are or shall be deemed or construed to be an admission, adjudication, or

evidence of: (a) any violation of any statute or law or of any liability or wrongdoing by

Prudential or any Released Party; (b) the truth of any of the claims or allegations alleged in the

Action; (c) the incurrence of any damage, loss, or injury by any Person; or (d) the propriety of

certification of a class other than solely for the purposes of the Settlement. Further any

negotiations, non-public documents, and non-public discussions associated with the Settlement

are not discoverable and may not be used directly or indirectly, in any way, whether in the

Action or in any other action or proceeding of any nature, whether by the Settlement Class or

any Person, except if warranted by existing law in connection with a dispute under the

Settlement Agreement or an action in which such documents are asserted as a defense. All

rights of Plaintiff and Prudential are reserved and retained if the Settlement does not become

final in accordance with the terms of the Settlement Agreement.

34.    Class Counsel shall file their motions for payment of attorneys' fees and

expenses, Incentive Awards, and final approval of the Settlement no later than sixty (60) days

after the Court issues an Order granting Preliminary Approval and with respect to the motion for final approval of the Settlement, at least thirty (30) days prior to the Final Approval Hearing.

35.     If the Settlement is approved by the Court following the Fairness Hearing, a Final Approval Order and Final Judgment will be entered as described in the Settlement Agreement.

36.     The Court may, for good cause, extend any of the deadlines set forth in this Order without notice to Settlement Class Members, other than which may be posted at the Court or on the Settlement Website.

37.     In the event that the Settlement is terminated in accordance with its provisions, Settlement Agreement and all proceedings had in connection therewith, including but not limited to all negotiations, documents, and discussions associated with it, and any Requests for Exclusion from the Settlement previously submitted and deemed to be valid and timely, shall be null and void and be of no force and effect, except as expressly provided to the contrary in the Settlement Agreement, and shall be without prejudice to the *status quo ante* rights of the Parties.

38.     If the Settlement is terminated or is ultimately not approved, the Court will modify any existing scheduling order to ensure that the Parties will have sufficient time to prepare for the resumption of litigation.

39.    The Court's preliminary certification of the Settlement Class, appointment

of Plaintiff as class representatives, and findings in this Preliminary Approval Order shall have

no effect on the Court's ruling on any motion to certify any class in the Action, or appoint class

representatives, and no Person may cite or refer to the Court's approval of the Settlement Class

as binding or persuasive authority with respect to any motion to certify such class or appoint

class representatives.

40.    Unless otherwise specified, the word "days," as used herein, means calendar

days. In the event that any date or deadline set forth herein falls on a weekend or federal or

state legal holiday, such date or deadline shall be deemed moved to the first business day

thereafter.

41.    The schedule of events should occur as follows:

| Event | Date |
|---|---|
| Deadline for CAFA Notice | 10 days after Court grants Preliminary Approval |
| Class Notice commences | No later than thirty (30) days after entry of this Preliminary Approval Order |
| Deadline for Prudential to pay Net Settlement Fund into the QSF | The later of thirty (30) days after entry of this Preliminary Approval, provided that or twenty (20) days after the receipt of written instructions from the Settlement Administrator, as specified in the Settlement Agreement, and an executed W-9 form (if necessary). |

| Deadline to file Settlement Administrator's Declaration regarding implementation of Notice Plan | No later than twenty-one (21) days prior to the Final Approval Hearing |
|---|---|
| Deadline for Settlement Administrator to establish Settlement Website | No later than thirty (30) days after entry of this Preliminary Approval Order |
| Deadline to file Motion for Final Approval of the Settlement | At least thirty (30) days prior to the Final Approval Hearing |
| Motion for Attorneys' fees, reimbursement of costs and expenses, and service awards to be filed by Class Counsel | No later sixty (60) days after the entry of this Preliminary Approval Order |
| Postmark/Email Deadline for Requests for Exclusion (Opt-Outs) | No later than ninety (90) days after this Preliminary Approval Order. |
| Filing and Service Deadline for Objections | No later than ninety (90) days after this Preliminary Approval Order. |
| Claim Filing Deadline | No later than one hundred and twenty (120) days after this Preliminary Approval Order. |
| Deadline for the submission Affidavit or Declaration stating that the CAFA Notice has been given | 21 days before Final approval hearing |
| Deadline for counsel for any objector to file a Notice of Appearance | No later than fourteen (14) days prior to the Final Approval Hearing |
| Deadline to File Opt-Out List and Settlement Administrator Declaration | No later than seven (7) days prior to the Final Approval Hearing |

14

| Deadline to File Settlement Administrator Declaration to Distribute the Claims Payments | No later than seven (7) days prior to the Final Approval Hearing |
|---|---|
| Final Approval Hearing | At least one hundred fifty (150) days after entry of this Preliminary Approval Order. |

IT IS SO ORDERED.


Dated: _____, 2025          By:     _/s/_ _____

                                        **UNITED STATES DISTRICT JUDGE**

# EXHIBIT 5

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

*IN RE: PRUDENTIAL FINANCIAL, INC.*
*DATA BREACH LITIGATION*

**Case No. 2:24-cv-06818**

This Document Relates To: ALL
ACTIONS

FINAL APPROVAL ORDER OF SETTLEMENT WITH
<u>PRUDENTIAL FINANCIAL, INC.</u>

This matter came before the Court for a duly noticed hearing on _____, 2025 (the "Final Approval Hearing"), upon Plaintiffs Connie Boyd, Gina Adinolfi, John Moss, Stephanie Demaro, Anthony Guissarri, and Roger Menhennett ("Plaintiffs') Motion for Final Approval of the Class Action Settlement with Defendant Prudential Financial, Inc. ("Prudential"), which was consented to by Prudential (together with Plaintiffs, the "Parties"). Due and adequate notice of the Settlement and Release Agreement with Prudential dated May 30, 2025 (the "Settlement Agreement") having been given to Settlement Class Members, the Final Approval Hearing having been held and the Court having considered all papers filed and proceedings had herein, and otherwise being fully informed in the premises and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1

1.      This Final Approval Order hereby incorporates by reference the definitions in the Settlement Agreement and all terms used herein, except as otherwise expressly defined herein, shall have the same meanings as set forth in the Settlement Agreement.

2.      For purposes only of the settlement of the Released Claims as to the Released Parties set forth in the Settlement Agreement (the "Settlement"), the Court hereby finally certifies the Settlement Class, as defined in the Court's Order Preliminarily Approving the Proposed Class Action Settlement, Scheduling Hearing for Final Approval Thereof and Approving the Proposed Form and Plan of Class Notice (the "Preliminary Approval Order"). ECF No. _____. Based on the record, the Court reconfirms the applicable provisions of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for purposes only of the Settlement.

3.      In so holding, the Court finds that, solely for purposes of settlement, the Settlement Class meets all of the applicable requirements of Fed. R. Civ. P. 23(a) and (b)(3). The Court hereby finds, in the specific context of this Settlement, that: (i) the Settlement Class is so numerous that joinder of all Settlement Class Members is impracticable, Fed. R. Civ. P. 23(a)(1); (ii) common questions of law and fact exist with regard to the Settlement Class, Fed. R. Civ. P. 23(a)(2); (iii) Plaintiffs' claims in this litigation are typical of those of Settlement Class Members, Fed. R. Civ. P. 23(a)(3); and (iv) Plaintiffs' interests do not conflict with, and are co-extensive with, those of absent Settlement Class Members, all of whose claims arise from the identical factual predicate, and Plaintiffs and Plaintiffs' Counsel have adequately represented the interests of all Settlement Class Members, Fed. R. Civ. P. 23(a)(4). The Court also finds that common issues

2

of fact and law predominate over any questions affecting only individual members and that a class

action is superior to other available methods for fairly and efficiently adjudicating this controversy.

Fed. R. Civ. P. 23(b)(3).

4.    This Court has personal jurisdiction over Plaintiffs, Prudential (in this Action only

and for purposes of this Settlement), and all Settlement Class Members and subject matter

jurisdiction over the Action to approve the Settlement Agreement and all exhibits attached thereto

under 28 U.S.C. § 1332(d)(2).

5.    The Court finds that the Class Notice, website, and Notice Plan implemented

pursuant to the Settlement Agreement and the Court's Preliminary Approval Order: (a) constituted

the best practicable notice; (b) constituted notice that was reasonably calculated, under the

circumstances, to apprise Settlement Class Members of the pendency of this Action, of their right

to exclude themselves from or object to the proposed Settlement, of their right to appear at the

Fairness Hearing, of Plaintiffs' Counsel's application for an award of attorneys' fee and expenses,

and of Plaintiffs' application for an Incentive Award associated with the Action; (c) provided a

full and fair opportunity to all Settlement Class Members to be heard with respect to the foregoing

matters; and (d) met all applicable requirements of Federal Rule of Civil Procedure 23, due

process, and any other applicable rules or law.

6.    The Parties have complied with the requirements of the Class Action Fairness

Act.

7.        The persons identified in the attached Exhibit 1 requested exclusion from the

Settlement Classes as of the Opt-Out Deadline. These persons shall not share in the benefits of the

Settlement, and this Final Approval Order and Judgment does not affect their legal rights to pursue

any claims they may have against Defendant. All other members of the Settlement Classes are

hereinafter barred and permanently enjoined from prosecuting any Released Claims against the

Released Parties in any court, administrative agency, arbitral forum or other tribunal.

8.        All Settlement Class Members not listed in Exhibit 1 shall be bound by the

Settlement Agreement and this Final Approval Order and Judgment, including the release

provisions and covenant not to sue.

9.        The Court has independently reviewed and considered all relevant factors and has

conducted an independent examination into the propriety of the proposed Settlement.

10.        It is hereby determined that all Settling Class Members and Prudential are bound

by the Settlement Agreement and this Final Approval Order, and the Action and Releasing Parties'

Released Claims against any of the Released Parties, as provided under the Settlement Agreement,

are hereby dismissed with prejudice and released.

11.        Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby

finally approves the Settlement, as set forth in the Settlement Agreement. This Court finds that the

Settlement meets all requirements of Rule 23(e) of the Federal Rules of Civil Procedure and is, in all

respects, fair, reasonable and adequate, and in the best interests of the Settlement Class, including

Plaintiffs. This Court further finds that the Settlement set forth in the Settlement Agreement is the

result of arm's-length negotiations between experienced counsel representing the interests of the Parties, that Plaintiffs' Counsel and Plaintiffs adequately represented the Settlement Class for the purpose of entering into and implementing the Settlement Agreement, that the relief provided for the Settlement Class is adequate, and that the Settlement Agreement treats Settlement Class members equitably relative to each other. Accordingly, the Settlement embodied in the Settlement Agreement is hereby approved in all respects. The Parties are hereby directed to carry out the Settlement Agreement in accordance with all of its terms and provisions, including the termination provisions.

12.     Notwithstanding the entry of this Final Approval Order, if the Settlement Agreement is validly terminated by Plaintiffs or Prudential, is disapproved or materially modified in whole or in part by the Court, any appellate court, or any other court of review, or does not become final, then the provisions of this Final Approval Order dismissing Plaintiffs claims shall be null and void with respect to such Settlement; Plaintiffs' claims shall be reinstated; Prudential's defenses shall be reinstated; the certification of the Settlement Class and final approval of the proposed Settlement, and all actions associated with them, including but not limited to any requests for exclusion from the Settlement previously submitted and deemed to be valid, shall be vacated and be of no force and effect; the Settlement Agreement, including its exhibits, and any and all negotiations, documents, and discussions associated with it and the releases set forth herein, shall be without prejudice to the rights of any Party, and of no force or effect; and the Parties shall be returned to their respective positions as of the Execution Date of the Settlement Agreement. Notwithstanding the language in this Paragraph, any provision(s) in the Settlement Agreement that

the Parties have agreed shall survive its termination shall continue to have the same force and effect intended by the Parties.

13.     The Court approves the establishment of the Qualified Savings Account as defined in the Settlement Agreement.

14.     Without affecting the finality of the Final Approval Order for purposes of appeal, the Court reserves exclusive jurisdiction over the implementation and enforcement of the Settlement Agreement and the Settlement contemplated thereby and over the enforcement of this Final Approval Order. The Court also retains exclusive jurisdiction over the Settlement, the Settlement Agreement, enforcement of Court orders relating to the Settlement and the Settlement Agreement, and the administration and consummation of the Settlement. In addition, without affecting the finality of this Final Approval Order, Plaintiffs, Prudential, and the Settlement Class hereby irrevocably submit to the exclusive jurisdiction of the U.S. District Court for the District of New Jersey for any suit, action, proceeding, or dispute arising out of or relating to this Final Approval Order or the Settlement Agreement. Any disputes involving Plaintiffs, Prudential, or Settlement Class Members concerning the implementation of the Settlement Agreement shall be submitted to the Court.

15.     The Court hereby confirms the appointment of Kevin Laukaitis of Laukaitis Law LLC, Daniel Srourian of Srourian Law Firm, P.C., Andrew J. Sciolla of Sciolla Law Firm, LLC, Steven M. Nathan of Hausfeld LLP, and Joseph J. DePalma of Lite DePalma Greenberg & Afanador as Class Counsel.

16.    The Court hereby confirms the appointment of Plaintiff Connie Boyd, Gina Adinolfi, John Moss, Stephanie Demaro, Anthony Guissarri, and Roger Menhennett as Class Representative.

17.    The Court hereby confirms the appointment of Simpluris, Inc. as Settlement Administrator.

18.    The Court hereby approves the Releasing Parties' release of their Released Claims as set forth in the Settlement Agreement and this Final Approval Order as of the Effective Date.

19.    As of the Effective Date as defined in the Settlement Agreement, the release set forth in the Settlement Agreement shall be binding upon Plaintiffs, the Settlement Class and the Releasing Parties as to Prudential and the Released Parties.

20.    The Court declares that the Settlement Agreement and the Final Approval Order shall be binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings against Prudential involving Released Claims(s), and shall also be binding on the Releasing Parties and their respective successors and assigns, regardless of whether the Releasing Party previously initiated or subsequently initiates individual litigation or other proceedings involving the Released Claims, and even if such Releasing Party never received actual notice of the Action or the Settlement.

21.    The Court permanently bars and enjoins Releasing Parties from: (a) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any

other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction against Prudential or any of the Released Parties based on the Released Claims; (b) filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), against Prudential or any of the Released Parties based on the Released Claims; or (c) organizing Settlement Class Members into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) against Prudential or any of the Released Parties based on the Released Claims.

22.        Neither the Settlement Agreement (nor its exhibits), whether or not it shall become final, nor any negotiations, documents exchanged among Plaintiffs' Counsel and Prudential in connection with settlement discussions, and discussions associated with them, nor the Final Approval Order and Final Judgment are or shall be deemed or construed to be an admission, adjudication, or evidence of: (a) any violation of any statute or law or of any liability or wrongdoing by Prudential or any Released Party; (b) the truth of any of the claims or allegations alleged in the Action; (c) the incurrence of any damage, loss, or injury by any Person; or (d) the propriety of certification of a class other than solely for purposes of the Settlement. Further, the Settlement negotiations, including any documents exchanged among Plaintiffs' Counsel and Prudential and any discussions associated with them, may not be discoverable, offered or received in evidence, or used directly or indirectly, in any

8

way, whether in the Action or in any other action or proceeding of any nature, by any Person, except if warranted by existing law in connection with a dispute under the Settlement Agreement or an action (including this Action) in which the Settlement Agreement is asserted as a defense. The Parties, without the need for approval from the Court, may adopt such amendments, modifications, and expansions of the Settlement Agreement and all exhibits thereto as (i) shall be consistent in all material respects with the Final Approval Order; and (ii) do not limit the rights of Settling Class Members.

23.     Any data or other information provided by Settling Class Members in connection with the submission of claims shall be held in strict confidence, available only to the Settlement Administrator, Plaintiffs' Counsel, Prudential's Counsel and experts or consultants acting on behalf of the Settlement Class. In no event shall a Settling Class Member's data or personal information be made publicly available, except as provided for herein or upon Court Order for good cause shown.

24.     Plaintiffs' Counsel's request for attorneys' fees and expenses and Plaintiffs' application for an Service Award shall be the subject of a separate order by the Court.

**IT IS SO ORDERED.**

Dated: _____, 2025         By:     _/s/_____

                                     **UNITED STATES DISTRICT JUDGE**

9

# EXHIBIT B

Laukaitis Law

🌐 www.laukaitislaw.com
✉ klaukaitis@laukaitislaw.com



# Kevin Laukaitis, Esq.

Owner/Founder, Laukaitis Law LLC

**Practice**

● Litigation, Consumer Class Action

**Education**

● Temple University - Beasley School of Law, J.D.

● Drexel University, B.S. Business Administration

**Admitted to Practice**

● Pennsylvania

● New Jersey

● United States District Court for the Eastern District of Pennsylvania

● United States District Court for the Middle District of Pennsylvania

● United States District Court for the District of New Jersey

● United States District Court for the Northern District of Illinois

● United States District Court for the Eastern District of Michigan

Kevin Laukaitis is the Owner and Founder of Laukaitis Law LLC. He focuses most of his practice on litigation, with a particular emphasis on consumer class actions. Kevin has extensive experience handling complex litigation matters, in state and federal courts, on behalf of consumers who have been wronged by companies that have violated the law.

Kevin graduated from Drexel University with a B.S. in Business Administration with a focus in Marketing. He received his J.D from Temple University Beasley School of Law, where he was a part-time evening program student. During law school, Kevin worked full-time as a paralegal where he gained practical experience in all aspects of class action litigation. Upon graduating, Kevin worked as an attorney at two class action law firms before founding Laukaitis Law LLC.

## Legal Successes

Kevin has played a prominent role in many class action lawsuits against deregulated energy companies that have engaged in deceptive practices by overcharging consumers on their energy bills. Kevin's efforts have resulted in over $70 million in recovery to classes of consumers who were overcharged by these energy companies. The class action settlements include:

● *Mercado, et al. v. Verde Energy USA, Inc., et al.*, No. 18-cv-2068, United States District Court for the Northern District of Illinois (appointed lead class counsel in the case and obtained $7 million for a class of Illinois, Massachusetts, New Jersey, New York, Ohio, and Pennsylvania customers of Verde Energy)

● *Bell v. Gateway Energy Services Corporation*, No. 031168/2018 (N.Y. Supr. County of Rockland) (appointed lead class counsel in the case and obtained $12.833 million for a class of New York, New Jersey, Pennsylvania, Maryland, and Virginia customers of Gateway Energy)

● *Austin v. Kiwi Energy Services LLC*, No. 515350/2017 (New York State Supreme Court, Kings County) (appointed lead counsel and obtained over $1 million for a class of customers of Kiwi Energy)

- *Hamlen v. Gateway Energy Services Corporation*, No. 7:16-cv-03526-VB-JCM, United States District Court for the Southern District of New York (appointed class counsel and worked on the team who obtained $9.25 million for a class of New York, New Jersey, Pennsylvania, Maryland, Virginia, Kentucky, and Ohio customers of Gateway Energy)
- *Lori Sanborn, et al. v. Viridian Energy Inc., et al.*, No. 3:14-cv-01731-SRU, United States District Court for the District of Connecticut (worked on the team who obtained $18.5 million for a class of customers of Viridian Energy)
- *Basile v. Stream Energy Pennsylvania, LLC, et al.*, Case No.1:15-cv-01518-YK, United States District Court for the Middle District of Pennsylvania (worked on lead class counsel team who obtained $13.5 million for a class of Pennsylvania customers of Stream Energy)
- *Amy Silvis v. Ambit Northeast LLC*, No. 2:14-cv-05005, United States District Court for the Eastern District of Pennsylvania (worked on lead class counsel team who obtained $9.3 million for a class of Pennsylvania customers of Ambit Energy)
- *Sobiech v. U.S. Gas & Electric, Inc.*, No. 14-cv-04464, United States District Court for the Eastern District of Pennsylvania (worked on lead class counsel team who obtained $1.25 million for a class of customers of Pennsylvania Gas & Electric)

Kevin has also been appointed class counsel in *Neversink General Store, et al. v. Mowi USA, LLC, et al.*, No. 20-cv-09293 (S.D.N.Y.), which resulted in a $1.3 million settlement for a class of purchasers of deceptively labeled salmon products and *Quezada, et al. v. Arbitersports, LLC*, No. 20-cv-05193 (E.D. Pa.), which resulted in a settlement for a class of over 500,000 sports referees who had their personal information compromised in a data breach.

Kevin is involved in many pending class action lawsuits and MDLs, including *IN RE: Seresto Flea And Tick Collar Marketing, Sales Practices And Products Liability Litigation*, No. 21-cv-04447 (N.D. Ill.), where he serves on the Executive Committee; and he serves as Interim Co-Lead in an increasing number of Data Breach lawsuits, including *Jackson, et al. v. Suffolk University*, 1:23-cv-10019-DJC (D. Mass); *Guerrero v. Merritt Healthcare Holdings, LLC*, 3:23-cv-00389-MPS (D. Conn.); *In re Whitworth University Data Breach*, 2:23-cv-00179 (E.D. Wash.); *Wang, et al. v. Corporation of Mercer University*, 5:23-cv-00193 (M.D. Ga.); *Brent, et al. v. Advanced Medical Management, LLC*, No. C-03-CV-23-002826 (Md. Cir. Ct.); *Kaefring, et al. v. University of Iowa Community Medical Services, LLC d/b/a UI Community Homecare,* CVCV084433 (Iowa Dist.); *In re Honeywell International Inc. Data Breach Litig.,* No. 3:23-cv-594 (W.D.N.C.); and *Kolkind v. DMS Health Technologies,* 3:23-cv-204 (D.N.D.). Kevin also serves on the Plaintiff's Executive Committee in *Skurauskis, et al. NationsBenefits Holdings LLC et al.,* 0:23-cv-60830 (S.D. Fla.) and *Lipps, et al. v. LCS Financial Services Corporation*, 23-cv-2565 (D. Colo.).

Kevin was also part of the lead class counsel team who worked on *Taha v. County of Bucks*, No. 12-06867, United States District Court for the Eastern District of Pennsylvania, a seminal case that resulted in a jury verdict for a certified class of nearly 68,000 people. The jury awarded each member of the class $1,000 in punitive

🌐 www.laukaitislaw.com
✉ klaukaitis@laukaitislaw.com

damages. The case was ultimately settled on classwide basis resulting in significant financial recovery for the class.

## Professional Associations and Activities

- American Bar Association
- Public Justice
- Philadelphia Trial Lawyers Association

# EXHIBIT C



**HAUSFELD**
**FOR THE CHALLENGE**

**FIRM RESUME**
**HAUSFELD PRIVACY & DATA BREACH**

# About Hausfeld

In the last decade, Hausfeld attorneys have won landmark trials, negotiated complex settlements among dozens of defendants, and recovered billions of dollars for clients both in and out of court. Renowned for skillful prosecution and resolution of complex and class-action litigation, Hausfeld is the only claimants' firm to be ranked in the top tier of private enforcement of antitrust/competition law, as well as a firm to watch in privacy law, in both the United States and the United Kingdom by *The Legal 500* and *Chambers and Partners*. Our German office is also ranked by *The Legal 500* for general competition law.

From our locations in Washington, D.C., Boston, New York, Philadelphia, San Francisco, Amsterdam, Berlin, Brussels, Düsseldorf, Hamburg, Stockholm, and London, Hausfeld contributes to the development of law in the United States and abroad in the areas of Antitrust/Competition, Commercial and Financial Disputes, Environmental and Product Liability, Human Rights, and Privacy & Data Breach. Hausfeld attorneys have studied the global integration of markets—and responded with innovative legal theories and a creative approach to claims in developed and emerging markets.

Hausfeld was founded by Michael D. Hausfeld, who is widely recognized as one of the country's top civil litigators and a leading expert in the fields of private antitrust/competition enforcement and international human rights. The *New York Times* has described Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers," while *Washingtonian* characterizes him as a lawyer who is "determined to change the world—and succeeding," noting that he "consistently brings in the biggest judgments in the history of law."

## Privacy & Data Breach

Hausfeld has long been recognized as a leader in cybersecurity and privacy litigation and has been

involved in many of the largest and most cutting-edge data breach and privacy cases – both in the United States and in Europe. Hausfeld's Technology & Data Breach attorneys have led dozens of cases and been pioneers in seeking compensation for victims of data breaches and privacy violations. Hausfeld has also contributed to the development of privacy law in the United States and abroad. We have recovered billions of dollars of benefits for consumers and other entities in legal actions against retailers, healthcare companies, credit bureaus, and others whose ineffective security measures led to the exfiltration of private information. We have also been pioneers in seeking enhanced business practice changes to ensure that such data is protected in the future.

Hausfeld's accolades in the cybersecurity world are unmatched. Hausfeld is the only plaintiffs' firm in the country ranked by *Legal500* in Cyber Law (including data privacy and data protection). *Chambers and Partners* ranks the leading lawyers and law firms across the world. In 2024, it ranked Jamie Pizzirusso, Hausfeld's Techynolgy & Data Breach practice group leader, (for the fourth year in a row) as a top lawyer in "Privacy and Data Security: Litigation." It described Mr. Pizzirusso as "a highly experienced litigator, noted for his successful track record acting for plaintiffs in high-stakes cybersecurity and privacy law class actions." Hausfeld is also the only Plaintiffs' firm in the country to be ranked for the third year in a row by *Chambers* in the category of Privacy & Data Security: Litigation, Nationwide where they wrote: "Hausfeld's team is talented across the board, it contains some of the hardest-working and smartest lawyers." In 2024, *The National Law Journal* recognized Hausfeld as the top firm in the Privacy/Data Breach category in their Elite Trial Lawyer awards. The *The National Law Journal* also named Mr. Pizzirusso as one of its "2023 Class Action/Mass Tort Trailblazers" for his work on data breach and privacy cases and in 2017 as a "Cybersecurity Trailblazer." In 2020, *The National Law Journal* recognized Mr. Pizzirusso as a "Washington Trailblazer" for his role in data breach and privacy matters. *Law360* recognized Hausfeld as having a "2021

**HAUSFELD**
FOR THE CHALLENGE

Practice Group of the Year" in Cybersecurity & Privacy. Additionally, in 2021, Mr. Pizzirusso was personally named as one of *Law360*'s "Cybersecurity & Privacy MVPs" (the only plaintiffs' attorney to receive that distinction). *SuperLawyers* has recognized Mr. Pizzirusso as a "Top Rated Class Action & Mass Torts Attorney" in Washington, DC since 2016 and Lawdragon has named him as one of 500 Leading Plaintiff Consumer Lawyers since 2019.



**Hausfeld, which 'commits extensive resources to the most difficult cases,' widely hails as one of the few market-leading plaintiff firms.**
*The Legal 500*

# Hausfeld: a global reach

Hausfeld's international reach enables it to advise across multiple jurisdictions and pursue claims on behalf of clients worldwide. Hausfeld works closely with clients to deliver outstanding results while always addressing their business concerns. Hausfeld does so by anticipating issues, considering innovative strategies, and maximizing the outcome of legal disputes in a way that creates shareholder value. The firm's inventive cross border solutions work to the benefit of the multinational companies it often represents.

## Creative solutions to complex legal challenges

Hausfeld lawyers consistently apply forward-thinking ideas and creative solutions to the most vexing global legal challenges faced by clients. As a result, the firm's litigators have developed numerous innovative legal theories that have expanded the quality and availability of legal recourse for claimants around the globe that have a right to seek recovery. Hausfeld's impact was recognized by the *Financial Times*, which honored Hausfeld's European team with the "Innovation in Legal Expertise - Dispute Resolution," award, which was followed up by FT commending Hausfeld's North American team for its innovative work in the same category. In addition, *The Legal 500* has ranked Hausfeld as the only top tier claimants firm in private enforcement of antitrust/competition law in both the United States and the United Kingdom. For example, the landmark settlement that Hausfeld negotiated to resolve claims against Parker ITR for antitrust overcharges on marine hoses represented the first private resolution of a company's global cartel liability without any arbitration, mediation, or litigation—creating opportunities never

before possible for dispute resolution and providing a new model for global cartel settlements going forward.

## Unmatched global resources

The firm combines its U.S. offices on both coasts and vibrant European presence with a broad and deep network around the globe to offer clients the ability to seek redress or confront disputes in every corner of the world and across every industry. With over 165 lawyers in offices in Washington, D.C., Boston, New York, Philadelphia, San Francisco, Amsterdam, Berlin, Düsseldorf, Hamburg, Brussels, Stockholm, and London, Hausfeld is a "market leader for claimant-side competition litigation" (*The Legal 500*).

# Litigation achievements

Hausfeld has achieved groundbreaking decisions and settlements on behalf of victims of data breach and privacy violations, including:

***In re: T-Mobile Customer Data Security Breach Litigation MDL*** Represented a class of plaintiffs, as co-lead counsel, whose data was exposed during a 2021 breach, securing a $350 million settlement and an agreement to increase data security spending by $150 million over the next two years, one of the largest per capita settlements ever reached in a large data breach.

***In re Marriott International Inc., Customer Data Security Breach Litig.*** Representing a class of plaintiffs as co-lead plaintiffs' counsel against hotel chain Marriott and its data security vendor Accenture. Hausfeld's filing came on the heels of Marriott's admission that approximately 5.25 million unencrypted passport numbers and 20.3 million encrypted passport numbers were among the sensitive customer records accessed by hackers. A federal judge in Maryland granted class certification in May 2022, issuing a 70-plus page opinion certifying the case for trial. The opinion allows the plaintiffs to seek damages related to overpayment for hotel rooms, as well as statutory and nominal damages. The Court also found that consumers might be able to recover damages for the inherent value of their personal information stolen during the breach. This is by far the largest of any consumer data breach class action ever certified. An appeal is currently pending.

***In re Equifax, Inc. Customer Data Security Breach Litig.*** Reached a $1.5 billion settlement for data breach victims as part of the court-appointed Plaintiffs' Steering and Settlement Committee. This massive 2017 breach exposed the Social Security numbers, birth dates, addresses, driver's licenses, and credit card numbers of millions of consumers. In 2021, the Eleventh Circuit Court of Appeals upheld the settlement over the appeal of several objectors making it the largest data breach settlement ever approved by a Circuit Court of Appeals.

*In re TikTok, Inc. Consumer Privacy Litig.* Obtained a $92 million settlement, one of the largest Biometric Information Protection Act ("BIPA") settlements ever, against popular app, TikTok. TikTok violated the Illinois BIPA laws, as well as numerous other privacy statutes, with its face capturing software that numerous minors and young adults use to share videos and messages.

*In re Target Corporation Customer Data Security Breach Litig.* Secured a $60 million settlement to a nationwide class of financial institutions after class certification. This data breach was the largest data breach at the time, where financial institutions were forced to replace millions of credit cards. The settlement covered the out-of-pocket costs sustained due to the breach and required Target to implement numerous data security changes going forward.

*In re Premera Blue Cross Customer Data Sec. Breach Litig.* Secured a $74 million settlement, as a member of the Executive Leadership Committee, on behalf of health insurance customers' whose data was stolen. Premera Blue Cross was aware of their inadequate data security when an employee opened a phishing email, giving hackers access to company data.

*Baker v. ParkMobile, LLC.* This case asserts that ParkMobile was negligent in allowing attackers to access records of 21 million customers. Consumers sued ParkMobile LLC for a data breach that affected users of the parking app. The ParkMobile app allows users to pay for parking without having to use a traditional meter. The complaint alleges that ParkMobile was negligent in its safeguarding of consumer data, which led to the data breach of users' license plate numbers, email addresses, telephone numbers, passwords, and other mobile app account information. The cases in the Northern District of Georgia have been consolidated and Swathi Bojedla of Hausfeld was appointed to the Plaintiffs' Steering Committee. ParkMobile moved to dismiss arguing that the plaintiffs' negligence claim fails because the company did not have a duty to protect consumer data under Georgia law, and no personal information was affected. In August 2022, however, the court disagreed, holding that ParkMobile did indeed have a legal duty to protect the information that was compromised, and, as such, it was too early in the proceedings to simply accept ParkMobile's premise that sensitive information was not exposed.  In September 2023, Park Mobile again attempted to have the case dismissed in a Motion for Judgment on the Pleadings but the court once again denied most of the Motion dismissing only three of the pending claims. Hausfeld took the lead role on drafting the plaintiffs' class certification motion. As of November 2024, we are awaiting final approval on a $30,000,000 settlement.

*In Re: Post Meds, Inc. Data Breach Litigation*. Hausfeld serves as co-lead counsel, appointed in March 2024, in a data breach case against Post Meds, Inc. an online pharmacy delivery service, was targeted by cybercriminals who stole customers' sensitive information during a breach of its systems in August 2023. Information stolen included pharmacy management files, patient names, medications, and prescribing doctor information. The team has brought action against Post Meds seeking monetary damages, restitution, and/or injunctive relief for a proposed class of individuals whose who allege that the breach exposed users' personally identifying information of hundreds of thousands of patients. As of September 2024, a $7,500,000 settlement of has been reached that is awaiting preliminary approval.

*In re Wawa, Inc. Data Security Litigation.* Hausfeld serves as court-appointed Interim Co-lead Counsel in In re Wawa Data Security Litigation (No. 19-cv-6019, E.D. Pa.) for a proposed class of financial institutions alleging the convenience-store chain's negligence resulted in a massive data breach, compromising more than 30 million payment cards used at up to 850 store locations on the East Coast.  The card issuers sustained losses from issuing refunds for fraudulent purchases, replacing compromised cards, and monitoring and blocking unauthorized transactions, among other injuries. In May 2022, the Court rejected Wawa's arguments and motion to dismiss Plaintiffs' claims for negligence and injunctive relief. On March 13, 2023, plaintiffs filed for preliminary approval settlement of up to $28.5 on behalf of a class of financial institutions, led by a plaintiff group composed of Inspire Federal Credit Union, Insight Credit Union, and Greater Cincinnati Credit. Of the $28.5 million settlement, up to $18.5 million will directly compensate financial institutions for card cancellations and replacement costs, up to $8 million will compensate card issuers for fraud losses incurred on affected customer cards, and up to $2 million for other costs incurred by financial institutions from the breach as an alternative to filing another form of claim.

# JAMES J. PIZZIRUSSO

**Partner**
Washington, DC



✉ jpizzirusso@hausfeld.com

📞 +1 202 540 7154

in [LinkedIn](LinkedIn)

## OVERVIEW

As a co-founder of the firm, James has led Hausfeld's Data Breach/Privacy and Consumer Protection practice groups since the firm's inception and courts have personally appointed him to leadership positions in dozens of successful class actions. He has diverse practice centering on cybersecurity and privacy law, but also handles cases involving consumer protection, antitrust law (with an emphasis in agriculture), and sports and entertainment law. James' practice also includes domestic and international environmental and public health litigation.

**Clients**

James has pursued justice on behalf of his clients, both domestically and abroad, in a wide variety of practice areas and on behalf of notable clients. Aside from representing consumers suffering from privacy violations and consumer fraud, his clients have included musicians (e.g., Chuck D. of Public Enemy) and professional athletes (e.g., Jim Brown). He has successfully resolved the claims of numerous farmers and landowners in Barbados who suffered reduced crop yields and property damages as a result of a massive jet fuel spill. James has also represented farmers and other entities seeking damages related to unauthorized releases of genetically modified crops. Domestically, he has represented municipalities and individuals suffering harm related to lead paint and other toxic products.

James' distinctive approach to litigation has resulted in recoveries of billions of dollars for his clients and class members.

## EDUCATION

George Washington University Law School, J.D., with honors, 2001
University of Tennessee-Knoxville, B.A., *summa cum laude*, 1998

## BAR ADMISSIONS

District of Columbia
The Supreme Court of the United States
United States Court of Appeals for the Fourth Circuit
United States Court of Appeals for the Sixth Court
United States Court of Appeals for the Ninth Court
Several Federal District Courts

## AFFILIATIONS

ABA Antitrust Law Section's Consumer Protection Committee, Vice Chair (2022-present)
ABA Antitrust Law Section's Competition Torts Committee, Vice Chair (2020-2022)
ABA Antitrust Section's Food & Agriculture Committee, Co-Chair (2017)
ABA Antitrust Section's Food & Agriculture Committee, Vice Chair (2014-2016)
ABA Antitrust Section's Trade, Sports, Professional Associations Committee, Vice Chair (2012- 2013)
George Washington University Law School, Adjunct Professor, Environmental and Toxic Torts (2009)
George Washington University Law School, Visiting Associate Professor of Clinical Law, Vaccine Injury Clinic (2007)
Sedona Conference Data Security and Privacy Liability (Working Group 11) Steering Committee, Appointed Member (2020-2023)

## WHAT OTHERS SAY

**Chambers and Partners**
- Band 2, Privacy and Data Security: Litigation, 2024
- Band 3, Privacy and Data Security: Litigation since 2021
- Global Guide: Privacy & Data Security: Litigation - USA in 2023 and 2024
- Hausfeld ranked as band 1 in Privacy and Data Security Litigation (nationwide) (the only Plaintiffs' firm in the country to receive a Band 1 ranking)

**Financial Times**
- Shortlisted Hausfeld for the "Innovative Lawyers in Cyber Security and Data Protection" Award

**Law360**
- Hausfeld recognized as "2021 Practice Group of the Year" in Cybersecurity & Privacy
- Cybersecurity & Privacy MVP in 2021 (the only plaintiffs' attorney to receive that distinction)
- Runner up Litigator of the Week in December 2023

**Lawdragon**
- 500 Leading Environmental & Energy Lawyer in 2021
- The Green 500: Leaders in Environmental Law in 2021
- 500 Leading Plaintiff Consumer Lawyers since 2019
- 500 Leading Litigators in America in 2022

**National Law Journal**
- Elite Trial Lawyers, Hausfeld wins Privacy/Data Breach category in 2024
- Class Action/Mass Tort Trailblazer in 2023
- Washington, D.C. Trailblazer in 2020
- Cybersecurity Trailblazer in 2017

**Super Lawyers**
- Super Lawyer, Consumer Law in Washington, DC since 2016

**Who's Who Legal**
- Global Leader, Competition: Plaintiff in 2020 & 2023
- International Who's Who of Competition Lawyers & Economists by the Global Competition Review and Who's Who Legal in 2014.

**Other**

- DC Local Litigation Star from 2013-2015 and Antitrust Litigation Star in 2012 by Benchmark Litigation.
- One of just four Rising Stars under 40, Consumer Protection and Privacy Law in 2012 by Law360.
- James is regularly asked to appear as a speaker at conferences around the country and has presented on topics including antitrust, consumer protection, toxic torts, and public interest litigation.
- Legal 500 - Firms To Watch: Cyber law (including data privacy and data protection)

## ⬛ EXPERIENCE

### Technology & Data Breach

- *In re Equifax, Inc. Customer Data Sec. Breach Litig.* MDL No. 1:17-md-2800-TWT (N.D. Ga.) (PSC and Settlement Committee) ($500 million settlement with $1 billion in upgraded data security) (largest data breach settlement ever reached)
- *In re T-Mobile Data Security Breach Litig.,* MDL No. 4:21-md-03019-BCW (W.D. Mo.) (Co-Lead Counsel) ($500 million settlement) (second largest data breach settlement)
- *In re: Marriott International Inc., Customer Data Security Breach Litig.,* MDL No. 19-md-2879 (D. Md.) (Co-Lead Counsel) (pending)
- *In re American Medical Collection Agency, Inc. Customer Data Sec. Breach Litig.,* MDL No. 19-md-2904 (D.N.J.) (Steering Committee) ($6.3 million partial settlement) (pending)
- *In re Capital Health Systems, Inc., Data Breach Litig.,* No. 3:23-cv-23234 (D.N.J.) (Co-Lead Counsel) (pending)
- Doe v. Highmark, Inc., No. 2:23-cv-00350-NR (W.D. Pa.) (PSC) (pending)
- *In re LastPass Data Sec. Incident Litig.,* 1:22-cv-12047-PBS (D. Mass.) (Co-Chair of PSC) (pending)
- *In re: Entertainment Partners Data Breach Litig.,* 2:23-cv-06546-CAS-PVC (PSC) ($10M settlement reached)
- *In Re: Overby-Seawell Company Customer Data Sec. Breach Litig.,* MDL No. 1:23-md-03056 (N.D. Ga.) (PSC) ($6M settlement reached)
- *Miller v. NextGen Healthcare, Inc.,* 1L23-cv-02043 (N.D. Ga.) (PSC) (pending)
- *Kolstedt v. TMX Fin. Corp. Serv., Inc.,* 4:23-cv-00076 (S.D. Ga.) (PSC) (pending)
- *In re Enzo Biochem Data Sec. Litig.,* 2:23-cv-04282 (E.D.N.Y.) (Co-Lead) (tentative settlement reached)
- *In re: T-Mobile 2022 Customer Data Sec. Breach Litig.,* 4:23-md-03073-BCW (W.D. Mo.) (Co-Lead) (pending)
- *Silvers v. HCA Healthcare, Inc.,* 3:23-cv-00684 (M.D. Tn.) (Executive Committee) (pending)
- *In re: MOVEit Customer Data Sec. Breach Litig.,* 1:23-md-03083-ADB (D. Mass.) (PSC) (pending)
- *Gordon v. Zeroed-In Technologies, LLC,* 1:23-cv-03284-BAH (D. Md.) (Co-Lead) (pending)
- *Price v. Carnival Corp.,* 3:23-cv-00236-GPC-MSB (S.D. Cal.) (Co-Lead) (pending)
- *Detrixhe v. Integris Health, Inc.,* CJ-2023-7235 (Dist. Ct. Okl. Cty) (Co-Lead) (pending)
- *In re: HealthEC LLC Data Breach Litig.,* No. 2:24-cv-00026-JKS-ESK (D.N.J.) (Plaintiffs' Executive Committee) (pending)
- *In re: Postmeds, Inc., Data Breach Litig.,* No. 4:23-cv-05710-HSG (N.D. Cal.) (Co-Lead) ($7.5M settlement pending)
- *In re Harvard Pilgrim Data Security Incident,* No. 23-11211-NMG (D. Mass.) (Co-Lead) (tentative settlement reached)
- *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* MDL No. 3:15-md-2633-SI (D. Or.) (Executive Leadership Committee) ($74 million settlement)
- *In re Target Corporation Customer Data Security Breach Litig.,* MDL No. 14-25522 (D. Minn.) (Steering Committee on behalf of financial institutions, contested nationwide class certification granted, $60 million settlement approved)
- *In re: Arby's Rest. Group, Inc. Data Security Litig.,* 1:17-cv-514-AT (N.D. Ga.) (Co-Lead) (~$5 million settlement)
- *Greater Chautauqua Federal Credit Union v. Kmart Corp.,* 1:15-cv-02228 (N.D. Ill.) (Co-Lead) (~$18.5 million settlement)
- *First Choice Federal Credit Union v. Wendy's,* 2:16-cv-00506 (W.D. Pa.) (Plaintiffs' Executive Committee) ($50 million settlement)
- *In re SAV-RX Data Breach Litigation,* 8:24CV204 (D. Neb.) (Co-Lead Counsel)
- *Tanya Owens, et. al, v. MGM Resorts International, et. al.,* 2:23-cv-01480-RFB-MDC (D. Nev.) (Co-Lead Counsel)

## Antitrust/Competition

- *In re Processed Egg Products Antitrust Litig.* – $136 million in settlements reached on behalf of direct purchasers of shell eggs.
- *In re Fresh and Process Potatoes Antitrust Litig.* – $19.5 million settlement reached on behalf of purchasers of potatoes.
- *In re New Jersey Tax Sale Certificates Antitrust Litig.* – $9.5 million settlement on behalf of victims of bid-rigging conspiracy related to tax sale certificates.

## Deceptive Business Practices & Consumer Protection

- *Morris v. Bank of America, N.A.* (Appointed co-lead, $75 million settlement involving excessive overdraft and insufficient funds fees)
- *In re Sony PS3 "Other OS" Litig.* (Appointed co-lead counsel in case involving falsely advertised PlayStations: $4 million settlement)
- *Radosti v. Envision EM/, LLC* ($17.5 million nationwide settlement)
- *In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litig.* ($8 million nationwide settlement)
- *Brown v. Transurban (USA), Inc.* (Appointed co-lead counsel: nationwide settlement in this case involving excessive toll lane fees)
- *In re Honey Transshipping Litig.* ($4 million nationwide Lanham Act settlement on behalf of honey producers)
- Represented Vital Farms in Lanham Act litigation against competitor resulting in confidential settlement

## Public Entity

We have extensive experience representing public and governmental entities, including state Attorneys General Offices, municipal utility boards, and counties in high-stakes investigations and litigation involving a variety of legal practice areas, including antitrust, consumer protection, financial services, and environmental law. The firm's public entity portfolio includes:

- Retention by state Attorneys General Offices for antitrust litigation against Big Tech platforms.
- Retention by the largest public water supplier in the country relating to environmental contamination.
- Retention by public entities to pursue antitrust claims relating to fraud in financial markets; and
- Retention by the state of West Virginia in one of the earliest cases against the pharmaceutical industry relating to the opioid crisis, filed decades before the current wave of opioid litigation.

## Sports & Entertainment

- *In re Warner Music Group Corp. Digital Downloads Litig.* – Nationwide settlement of royalty dispute involving $11.5 million in past damages and future royalty increases in perpetuity.
- *James v. UMG Recordings, Inc.* - Nationwide settlement of royalty dispute involving $11.5 million in past damages and future royalty increases in perpetuity.
- *Dryer v. Nat'l Football League* – $50 million settlement on behalf asserting copyright and publicity rights claims from the NFL's use of retired players' images and likenesses.

# MEGAN E. JONES

**Partner**
San Francisco

she/her/hers

✉ mjones@hausfeld.com

📞 +1 415 744 1951

in LinkedIn



## ▟ OVERVIEW

Megan Jones (@MeganJonesEsq), Co-Chair of the firm's Antitrust practice group, is a California Bay Area-based lawyer who focuses on recovering damages for companies who are victims of antitrust cartels for price-fixing, tying, restraints of trade, and other competition violations. With 19 years of experience in antitrust class actions, Megan is trusted by courts to lead large and complex antitrust cases:

1. In re Local TV Advertising Litigation (Sole Lead counsel)
2. In re Diisocyanates Antitrust Litigation (Co-Lead counsel)
3. In re Beef Antitrust Litigation (Co-Lead Counsel)
4. In re Blue Cross Blue Shield Antitrust Litigation (Plaintiff Steering Committee)
5. In re Marriott International Customer Data Security Breach Litigation (Plaintiff Steering Committee)

Megan is known for her creativity on settlement issues.[1] For example, in In re Municipal Derivatives Antitrust Litigation (S.D.N.Y.), Ms. Jones was co-lead counsel and recovered over $220 million dollars for a class of cities and municipalities. Notably, Ms. Jones co-negotiated several of the settlements obtained in that class with Select State Attorneys General, who trusted class counsel to administer notice and the claims process for the joint proceeds. The American Antitrust Institute recognized this unusual public/private partnership, and awarded Megan (and her team) the "Outstanding Antitrust Litigation Achievement in Private Law Practice" in 2016. Other settlements Ms. Jones negotiated include:

- In re Municipal Derivatives Antitrust Litigation – Resulted in over $200 million on behalf of the class.
- In re Polyester Staple Antitrust Litigation – Resulted in $63.5 million on behalf of class.
- In re Compact Disc Antitrust Litigation – Resulted in over $50 million on behalf of class.
- In re Rubber Chemicals Antitrust Litigation – Resulted in over $100 million on behalf of class.
- In re MMA Antitrust Litigation – Resulted in over $20 million on behalf of class.
- In re EPDM Antitrust Litigation – Resulted in $81 million on behalf of class.
- Megan was also involved in the negotiation of a $300 million global settlement with Bayer (which resolved three cases: EPDM, Rubber Chemicals and NBR), and drafted the innovative settlement agreement itself.

As one of the few women in the plaintiffs' bar inducted into the Legal 500 Hall of Fame for continued excellence in litigation, Ms. Jones has a national reputation for excellence that has been obtained the old-fashioned way, by trying to be the best team member in the trenches. See "Female Powerbrokers Q&A: Hausfeld's Megan Jones," April 30, 2014; see also Chambers and Partners' description of Ms. Jones as "personable, very smart and capable."  She is known for creating effective multi-firm teams that focus with laser-like precision on the specific litigation strategy designed with input from diverse sources. She is also known for her relentless pursuit of the facts, and is well-regarded for her electronic discovery prowess (speaking and training others on best practices via the prestigious Sedona Conference®).

Whether leading enormous cases with 20+ defendants or small regional matters, Ms. Jones masters the intricacies of economic markets and works with experts to develop economic models for her clients' recovery, which support class certification motions, settlement negotiations, and discovery efforts. Megan prides herself on the ability to create and lead teams of lawyers of any size (having organized teams of 80 law firms, in one particular case) to create a record that either wins the case, drives settlement, and /or obtains a decision upheld at the appellate level. Part of Megan's success is due to her belief in using diverse and inclusive litigation teams, which she has helped foster over a decade by creating and running a conference for women antitrust lawyers to exchange best practices.

Megan is both reasonable and relentless. She carefully chooses her legal battles, and eschews gamesmanship for the sake of gamesmanship. Mindful of scarce judicial resources in complex antitrust cases that can last years, she develops a strategy at the outset about what particular legal issues need judicial attention and clears the board of the rest. She is highly respected from all contingents because she brings that same strategy to settlements, using her almost two decades of negotiation experience from being at Hausfeld to craft settlement strategy and terms in even the most difficult cases. Just one example of this creativity is that in one of her cases, Megan worked with and joined Select State Attorneys General to co-negotiate and jointly settle a class claim on behalf of certain states as well as the civil litigation class.

[] [1] https://podcast.ourcuriousamalgam.com/episode/48-how-do-you-get-to-the-final-yes/ (ABA's Antitrust Section podcast, featuring Megan Jones, May 2020).

**Clients**
Companies that buy things to make things have typically bought cartelized products, and Megan helps them recover damages for such purchases. Able to analyze a corporation's purchases around the world, Megan can then offer a panoply of options for recovery in multiple jurisdictions. She emphasizes the non- litigation options a corporation has when appropriate, and she is as adept at settling a case in a conference room as she is in a courtroom.

## 🖊 EDUCATION

University of North Carolina at Chapel Hill School of Law, J.D., 1999
North Carolina State University, magna cum laude, B.A., 1995

## 🖊 BAR ADMISSIONS

California
District of Columbia
North Carolina

## 🖊 AFFILIATIONS

American Antitrust Institute, Board of Directors
American Bar Association - Antitrust Section, Appointed Council Member (2021-22)
American Bar Assocation - Antitrust Section's Communications and Digital Technology Industries Committee, Vice Chair
American Bar Association - Antitrust Section's Global Private Litigation Committee Invited Member of the Leadership Team (2019-Present)
American Bar Assocation - Antitrust Section's Global Private Litigation Committee, Vice Chair
American Bar Assocation - Antitrust Section's Media and Technology Committee, Vice Chair
Forum on Antitrust Litigation, Chairwoman
HiPower Alumni Network, Ring 7
Incubator for Women Leaders, The Club, Silicon Valley
The Sedona Conference®, Member
Women Antitrust Plaintiffs' Attorney Network Group, Founder

## ✏ WHAT OTHERS SAY

**American Antitrust Institute**
- Outstanding Antitrust Litigation Achievement in Private Law Practice, an honor she received as one of the leaders of the In re Blue Cross Blue Shield Antitrust Litigation case team in 2021

**Benchmark Litigation**
- California Litigation Star, Antitrust/Competition since 2021
- Local Litigation Star, Antitrust/Competition since 2021
- Litigation Star, Antitrust/Competition, 2023

"Megan Jones in the San Francisco office has been identified by several peers as 'a leader at Hausfeld now.'" (Benchmark Litigation, Dispute Resolution, 2021)

**Best Lawyers**
- Lawyer of the Year in 2025
- Best Lawyer since 2023
  - Antitrust Law

**Chambers**
- Band 1, Antitrust: Plaintiff - Nationwide since 2021
- Band 1, Antitrust: Mainly Plaintiff - California since 2021
- Band 2, Antitrust: Plaintiff - Nationwide in 2020
- Band 2, Antitrust: Mainly Plaintiff - California in 2019 and 2020

A source reported that, "Megan excels in any project or task she takes on." (Chambers Antitrust: Mainly Plaintiff – California, 2021)

Megan Jones deftly represents plaintiffs in significant anticompetitive disputes. She has expertise in cases concerning price fixing and trade restraints." The publication also noted that "Megan Jones is commended for her expertise in representing corporate plaintiffs in cartel recovery actions. She is further noted for her work leading large class action cases. Sources state that 'Megan is a very good, diligent lawyer who considers the big picture.'" (Chambers Antitrust: Mainly Plaintiff – California, 2020)

Megan is "personable, very smart and really capable," and "well respected at the California Bar for her plaintiff-side antitrust practice." (Chambers Antitrust: Mainly Plaintiff – California, 2019)

**Global Competition Review**
- 'Women in Antitrust' list in 2021
- Litigation of the Year - Cartel Prosecution in 2021: an honor she received as part of the In re Blue Cross Blue Shield Antitrust Litigation case team.

**Law360**
- Titan of the Plaintiffs Bar in 2021
- Female Powerbroker in her field in 2014
- Rising Star, Competition Law in 2012

**Lawdragon**
- 500 Leading Lawyers in America since 2019
- 500 Leading Plaintiff Financial Lawyers since 2019

## ◢ WHAT OTHERS SAY

**Legal 500**
- Hall of Fame since 2020 – described by the Legal 500 as "including individuals who have received constant praise from their clients for continued excellence."
- Leading Lawyer – Civil Litigation/Class Action: Plaintiff since 2012
- Leading Lawyer – Plaintiffs' Representation for Antitrust since 2012

"Megan Jones is a superstar – creative, thoughtful, dynamic." (Legal 500 US, Antitrust - Civil Litigation/Class Actions, 2024)

"In San Francisco, Megan Jones stands out for her expertise in antitrust cartels, regularly procuring settlements for clients." (Legal 500 US, Antitrust - Civil Litigation/Class Actions, 2021)

**Lexology Index (formerly Who's Who Legal)**
- Thought Leader, USA: Competition, since 2023
- Global Elite Thought Leader, Competition: Plaintiff since 2018
- Recommended, Competition: Plaintiff since 2016
- International Who's Who of Competition Lawyers & Economists by the Global Competition Review and Who's Who Legal in 2014

"Megan is a smart and aggressive plaintiffs' counsel who has led many cases and obtained excellent results." (Who's Who Legal, Competition - Plaintiff 2023)

"The 'incredibly talented' Megan Jones is singled out by peers as 'a true leader' and is widely endorsed as 'one of the very best plaintiff counsel'." (Who's Who Legal, Competition - Plaintiff - Legal Marketplace Analysis, 2022)

"The 'fantastic' Megan Jones is a distinguished figure in the North American competition market. Sources describe her as a 'future leader' of the field who 'is blazing a trail for younger women in the profession,' and is highly respected from all contingents." (Who's Who Legal, Competition - Plaintiff - Legal Marketplace Analysis, 2020)

 A "trailblazer" who is "highly respected from all contingents" with "extraordinary depth of expertise in cartel-related matters." (Who's Who Legal, Competition - Plaintiff - Legal Marketplace Analysis, 2018)

**National Law Journal**
- Firm named an Elite Trial Lawyer Awards winner in the Antitrust category, an honor received as a result of the successful outcome of In re Blue Cross Blue Shield Antitrust Litigation, in which Megan was a case team leader.

**Super Lawyers**
- Super Lawyer, Antitrust Litigation in San Francisco since 2017
- Super Lawyer, Antitrust Litigation in Washington, DC since 2012

**Other**
- Named to the '40 in Their 40s' list of notable women competition professionals by W@ in 2019
- Outstanding Antitrust Litigation Achievement in Private Law Practice: an honor she received by the American Antitrust Institute in 2016
- Nominated Changemaker, White House's United State of Women Summit, 2016
- Selected to speak at the American Bar Association's 8th National E-Discovery Institute in 2014, where nationally-acclaimed e-discovery professionals convened for a full day to analyze and discuss the latest developments and best strategies for managing the e-discovery process.

## ◢ WHAT OTHERS SAY

**Other**
- 100 Successful Women in Antitrust by the Global Competition Review in 2013
- Named one of just fourteen female 'Equity Champions' by Burford Capital since 2018 – Burford Capital is a leading global finance and investment management firm focused on law, which launched The Equity Project in 2018. This is a groundbreaking initiative designed to help close the gender gap in law by providing an economic incentive for change through a $50 million pool of capital earmarked for financing commercial litigation and arbitration matters led by women.
- Deemed one of the "nation's best lawyers in an MDL" and a "professional problem solver," Transcript of August 30, 2018 Hearing at 23, In re Blue Cross Blue Shield Antitrust Litig., No. 2:13-cv-20000 (N.D. Ala.).

## ◢ EXPERIENCE

### Antitrust/Competition

- *In re Blue Cross Blue Shield Antitrust Litigation – In which Megan has been appointed to the Plaintiffs' Steering Committee.*
- *In re Local TV Advertising Antitrust Litigation – In which Megan has been appointed Lead Counsel.*
- *In re Diisocyanates Antitrust Litigation – In which Megan has been appointed Co-lead Counsel.*
- *In re Municipal Derivatives Antitrust Litigation – Resulted in over $200 million on behalf of the class.*
- *In re Polyester Staple Antitrust Litigation – Resulted in $63.5 million on behalf of class.*
- *In re Compact Disc Antitrust Litigation – Resulted in over $50 million on behalf of class.*
- *In re Rubber Chemicals Antitrust Litigation – Resulted in over $100 million on behalf of class.*
- *In re MMA Antitrust Litigation – Resulted in over $20 million on behalf of class.*
- *In re EPDM Antitrust Litigation – Resulted in $81 million on behalf of class.*
- *Megan was also involved in the negotiation of a $300 million global settlement with Bayer (which resolved three cases: EPDM, Rubber Chemicals and NBR), and drafted the innovative settlement agreement itself.*

# JEANNINE M. KENNEY

**Partner**
Philadelphia



she / her / hers

✉ jkenney@hausfeld.com

📞 +1 215 309 7478

in LinkedIn

## OVERVIEW

Jeannine joined the firm upon its inception in 2009, and her practice focuses primarily on private enforcement of federal and state antitrust laws.

Jeannine brings to her legal work nearly two decades of experience in public policy spanning a wide range of legislative and regulatory fields, including agriculture, food safety, telecommunications, and financial services, among others, advocating for the public interest and consumers. For nearly five years, she worked as a legislative assistant for two United States Senators. As a Senior Policy Analyst for Consumer Reports, she advocated for consumer interests before Congress and federal agencies, testifying before congressional committees, appearing as a speaker at Federal Trade Commission events, and presenting oral and written testimony to federal regulatory agencies. Jeannine also served as an appointed member of two federal advisory committees related to pesticide safety. Between stints at Consumers Union, she served as the Vice President of Domestic Affairs for the National Cooperative Business Association, representing member-owned consumer, producer, and purchasing cooperatives. From 2010 to 2011, Jeannine clerked for the Honorable Cynthia M. Rufe, United States District Court Judge, Eastern District of Pennsylvania.

Jeannine is adept and experienced in managing all aspects and phases of e-discovery, the complex process of discovering and producing electronically stored information (ESI). She routinely navigates detailed, complex and contentious ESI issues from dispute to resolution, including briefing and arguing e-discovery motions when necessary. As a member of the Sedona Conference's Working Group on Electronic Document Retention and Production, Jeannine counsels Hausfeld's litigation teams in negotiations relating to preservation, search, and production of ESI in cases often involving dozens of defendants, negotiates ESI search terms, technology assisted review (predictive coding) methodologies, and database disclosures and productions, and manages complex document reviews using advanced review analytics to speed discovery.

**Clients**
Jeannine's clients run the gamut of industries and include payors of generic drugs, direct purchasers of eggs and potatoes, insurance subscribers, and student athletes, among others.

## EDUCATION

Georgetown University Law Center J.D., magna cum laude, Order of the Coif, 2009
University of Wisconsin-Madison, B.A., Political Science and Economics, with distinction, 1988

## BAR ADMISSIONS

District of Columbia
Commonwealth of Pennsylvania
United States District Court for the Eastern District of Pennsylvania
United States District Court for the District of Columbia
United States Courts of Appeals for the 9th Circuit
United States Courts of Appeals for the District of Columbia

## AFFILIATIONS

Jeannine educates other practitioners on e-discovery realities, serving as a faculty coach to participants in Georgetown University's intensive eDiscovery Training Academy, and speaking at conferences regarding the complexities and ethical quandaries involved in the search for and production of ESI and the importance of cooperation among the parties. Jeannine also uses her antitrust expertise to educate the bar, serving as an instructor for ABA's Antitrust Masters Courts. Affiliations include:

- American Association for Justice Electronic Discovery Committee, Co-Chair
- Arizona State University Arkfeld 2024 eDiscovery Conference, Member, Advisory Committee
- Complex Litigation E-Discovery Forum, Board Member
- Global Advisory Council, Electronic Discovery Reference Model (EDRM), Member
- Georgetown Law Journal (2007-2009)
- Pennsylvania Association for Justice
- Philadelphia Bar Foundation, Board of Trustees
- Sedona Conference Working Group on Electronic Document Retention and Production, Member

## WHAT OTHERS SAY

**Chambers**
USA
- Band 1, E-Discovery & Information Governance: Plaintiffs - Nationwide (2021 - Present)
- Band 4, E-Discovery & Information Governance - Nationwide (2021 - Present)
Global Guide
- E-Discovery & Information Governance – USA (2022 - 2024)
"Noted for her ability to successfully litigate e-discovery matters on behalf of plaintiffs, including in data breaches and antitrust cases, among many others. A source reported, 'She is very tough, very knowledgeable and I really enjoy working with her.'" (Chambers US, E-Discovery & Information Governance, 2021)
**Lawdragon**
- 500 Leading Plaintiff Financial Lawyers since 2019
**Super Lawyers**
- Super Lawyer, Antitrust Litigation in Philadelphia since 2020
- Super Lawyer, Antitrust Litigation in Washington, DC in 2020
- Rising Star, Antitrust Litigation for five consecutive years from 2015-2019
**Other**
- International Academy of Trial Lawyers Student Advocacy Award: an honor given for her work as part of Georgetown University's Appellate Litigation Clinic in 2009.

# ✎ EVENTS

- "Drafting Team Report: Discovery-Related Sanction," The Sedona Conference Group 1, Mid-Year Meeting (April 2024), Panelist
- "Privilege Determinations and Logs: The Elusive Search for an Easy Button," Arizona State University Arkfeld eDiscovery, Law, and Technology Conference (March 2024), Moderator
- "Under Pressure: Adapt Your Ethics Mindset to the Adapting Workplace… or Bite the (Sanctions) Dust," Arizona State University Arkfeld eDiscovery, Law, and Technology Conference (March 2024), Panelist
- "WiE New York | Negotiating ESI Protocols - Panel Discussion - CLE & Dinner," Women in eDiscovery | NYC-Chapter (November 2023), Panelist
- "Discovery Sanctions," AAJ Annual Meeting (July 2023), Panelist
- "eDiscovery" Emerging Issues & Essential Strategies in Class Actions" Epiq's Class of Our Own Women's Summit (May 2023), Panelist
- "Ethical Obligations in ESI Disclosure and Negotiation," The Sedona Conference Working Group 1 Mid-Year Meeting (April 2023), Panelist
- "Latest Policy & Rule Updates," Complex Litigation e-Discovery Forum (March 2023), Discussion Leader
- "Class Certification," and "Pleading and Proving Conspiracy" ABA Antitrust Masters Course (Oct. 2022), Panelist
- "Draft Outline Review: Commentary on Discovery-Related Sanctions" The Sedona Conference Working Group 1 Annual Meeting (October 2022), Panelist
- "Rule 37(e) - Establishing Spoliation and Appropriate Remedies" and "Trust But Verify, But How?" ASU - Arkfeld eDiscovery, Law, and Technology Conference (Oct. 2022), Panelist
- "The Effective Use of Discovery-Related Sanctions" The Sedona Conference Working Group 1 Annual Meeting (October 2021), Panelist
- "Discovery negotiations" ABA Section of Antitrust Law, Civil Practice and Procedure Committee: Discovery Nuts and Bolts Series (June 2021), Panelist
- "The Great Native v. TIFF Debate," Complex Litigation eDiscovery Forum (Oct. 2020), Discussion Leader
- "Reinventing the Privilege Log," Sedona Conference Working Group 1 Annual Meeting (Oct. 2020), Panelist
- "eDiscovery Special Masters: The Good, the Bad, and the Ugly," Arizona State University-Arkfeld eDiscovery, Law and Technology Conference (March 2020), Speaker
- "eDiscovery Negotiation Training (eDNT) program," The Sedona Conference 2020 (Feb. 2020), Faculty
- "Fifth Annual (2019) Judicial Training Symposium," hosted by the Federal Judicial Center and Electronic Discovery Institute (Oct. 2019), Faculty
- "Hot Button Issues in Negotiating ESI Protocols," The Sedona Conference Working Group 1 Annual Meeting (Oct. 2019), Dialogue Leader
- "Hot Topics with ESI Protocols," Complex Litigation E-Discovery Forum (Sept. 2019), Presenter
- "Perspectives on the Impact of the 2015 Rule 25 Amendments," The Duke Law Bolch Judicial Institute's Distinguished Lawyers Conference on Evaluating the 2015 Rule 26 Discovery-Proportionality Amendments and Bolch-Duke Guidelines and Best Practices (June 2019), Panelist
- "TAR Unstuck: Choosing the Right Tool, Using It Wisely, and Negotiating an Effective TAR Protocol," Eighth Annual ASU-Arkfeld eDiscovery and Digital Evidence Conference (March 2019), Panelist
- "eDiscovery Negotiation Training (eDNT) program," The Sedona Conference 2019 (Feb. 2019), Faculty
- "Food Supply Chains: Integration, Globalization, and What it Means for Competition and Stability," American Antitrust Institute Food and Agriculture Competition Roundtable (Dec. 2018), Moderator
- "Fourth Annual Judicial Training Symposium," hosted by the Federal Judicial Center and Electronic Discovery Institute (Nov. 2018), Faculty
- "Fourth Annual Judicial Training Symposium," hosted by the Federal Judicial Center and Electronic Discovery Institute (Nov. 2018), Faculty
- "Coaches Corner," Georgetown University Law Center eDiscovery Training Academy (2016, 2017) Presenter
- "eDiscovery Coach", Georgetown University Law Center eDiscovery Training Academy, (2015- 2017), Faculty

- "Engaging the Disinterested Judge," Georgetown Advanced E-Discovery Institute (Nov. 2017), Panelist
- "Game On: Ethics & eDiscovery," Georgetown Advanced E-Discovery Institute (Nov. 2016), Panelist
- "Agriculture & Food Litigation Roundup: Updates and Perspectives on Active Antitrust Cases in the Agriculture and Food Sectors," American Bar Association (2015 and 2016), Panelist
- "Where Does the Buck Stop? The Latest in Cost Shifting," Georgetown Advanced E-Discovery Institute (Nov. 2016), Panelist
- "Essential Checklist for E-Discovery," D.C. Bar CLE Program (May 2015), Panelist
- "So How Exactly is Plaintiffs' Side E-Discovery Practice Different?," D.C. Bar E-Discovery Committee Meeting (Jan. 2015), Speaker
- "ESI Discovery," NCLC Consumer Class Action Symposium (2013)

# EXPERIENCE

## Antitrust/Competition

- *In re Foreign Exchange Benchmark Rates Antitrust Litig.* – Alleging a conspiracy among leading financial institutions to manipulate the foreign exchange market, in which Hausfeld serves as co-lead interim counsel and has obtained more than $2.1 billion in settlements to date.
- *In re Generic Pharmaceuticals Pricing Antitrust Litig.* – Representing a class of end-payers alleging generic drug manufacturers and marketers conspired to unlawful inflate the price of critical medications. Jeannine serves as a court-appointed member of the Plaintiffs' Steering Committee.
- *In re Domestic Airline Travel Antitrust Litig.* – Alleging major airlines conspired to reduce capacity to artificially inflate the price of domestic air travel, in which Hausfeld serves as interim co-lead counsel.
- *In re Blue Cross Blue Shield Antitrust Litig.* – Representing subscribers alleging dozens of Blue Cross Blue Shield entities entered into an unlawful agreement not to compete, in which Hausfeld serves as co-lead counsel and discovery chair; Jeannine works primarily on e-discovery in the matter.
- In re Processed Egg Products Antitrust Litig. – Representing egg purchasers alleging egg producers and distributors entered into an unlawful agreement to restrict egg supplies, in which Hausfeld served as co-lead counsel and obtained more than $135 million in settlements, secured class certification of a shell egg class, and obtained summary judgment that eliminated a primary affirmative defense.
- In re Fresh and Process Potatoes Antitrust Litig. – Alleging more than 24 potato growers, distributors, and processor defendants entered into an unlawful agreement to restrict potato supplies to inflate the price. Hausfeld chaired the 10-member Plaintiffs' Executive Committee and secured a ground-breaking ruling on a novel question of law undermining a key defense in the case, ultimately obtaining a global settlement of nearly $20 million and significant injunctive relief. Jeannine managed the 20-plus defendant case from discovery through resolution, including all e-discovery matters.

## Technology & Data Breach

- *In re Wawa, Inc. Data Security Litigation* – Jeannine serves as court-appointed Interim Co-lead Counsel in In re Wawa Data Security Litigation (No. 19-cv-6019, E.D. Pa.) for a proposed class of financial institutions alleging the convenience-store chain's negligence resulted in a massive data breach, compromising more than 30 million payment cards used at up to 850 store locations on the East Coast.

**Human Rights**

- *Kiobel v. Royal Dutch Petroleum* – Jeannine and Hausfeld served as counsel to amicus Nobel prize winning economist Joseph E. Stiglitz in support of plaintiffs in Kiobel v. Royal Dutch Petroleum before the Supreme Court of the United States, in which the plaintiffs alleged domestic and foreign corporations aided and abetted torture, rape, and other violations of international human rights committed by the Nigerian government against its people. At issue on appeal to the Supreme Court was, among other issues, whether corporations could be held liable for violation of internationally recognized human rights under the Alien Tort Statute. Amici argued that the economics and policy arguments against such liability were unfounded and that corporate liability would advance rather than deter investment in developing countries and promote compliance with international human rights norms.
- *Nestle v. Doe* – Jeannine and Hausfeld served as counsel to amici Oxfam USA and Columbia University economics professors Joseph Stiglitz and Geoffrey Heal in support of plaintiffs in Nestle v. Doe before the Supreme Court of the United States. Plaintiffs in that case alleged certain corporations aided and abetted forced child labor on cocoa plantations in violation of international human rights norms.  Amici expanded upon the economic arguments in the Stiglitz amicus brief in Kiobel and argued that liability would not deter proactive efforts by corporations to invest in measures designed to prevent human rights violations in their supply chains.

**Sports & Entertainment**

- *In re National Football League Players' Concussion Injury Litigation* – Jeannine served as court-appointed Plaintiffs' Liaison Counsel in and represented hundreds of former NFL players suffering from long-term or permanent neurological or cognitive impairments as a result of head injuries during NFL play and who alleged the League hid from them the serious risks of head trauma.
- *McCants v. National Collegiate Athletic Association, et al.* – Jeannine represented a putative class of former college athletes in who allege the University of North Carolina offered them fraudulent classes and, for decades, concealed that fraud.

# SWATHI BOJEDLA

**Partner**
Washington, DC

she/her/hers

✉ sbojedla@hausfeld.com

📞 +1 202 540 7150

in LinkedIn



## ⟋ OVERVIEW

As a partner in Hausfeld's Washington, D.C. office, Swathi has built a diverse and impactful career. She has worked on some of the highest-profile and most comprehensive class action antitrust cases in recent years, recovering over $3 billion in settlement awards for the firm's clients. She represented a class of health insurance subscribers in In re Blue Cross Blue Shield Antitrust Litigation, securing $2.67 billion in settlement and broad injunctive relief to increase opportunities for competition in the healthcare industry. She has also played a key role in significant antitrust matters within the sports industry, particularly concerning players' rights around names, images, and likenesses (NIL). Swathi was instrumental in the landmark O'Bannon v. NCAA trial, which secured class injunctive relief allowing college athletes to receive compensation for their NIL rights, marking a pivotal victory for college athletes that continues to have significant implications.

From initial case investigations through trial, Swathi has represented the firm's clients in all aspects of litigation. Swathi currently serves as Court-appointed Co-Lead Counsel in In re RealPage, Inc., Rental Software Antitrust Litigation, where she represents a class of renters who are alleged to have been harmed by algorithmic price-fixing in the multifamily rental market. Swathi has represented hundreds of patients in wide-ranging healthcare mass torts, and she has also fought for victims of data breaches and privacy violations, challenging retailers, health insurance providers, restaurant chains, and financial institutions for their inadequate security measures.

At Hausfeld, Swathi leads the firm's Community Services Committee and serves on the US Hiring Committee. Prior to joining Hausfeld, Swathi worked on several presidential campaigns and in the U.S. Senate, both for then-Senator Hillary Rodham Clinton and as a law clerk to the U.S. Senate Judiciary Committee.

**Clients**

Swathi has litigated a variety of other cases across the legal spectrum, securing favorable results for her clients. In the antitrust realm, she has represented both individual and class clients in the health insurance, transportation, and financial services sectors seeking to recover damages from price-fixing and market allocation cartels. As an avid sports fan, Swathi has relished the opportunity to represent current and former athletes as they seek fair treatment for the dedication they put into the game.

Swathi has also represented small credit unions, banks, and consumers across the country who have suffered damages as a result of data breaches at companies including Target, Home Depot, Wendy's, and ParkMobile. Through her work on these cases, she has developed an expertise in data breach law and has helped to design and implement unique settlement frameworks in this developing area of law.

# EDUCATION

Georgetown University Law Center, J.D., 2011
Brown University, B.A., Human Biology & Public Policy, 2007

# BAR ADMISSIONS

District of Columbia
New York
District Court for the District of Columbia
District Court for the Southern District of New York
Tenth Circuit Court of Appeals

# AFFILIATIONS

Brown University Alumni Interviewing Program - Washington, D.C., Chair (2012-present)
Brown University Women's Leadership Council, Member (2016-present)
Changing Perceptions, Board of Directors (2016-present)
Georgetown Journal of Law and Public Policy, Managing Editor (2010-2011)
Georgetown Law's Institute for Public Representation, a civil rights clinic, where she previously worked on Title VII litigation in the D.C. District Court
Law360 Sports Editorial Advisory Board, Member (2019)
U.S. Senate Judiciary Committee, Clerk

# WHAT OTHERS SAY

**American Antitrust Institute**
- Outstanding Antitrust Litigation Achievement in Private Law Practice, an honor she received three times:
  - As part of the In re Blue Cross Blue Shield Antitrust Litigation case team in 2021
  - As part of the In re Municipal Derivatives Antitrust Litigation case team in 2016
  - As part of the O'Bannon v. NCAA case team in 2015

**Benchmark Litigation**
- 40 & Under List since 2023

**Best Lawyers**
- Best Lawyer since 2025
  - Mass Tort Litigation/Class Action - Plaintiffs

**Global Competition Review**
- Litigation of the Year - Cartel Prosecution in 2021: an honor she received as part of the In re Blue Cross Blue Shield Antitrust Litigation case team.
- Litigation of the Year - Non-Cartel Prosecution in 2015: an honor she received as part of the O'Bannon v. NCAA case team.

**Lawdragon**
- 500 Leading Plaintiff Financial Lawyers since 2019
- 500 Leading Litigators in America in 2022
- 500 Leading Plaintiff Consumer Lawyers in 2024
- Litigation Counsel of America
- Selected Fellow since 2019

Litigation Counsel of America

Selected Fellow since 2019

**Super Lawyers**

Rising Star, Antitrust Litigation in Washington, DC since 2016

**Other**

- Rising Star Under 40, Sports Law by Law360 in 2016
- Minority Business Leader by The Washington Business Journal in 2016 - an honor held for the top 25 Greater Washington leaders who embody entrepreneurial drive, creativity and success in business.
- Litigation of the Year - Non-Cartel Prosecution: an honor she received by the Global Competition Review as part of the O'Bannon v. NCAA case team in 2015

# EXPERIENCE

## Antitrust/Competition

- *In re Blue Cross Blue Shield Antitrust Litigation* – In one of the largest and most complex antitrust class action cases ever litigated, Swathi represented tens of millions of subscriber plaintiffs alleging higher premiums and loss of competition in the market for health insurance due to a conspiracy among 36 insurer defendants to allocate geographic territories. In November 2020, the Court granted preliminary approval to the proposed settlement agreement resolving the claims of Blue Cross Blue Shield subscribers for $2.67 billion. The settlement was unanimously affirmed by the Eleventh Circuit, and in June 2024, the U.S. Supreme Court declined any further review, paving the way for the distribution of billions of dollars to subscribers nationwide, along with systemic changes to BCBS practices that will create opportunities for more competition.
- *In re Municipal Derivatives Litigation* – Swathi worked as part of a team that secured nearly $250 million in settlements for a class of municipalities affected by alleged bid-rigging in the market for municipal bonds.
- *In re Air Cargo Shipping Services Antitrust Litigation* – Swathi joined the trial team to prepare for trial against the final four defendants in a worldwide conspiracy to fix fuel surcharge on air cargo; her work assisted in driving settlements with the final defendants totaling nearly $200 million. In 2016, she was recognized for her work in this, and the above-mentioned Municipal Derivatives case, at the American Antitrust Institute Enforcement Awards, where she won two of the three awards for "Outstanding Antitrust Litigation Achievement in Private Law Practice."

## Environmental & Product Liability

- *Bowman et al. v. St. Joseph's Medical Center et al.* – Swathi participated in a mass tort action arising from the placement of unnecessary stents in patients at a Baltimore-area hospital, which culminated in a month-long jury trial in Maryland state court and a global resolution compensating over 240 affected patients.

## Sports & Entertainment

- *Dryer et al. v. National Football League* – Swathi represented a class of retired NFL players whose names, images, and likenesses were being used in NFL Films features. She was involved in negotiating a $50 million settlement agreement, which created a Greater Good Fund to provide health and welfare programs to former NFL players and also established a licensing agency, in partnership with IMG, to help former players market their names, images, and likenesses. After this novel settlement was reached, Swathi continued to advise the Court-appointed Board of Directors on implementation of the settlement agreement.
- *O'Bannon v. NCAA* – Swathi represented a class action on behalf of current and former Division I men's basketball and FBS football players against the NCAA and its member institutions based on rules foreclosing athletes from receiving compensation for the use of their names, images, and likenesses. In 2014, plaintiffs completed a three-week bench trial in which Swathi was part of a trial team that successfully obtained class injunctive relief allowing college athletes to receive compensation for their NIL rights, a landmark victory for college athletes.

**Technology & Data Breach**

- *In re Premera Blue Cross Customer Data Breach Litigation* – Represented Premera health insurance customers whose confidential medical information was accessed during an extended breach. A $74 million settlement including a $32 million settlement fund was granted final approval in March 2020.
- *In re Arby's Restaurant Group, Inc. Data Security Litigation* – Representing financial institutions who were forced to cancel compromised cards, issue refunds due to fraudulent transactions, stop and block unauthorized transactions on their customers' accounts, and increase fraud monitoring because of the breach. A $5 million+ settlement was preliminarily approved in March 2020.
- *First Choice Federal Credit Union v. The Wendy's Company et al* – Represented financial institutions who have had to pay to replace credit cards and cover fraud losses sustained by customers as a result of a data breach at Wendy's franchisees. A $50 million settlement was granted final approval in November 2019.
- *In re The Home Depot, Inc. Customer Data Breach Litigation* – Represented financial institutions who had to pay to replace credit cards and cover fraud losses sustained by customers as a result of a data breach at Home Depot affecting 56 million people. A $25 million settlement was granted final approval in September 2017.
- *In re Target Corporation Customer Data Security Breach Litigation* – Represented financial institutions who had to pay to replace credit cards and cover fraud losses sustained by customers as a result of a data breach at Target which exposed 40 million debit and credit card accounts. This case resulted in a ground-breaking $60 million+ total settlement.

# TIMOTHY S. KEARNS

**Partner**
Washington, DC

`he/him/his`

✉ tkearns@hausfeld.com
☎ +1 202 540 7227
in LinkedIn



## OVERVIEW

Timothy has substantial experience representing both plaintiffs and defendants, through trial if necessary, providing him with greater insight into the benefits and risks that matter most to clients. His experience encompasses a varied practice of antitrust litigation, False Claims Act/whistleblower litigation, securities litigation, commodities litigation, and other complex commercial litigation. His efforts have helped his clients recover more than $2.5 billion in settlements.
Timothy regularly handles matters involving complex financial instruments and heads the firm's investigation of matters under securities and commodities laws.

Working towards a diverse, equitable, and inclusive world is paramount to Timothy who is an active member of our Racial Justice working group.

**Clients**

Timothy's clients include individual investors, investment funds, and multinational corporations. His dedication to helping clients realistically assess their options before and throughout litigation and his tenacity in securing a result, through appeal if necessary, help to ensure exceptional outcomes for his clients.

## EDUCATION

Cornell Law School, J.D., 2006
Iowa State University, B.A., 2003

## BAR ADMISSIONS

Delaware
District of Columbia
United States District Court for the District of Delaware
United States District Court for the Eastern District of Wisconsin

## AFFILIATIONS

American Bar Association, Member
American Constitution Society, Member
Society for American Baseball Research, Member

## WHAT OTHERS SAY

**Global Competition Review**
- Cartel Prosecution of the Year: an honor he received as part of the In re Foreign Exchange Benchmark Rates Antitrust Litigation case team in 2016.

**Legal 500**
- Named a "heavyweight practitioner" in Antitrust in 2018

**Super Lawyers**
- Rising Star, Antitrust Litigation in Washington, DC in 2016
- Rising Star, Securities Litigation in Washington, DC in 2014 and 2015

## EXPERIENCE

### Antitrust/Competition

- *In re Foreign Exchange Benchmark Rates Antitrust Litigation*– Timothy represented market participants in the foreign exchange market against international banks alleged to have fixed the price of foreign exchange instruments, securing settlements with 15 major financial institutions amounting to more than $2.3 billion.
- *In re Atlantic Farm-Raised Salmon Antitrust Litigation* - Timothy represented direct purchasers of Atlantic farm-raised salmon and secured a $85 million global settlement with all defendant fish producers.
- *In re HIV Antitrust Litigation* – Timothy represents direct purchasers of HIV drugs from a case alleging an anticompetitive "pay for delay" between drug manufacturers.
- *Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd.*– Timothy represented two corporate defendants against allegations of antitrust violations within the global freight forwarding industry.

### Commercial & Financial Disputes

- *MTB Investment Partners, LP v. Siemens Hearing Instruments, Inc.* – Timothy secured a securities fraud settlement that returned more than 115% of recognized losses after attorneys' fees and expenses to former shareholders in HearUSA, Inc.
- Timothy secured two favorable settlements for an Asian bank in litigation arising out of the bank's investment in collateralized debt obligations.
- Timothy represents whistleblowers and qui tam plaintiffs in confidential actions asserting wrongdoing by financial institutions and other major global corporations.

### Pro Bono

- *Doe v. Indian River School District* - prior to joining Hausfeld – Timothy represented Jewish families alleging discrimination in Delaware public schools, ultimately securing appellate unanimous reversal of the district court's decision upholding school board prayer practices and denial of certiorari by the United States Supreme Court.

# Steven M. Nathan

**Of Counsel**
New York

`he / him/ his`

✉ snathan@hausfeld.com

📞 +1 646 357 1194

in LinkedIn



## OVERVIEW

Steve's work focuses on complex antitrust and cybersecurity litigation. Steve handles key roles in each of his matters, from taking on case initiation and discovery, to ensuring that case teams are prepared to handle all issues that may arise.

Steve has worked on dozens of cybersecurity and privacy cases, including large MDLs, and he has successfully collaborated with hundreds of lawyers working with and under him as he oversaw discovery and similar efforts. Steve currently serves in leadership roles for a number of cases, including as co-lead counsel in the consolidated IBM/Johnson & Johnson Data Breach case; on the Plaintiff's Steering Committee in the In re: BPS Direct, LLC, and Cabela's, LLC, Wiretapping litigation; as Co-Chair of Plaintiff's Discovery in the In re: Samsung Customer Data Security Breach Litigation case; on the Plaintiffs' Interim Executive Committee in the Curd v. Spirit Airlines, Inc. case; and on the Plaintiff's Steering Committee in the In re Independent Living Systems Data Breach Litigation case.
In addition, cases in which Steve has played a significant role include: In re: T-Mobile Customer Data Security Breach Litig. ($500 million settlement, conducted initial lead plaintiff vetting and secured named class representatives' approval of proposed settlement, assisted with class counsel fee and appellate briefing); In re: Marriott International Inc., Customer Data Security Breach Litig., (class certified; assisted in negotiating ESI protocol and defendant custodians to be searched, briefed and argued confidentiality designation motions, assisted with appellate briefing); In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litig. (partial settlement pending); In re: Equifax, Inc. Customer Data Security Breach Litig. ($500 million settlement to consumers with $1 billion in upgraded data security; conducted initial lead plaintiff vetting and secured named class representatives' approval of proposed settlement); In re: Arby's Rest. Group, Inc. Data Security Litig. (~$5 million settlement); In re: Target Corporation Customer Data Security Breach Litig. (nationwide class certification granted with $60 million settlement approved; oversaw offensive discovery and document review).

Steve has also worked across the bar with other cybersecurity lawyers representing defendants to advance the law on these issues and is currently a member of Sedona's Working Group 11 on Data Security and Privacy Liability. Steve also represents clients in civil investigations initiated by State Attorneys General. Steve's early legal career was spent primarily practicing business, securities, and administrative litigation as an Associate in Am Law 100 firms in New York and Los Angeles. Through this work, he honed his legal skills and began to focus on sophisticated antitrust and securities fraud cases. In the area of administrative law, Steve assisted in obtaining a precedent-setting interpretation of liability provisions of the Federal Aviation Regulations to the benefit of a major firm client.
Steve serves as a mentor to newer attorneys, helping to ensure that our firm and our co-counsel continue to achieve outstanding results for our clients.

**Clients**

Steve represents competitors and customers in antitrust and competition matters. In cybersecurity and data breach cases, Steve represents both payment card issuer and consumer classes in the most substantial cybersecurity and data breach cases resolved and currently being litigated.

## EDUCATION

Queens College, MS.Ed., May, 2006
Hofstra University School of Law, J.D., with distinction, 1987
Queens College, B.A., 1984

## BAR ADMISSIONS

California
New York
United States Court of Appeals, Third Circuit
United States Court of Appeals, Fourth Circuit
United States Court of Appeals, Seventh Circuit
United States Court of Appeals, Eighth Circuit
United States Court of Appeals, Ninth Circuit
Judicial Panel on Multidistrict Litigation
Numerous District Courts

## AFFILIATIONS

Hofstra Law Review, Member (1985-1986)
Hofstra Law Review, Research Editor (1986-87)
Hofstra Law Fellows Program, Chair (1986-87)
The Sedona Conference, Working Group 11 (Data Security and Privacy Liability)

## WHAT OTHERS SAY

**National Law Journal**
- Elite Trial Lawyers, Hausfeld wins Privacy/Data Breach category in 2024

## EXPERIENCE

### Technology & Data Breach

- In re Target Corporation Customer Data Security Breach Litigation – Hausfeld filed and favorably settled cases on behalf of payment card issuing financial institution plaintiffs against Target Corporation, stemming from, what was then, one of the largest data breaches in U.S. history.
- In re Equifax, Inc., Customer Data Security Breach Litigation – Hausfeld was appointed to serve on the Plaintiffs' Steering Committee representing consumer plaintiffs where over 145 million Americans were impacted by one of the largest data breaches in history.
- In re Marriott International Inc., Customer Data Security Breach Litigation - Representing a class of plaintiffs as against hotel chain Marriott and its data security vendor Accenture. A federal judge in Maryland granted class certification in May 2022, issuing a 70-plus page opinion certifying the case for trial. This is by far the largest of any consumer data breach class action ever certified. An appeal is currently pending.
- In re: T-Mobile Customer Data Security Breach Litigation MDL - Representing a class of plaintiffs, as co-lead counsel, whose data was exposed during a 2021 breach, securing a $350 million settlement and an agreement to increase data security spending by $150 million over the next two years, one of the largest per capita settlements ever reached in a large data breach.

**Antitrust/Competition**

- In re Foreign Exchange Benchmark Rates Antitrust Litigation – Hausfeld represents parties that engaged in over-the-counter foreign exchange ("FX") transactions with the world's largest banks and their affiliates and investors who entered into FX transactions through domestic exchanges. This class action lawsuit alleges that these banks colluded to fix and manipulate the prices of FX transactions.
- In re Libor-Based Financial Instruments Antitrust Litigation – Hausfeld is Co-Lead Counsel in a class action lawsuit alleging a global conspiracy by some of the world's largest banks to manipulate the London InterBank Offered Rate (referred to as LIBOR).
- In re Air Cargo Antitrust Litigation – It was alleged that major international cargo airlines from around the world conspired to inflate the price of shipping goods by air. This lawsuit has resulted in more than $2.3 billion in settlements on behalf of U.S. investors.

# NICK MURPHY

**Of Counsel**
Washington, DC



✉ nmurphy@hausfeld.com

☎ +1 202 849 4143

## OVERVIEW

Nick is Of-Counsel in the Washington, D.C. office of Hausfeld LLP. Nick is an experienced litigator with over fifteen years of civil and criminal litigation experience in the government and private sector who has successfully first and second chaired numerous trials to guilty verdict.He has extensive experience leading every phase of litigation, from initial case investigation and pleading, to discovery management, dispositive motion practice, settlement negotiation, fact and expert witness development, trial, and appeal. Much of this experience was borne from Nick's six years in the Eastern District of Virginia's (Alexandria Division) "rocket docket," where he prosecuted complex criminal matters under accelerated time frames. His experience also includes litigating complex antitrust, technology, and cybersecurity litigation and data breach incidents. Nick is well-versed in all sides of complex litigation, having represented the United States and both defendants and plaintiffs in a wide-variety of high-stakes criminal, commercial, technology, and data privacy matters at all stages of litigation.  Nick has been recognized with multiple awards and an Outstanding Service Commendation by the Attorney General for his successful advocacy on behalf of some of our most vulnerable populations during his time as a prosecutor for the United States Department of Justice. As a member of Hausfeld's pioneering cybersecurity practice, Nick is committed to advancing the law on behalf of vulnerable victims concerning issues of technology, privacy, and data security.

Prior to representing clients in private practice, Nick served for 6 years as an Assistant United States Attorney in the United States Attorney's Office for the Eastern District of Virginia's Alexandria Division, where he investigated and prosecuted violent crimes and civil rights crimes, including investigations involving the use of wire-taps and translating, decoding and interpreting surreptitious communications related to large-scale trafficking of firearms and narcotics. Nick also served as the Alexandria Division's Project Safe Neighborhood coordinator, which is a federal program devoted to reducing violent crime.

Prior to joining the USAO, Nick served for 7 years as an Honor's Program Trial Attorney in the Department of Justice's Civil Rights Division. He worked on criminal matters in the Criminal Section, focused on hate crimes and police misconduct, and worked on civil matters in the Educational Opportunities Section, focused on desegregation, Title IX equality, bullying and harassment, and the school to prison pipeline. Representative matters from his time at DOJ include the investigation of Dylann Roof for the murders of African-Americans at a church in Charleston, the investigation, prosecution, and conviction at trial of a sheriff's deputy for the use of excessive force on a detainee, and the investigation and entry of a consent decree with City of Philadelphia Public Schools to resolve bullying of Asian-American students at a local high school.

Nick received his Bachelor of Arts degree in Government from Dartmouth College and his law degree from the University of Pennsylvania Law School, where he served as an editor on the Law Review. After law school, Nick clerked for the Honorable Petrese B. Tucker of the United States District Court for the Eastern District of Pennsylvania.

Working towards a diverse, equitable, and inclusive world is paramount to Nick who is an active member of our Racial Justice working group and Diversity, Equity, and Inclusion committee. He is also a frequent speaker on issues relating to civil rights and government investigations.

**Clients**
Nick represents clients seeking recoveries for antitrust and consumer protection violations in complex civil litigations.

## EDUCATION

University of Pennsylvania Carey Law School, J.D., 2008
Wharton School of Business, Certificate in Business Economics and Public Policy, 2008
Dartmouth, B.A., Government, 2002

## BAR ADMISSIONS

District of Columbia
New York
United States District Courts for the Eastern District of New York
United States District Courts for the District of Columbia
United States Court of Appeals for the Fourth Circuit

## AFFILIATIONS

American Bar Association - Antitrust Section, Member (since 2024)

## WHAT OTHERS SAY

FBI Service Award, 2019, USAO EDVA
Attorney General Special Achievement Award, 2010 and 2014, DOJ Civil Rights Division
Attorney General Outstanding Service Commendation, 2011, DOJ Civil Rights Division

## EXPERIENCE

**Antitrust/Competition**
- *In re Apple Inc., Smartphone Antitrust Litigation* – Hausfeld represents a class of direct purchasers seeking recovery for alleged monopolization of smart phones.

# ASHLEY M. CROOKS

**Counsel**
New York

she/her/hers

✉ acrooks@hausfeld.com

📞 +1 646 508 9126

in LinkedIn



## OVERVIEW

Ashley is Counsel in Hausfeld's New York office with a practice focus in cybersecurity and data privacy litigation.

As a member of Hausfeld's pioneering cybersecurity practice, Ashley is committed to advancing the law on issues surrounding technology, privacy, and data security. She is well-versed in both sides of complex litigation, with experience representing both individual and corporate clients in a variety of high-stakes commercial, mass tort, and data privacy matters in state and federal courts across the country. Ashley began her legal career at a large international law firm, where she served on national counsel teams in consolidated mass tort proceedings and multidistrict product liability litigation. Prior to joining Hausfeld, Ashley also worked for a litigation boutique in Brooklyn, NY, specializing in commercial and financial disputes.

Ashley has extensive experience in nearly every phase of complex litigation, from initial investigations and pleading, to discovery management, dispositive motion practice, settlement negotiation, fact and expert witness development, trial, and appeal. She also has significant experience in early assessment and resolution of cases, including group settlement administration.

Ashley earned her J.D. from Georgetown Law in 2015, where she served as a Legal Research and Writing Fellow and Articles Editor for the American Criminal Law Review.

## EDUCATION

Georgetown University Law Center, J.D., *cum laude*, 2015
The University of Texas at Austin, B.A., *high honors*, 2010

## BAR ADMISSIONS

New Jersey
New York
Texas

## AFFILIATIONS

American Bar Association, Member (2023 - present)
National Asian Pacific American Bar Association, Member (2023)
New York State Bar Association (2020)
State Bar of Texas (2015)

# ◢ WHAT OTHERS SAY

**National Law Journal**
- Elite Trial Lawyers, Hausfeld wins Privacy/Data Breach category in 2024

# RENNER K. WALKER

**Of Counsel**
New York

 rwalker@hausfeld.com
 +1 646 362 3075
 LinkedIn



## OVERVIEW

Renner is Of Counsel in Hausfeld's New York office. He is a dynamic litigator, whose practice focuses on pursuing justice for plaintiffs in a wide range of complex cases involving natural resources, environmental justice, civil and human rights, toxic torts, antitrust, consumer protection, and cybersecurity. He also maintains a strong public entity practice, representing state governments and one of the largest water authorities in the United States in environmental litigation.

Recently, Renner served as a key part of Hausfeld's team in In re: T-Mobile Customer Data Security Breach Litigation. The team secured a $500 million settlement for a class of more than 76 million victims of T-Mobile's 2021 data breach.

Before joining Hausfeld, Renner worked at a prominent national plaintiffs' civil litigation firm, where he represented thousands of children who were lead poisoned in the Flint Water Crisis. He was the firm's primary appellate and complex motion attorney, briefing and arguing a wide array of dispositive, jurisdictional, evidentiary, and Daubert motions in both trial and appellate courts across the country.

Previously, he served as an Assistant Attorney General in the Iowa Attorney General's Office, where he practiced environmental, administrative, and constitutional law. He advised administrative agencies and litigated cases involving novel issues of constitutional, statutory, and regulatory law, all while maintaining a busy administrative prosecution docket. He began his legal career by serving as the judicial law clerk to the Honorable Mark S. Cady, Chief Justice of the Iowa Supreme Court.

Renner earned his J.D. with highest honors in 2012 from Drake University Law School, where he was elected to the Order of the Coif and the Order of the Barristers, served on the Editorial Board of the Drake Law Review, and captained Drake's environmental law moot court team. In 2017, he held a graduate research fellowship in environmental law at the Elisabeth Haub School of Law at Pace University, where he also earned an LL.M. in Environmental Law, summa cum laude.

In 2023, Renner was recognized in the Bold Award category, an award given to those persons who have demonstrated a fearless approach to litigation or problem solving, one of five award categories that make up the Hausfeld Values Awards, an annual recognition program that highlights the achievements of Hausfeld team members based on their significant contributions made and results achieved over the prior calendar year. His tireless work on behalf of plaintiffs was recognized in 2024, when he was named a Rising Star of the Plaintiff's Bar by the National Law Journal.

**Clients**

Renner has represented clients in federal, state, and administrative courts across the country. He represents individuals, governments, and businesses seeking justice. Some of his current and former clients include one of the largest water authorities in the country against chemical companies who manufactured 1,4-dioxane, farmers who were sold defective crop treatments, whistleblowers who warn of dangerous products and fraudulent practices, children who were poisoned by lead in drinking water, workers harmed by defective products, and state administrative agencies responsible for protecting the environment and public health.

## EDUCATION

Pace University Elisabeth Haub School of Law, LL.M. Environmental Law, summa cum laude, 2017
Drake University Law School, J.D., highest honors, Order of the Coif, Order of the Barristers, 2012
University of Iowa, B.A., Philosophy, English and History, 2007

## BAR ADMISSIONS

New York
California
New Jersey
Iowa (inactive)
U.S. District Court, Southern District of New York
U.S. District Court, Eastern District of New York
U.S. District Court, Northern District of New York
U.S. District Court, Eastern District of Michigan
U.S. District Court for the District of New Jersey
U.S. Court of Appeals, Sixth Circuit

## AFFILIATIONS

American Bar Association - Section on Environment, Energy, and Resources, Member

## WHAT OTHERS SAY

**National Law Journal**
- Elite Trail Lawyers - Rising Stars of the Plaintiffs Bar in 2024

**Super Lawyers**
- Rising Star 2020-2023
  - Class Actions and Mass Torts
  - Environmental Litigation
  - Civil Rights
  - Consumer Law

Justice David and Madonna Harris Award (2012) which was awarded to "the Drake Law School graduating senior who, in the opinion of the faculty, demonstrates the greatest promise as an advocate, a public servant and a practitioner."

Iowa State Bar Association Graduating Senior Award (2012) which was awarded to "the member of the graduating law class who exhibited in attitude, ability, and service those qualities which make up the most probable successful future leader of the Bar."

# EXPERIENCE

## Environmental and Product Liability

- *SCWA v. Dow, et al.* – Environmental case on behalf of the largest public water supplier in the country against the manufacturers and distributors of products containing toxic chemicals for contamination of the local public drinking water.
- *Boothe Farms, Inc. et al. v. The Dow Chemical Co. et al.* – Renner represented a putative class of farmers who purchased and applied a defective herbicide on their rice fields, suffering substantial yield losses.
- *Attorney General of the State of New Jersey, et al. v. Dow Chemical Co., et al.* – Environmental litigation on behalf of the State of New Jersey against the manufacturers of the toxic chemical 1,4-dioxane for contamination of the State's natural resources and drinking water supply, as well as deceptive and fraudulent business practices regarding the sale of 1,4-dioxane products to industrial facilities and New Jersey consumers.

## Technology & Data Breach

- *In re: T-Mobile Customer Data Security Breach Litigation MDL* – Representing a class of plaintiffs, whose data was exposed during a 2021 breach, securing a $350 million settlement and an agreement to increase data security spending by $150 million over the next two years, one of the largest per capita settlements ever reached in a large data breach.

## Commercial & Financial Disputes

- *Commonwealth of Virginia, ex. rel. Joshua Harman, v. Trinity Industries, Inc.* – Renner represents a whistleblower who has brought claims on behalf of the Commonwealth of Virginia alleging fraudulent sales of guardrail end terminals in violation of Virginia's Fraud Against Taxpayer's Act.

## Antitrust/Competition

- *In re Automatic Card Shufflers Litigation* – Represents a class of casino operators that purchased automated deck shufflers at an artificially high price because of defendants' monopolization of the market through abuse of the patent system and judicial process to exclude and drive out competitors.

# IAN J. ENGDAHL

**Associate**
Washington, DC

he / him/ his

✉ iengdahl@hausfeld.com

☎ +1 202 849 4772



## OVERVIEW

Ian litigates complex antitrust, consumer-protection, and data-privacy matters on behalf of consumers and other plaintiffs. Ian's practice focuses on high-stakes and high-impact class-action litigation, often at the crossroads of law and technology. Ian's efforts have helped his clients recover more than $3 billion in settlements.

As a core member of the firm's Technology and Data Breach practice group, Ian leverages his sophisticated understanding of technology and data-privacy issues to achieve pathbreaking results for consumers in data-privacy matters. Ian has represented consumers in some of the largest data-breach class actions to date, including *In re Marriott International Inc. Customer Data Security Breach Litigation*, *In re T-Mobile Data Security Breach Litigation*, and *In re Equifax, Inc. Customer Data Security Breach Litigation*. Ian also represents consumers in several biometric privacy cases.

In his antitrust practice, Ian has taken on the world's largest banks, Big Tech, and the pharmaceutical industry. He was part of the team that secured settlements of more than $2.3 billion from global banks for price-fixing in the foreign exchange market. He currently represents an app developer startup in litigation against Facebook for monopolizing the social networking market and end-payors in litigation against generic drug manufacturers for price-fixing of generic drugs. Ian has also achieved exceptional results for individual clients in opt-out litigation.

In his consumer-protection work, Ian has helped consumers recover nearly $100 million in settlements from banks and retailers that impose improper junk fees.

Ian maintains an active amicus practice and advocates for robust data-privacy and fraud protections for consumers. He authored an amicus brief for the Electronic Frontier Foundation, arguing for broad recognition of data-privacy harms in a Supreme Court case testing the boundaries of Article III standing. He is a member of the Sedona Conference Working Group 11, which advances the law on issues surrounding technology, privacy, artificial intelligence, and data security.

Ian serves on the firm's Technology Committee, Social Inclusion Committee, and Summer Associate Committee.

## EDUCATION

Georgetown University Law Center, J.D., cum laude, 2018
Rhodes College, B.A. in Political Economy, cum laude, 2012

## BAR ADMISSIONS

District of Columbia
U.S. District Court for the District of Columbia
U.S. District Court for the District of Maryland
United States Court of Appeals, Fourth Circuit

## AFFILIATIONS

American Association for Justice, Member (2024 - Present)
American Bar Association, Member
Georgetown Journal on Poverty Law & Policy, Managing Editor (2017-2018)
Public Justice, Member (2024 - Present)
The Sedona Conference, Working Group 11, Member

## WHAT OTHERS SAY

**Algernon Sydney Sullivan Award**
- Recipient of the Algernon Sydney Sullivan Award for Character and Commitment to Public Service in 2013
- One nominator wrote, "When one thinks of who Algernon Sydney Sullivan may have been as a young man, Ian Engdahl comes to mind. Not only do these two men share a love of the art of oratory and a passion for law and justice, but the philosophy of both revolves around making better the lives of others even before themselves."

## EXPERIENCE

### Antitrust/Competition

- *In re Foreign Exchange Benchmarks Rates Antitrust Litigation* – Hausfeld represented market participants in the foreign exchange market against international banks alleged to have fixed the price of foreign exchange instruments, securing settlements with 15 major financial institutions amounting to more than $2.3 billion.
- *In re Diisocyanates Antitrust Litigation* – Represents a class of direct purchasers of the industrial chemicals methylene diphenyl diisocyanate (MDI) and toluene diisocyanate (TDI) in claims against major industrial suppliers for conspiring to artificially inflate prices in violation of federal antitrust law.
- *Phhhoto, Inc. v. Meta Platforms, Inc. (F/K/A Facebook, Inc.)* – Hausfeld represents PHHHOTO Inc., an upstart photo app that alleges Facebook engaged in an anticompetitive course of conduct to force PHHHOTO out of business.
- *In re Generic Pharmaceuticals Pricing Antitrust Litig.* – Hausfeld represents a class of end-payers alleging generic drug manufacturers and marketers conspired to unlawfully inflate the price of critical medications.

### Commercial & Financial Disputes

- *Morris v. Bank of America, N.A.* - Hausfeld represented a class of consumers harmed by Bank of America's improper fees on overdraft and insufficient-funds transactions resulting in a $75 million settlement.
- *McNeil v. Capital One* - A class action on behalf of consumers harmed by Capital One's improper overdraft and insufficient-funds fees, resulting in a $16 million settlement.

**Technology & Data Breach**

- *In re: Marriott International Inc., Customer Data Security Breach Litig., MDL No. 19-md-2879 (D. Md.)* - Representing a class of plaintiffs against hotel chain Marriott and its data security vendor Accenture. This is by far the largest of any consumer data breach class action ever certified. An appeal is currently pending.
- *In re T-Mobile Data Security Breach Litig., No. 4:21-md-03019-BCW (W.D. Mo.)* - Representing a class of plaintiffs whose data was exposed during a 2021 breach, securing a $350 million settlement and an agreement to increase data security spending by $150 million over the next two years, one of the largest per capita settlements ever reached in a large data breach.
- *In re Equifax, Inc. Customer Data Sec. Breach Litig., No. 1:17-md-2800-TWT (N.D. Ga.)* - Hausfeld represented consumer plaintiffs in one of the largest data breaches in history, resulting in a $500 million settlement with $1 billion in upgraded data security.

# MANDY BOLTAX

**Associate**

Washington, DC

she/her/hers

✉ mboltax@hausfeld.com

📞 +1 202 748 8164



## OVERVIEW

Mandy's practice focuses on holding powerful institutions to account in complex civil litigation matters involving antitrust, competition, privacy, and civil and human rights disputes. Mandy earned her J.D. from Duke University School of Law, where she was an academic writer and legal historical researcher, with a focus on the civil rights era, the pernicious conservative origins of the Chicago School Economics and its impact on the American antitrust doctrine, and race, poverty, and law. Additionally, Mandy externed as a judicial law clerk at the U.S. District Court for the District of Columbia with the Honorable Royce C. Lamberth.

Before law school, Mandy worked for several years as a full-stack software engineer, programming mobile and web applications. She worked with several small tech start-ups, tackling diverse issues, such as food justice and sustainability, educational access, and animal welfare.

In 2023, Mandy was recognized in the Unconventional Award category, an award given to those persons who stand out from the pack by taking a different approach to litigation or problem-solving, one of five award categories that make up the Hausfeld Values Awards, an annual recognition program that highlights the achievements of Hausfeld team members based on their significant contributions made and results achieved over the prior calendar year.

Working towards a diverse, equitable, and inclusive world is paramount to Mandy who is an active member of our LGBTQ+ Alliance working group.

## EDUCATION

Duke University School of Law, J.D., 2022
Binghamton University, State University of New York, B.S., Computer Science, B.A. Creative Writing, 2015

## BAR ADMISSIONS

District of Columbia
Oregon

## AFFILIATIONS

American Bar Association - Antitrust Section, Member (2022)

Duke Center on Law and Technology, Access to Justice Technology Fellow (2020)

Duke Law Anti-Racism Project, Student Leader and Co-Founder (2020-2021)

National Lawyers Guild, Legal Observer (2020-2022)

The Beat Within at Rivarde Juvenile Detention Center, Workshop Leader and Community Outreach Coordinator (2018-2019)

## WHAT OTHERS SAY

**National Law Journal**
- Elite Trial Lawyers, Hausfeld wins Privacy/Data Breach category in 2024

## EXPERIENCE

### Antitrust/Competition

- *In re LIBOR-Based Financial Instruments Antitrust Litigation* – In which a certified class of purchasers of over-the-counter (OTC) financial instruments with interest payments tied to the London Interbank Offering Rate (LIBOR) are challenging the collusive manipulation of U.S. Dollar LIBOR by the world's largest financial institutions. The collusion is claimed to have suppressed the U.S. Dollar LIBOR rate, which allowed the defendant banks to benefit financially to the detriment of their counterparties in OTC financial instruments such as swaps and bonds. The case has resulted in $590 million in settlements with four banks (Barclays, Citibank, HSBC, and Deutsche Bank), and continues against the remaining thirteen defendant banks.
- *In Re: RealPage, Inc., Rental Software Antitrust Litigation* – Hausfeld serves as co-lead counsel in the federal antitrust class action against RealPage, Inc. and several of their property management clients, alleging that the Defendants, some of the largest owners and managers of rental real estate in the United States, conspired to use RealPage's so-called "revenue management" service to set rental prices and restrict the supply of available rental units in major metropolitan areas across the United States.

# EMMA F. BLAKE

**Associate**

San Francisco

she/her/hers

✉ eblake@hausfeld.com

📞 +1 415 800 0533



## OVERVIEW

Emma is an Associate in Hausfeld's San Fransisco office working on antitrust, environmental, and consumer protection matters.

While in law school, Emma was a Summer Associate at Hausfeld where she assisted on climate change and antitrust matters. She also externed for the U.S. Department of the Interior, Pacific Northwest Regional Solicitor's Office, where she assisted attorney-advisors in ongoing litigation and other matters, and for California Indian Legal Services, where she helped a Tribe update its constitution and petition for federal recognition. Emma also researched legal questions related to the legislative history of the General Allotment Act, protections for Tribal cultural resources under the California Environmental Quality Act, and procedural requirements for individual Indians bringing suit against the federal government, and published a student note on federal-Tribal co-management of national monuments and other public lands. Prior to joining Hausfeld in November 2023, Emma spent a year clerking for Judge Jason Gist in Kenai Superior Court in Alaska.

## EDUCATION

University of California, Berkley, School of Law, J.D., 2022
Brown University, B.A. Health Policy & Human Biology, 2015

## BAR ADMISSIONS

California

## AFFILIATIONS

American Bar Association - Antitrust Section, Member (2023 - present)

## WHAT OTHERS SAY

Jurisprudence Award, Environmental Law Writing Seminar (2021)

## EXPERIENCE

**Antitrust/Competition**

- *In re Diisocyanates Antitrust Litigation* – Represents a class of direct purchasers of the industrial chemicals methylene diphenyl diisocyanate (MDI) and toluene diisocyanate (TDI) in claims against major industrial suppliers for conspiring to artificially inflate prices in violation of federal antitrust law.

# ZELLY ROSA

**Associate**
New York

she/her/hers

✉ zrosa@hausfeld.com

☎ +1 646 518 9131



## OVERVIEW

Zelly is an Associate in Hausfeld's New York office. Zelly was previously a Summer Associate at Hausfeld, where she assisted on antitrust, data privacy, and consumer protection matters. Before joining Hausfeld, Zelly served as an Extern at the Labor Bureau of the New York State Office of the Attorney General, where she investigated employment law violations and assisted in litigation, and worked as a Legal Intern at DC 37 AFSCME Municipal Employees Legal Services, focusing on bankruptcy and consumer debt issues affecting union members. During law school, Zelly also served as a Managing Editor on the Columbia Law Review and as a Student Attorney at Columbia's Science, Health, and Information Clinic (SHIC). During her time at SHIC, she assisted Type 1 diabetes nonprofit T1International in their efforts to reduce the monopoly power of large pharmaceutical companies by advocating for public manufacturing, distribution, and pricing of prescription drugs like insulin.

Before law school, Zelly worked as a Legal Assistant in personal injury litigation. She also gained valuable experience as an Extern at the Federal Public Defender's office for the Western District of Washington, supporting attorneys in federal criminal cases. With a strong foundation in legal research and advocacy, Zelly is committed to championing worker and consumer rights, holding powerful corporations accountable, and navigating complex legal challenges.

Working towards a diverse, equitable, and inclusive world is paramount to Zelly, who is an active member of our LGBTQ+ Alliance and Disability working groups.

## EDUCATION

Columbia Law School, J.D., Harlan Fiske Stone Scholar, 2024
University of Washington, B.A., cum laude, Law, Societies, & Justice, 2020

## BAR ADMISSIONS

*Not admitted to the NY bar. Supervised by Partners of the firm.

## AFFILIATIONS

American Bar Association, Member (2024)
National Lawyers Guild, Member (2022 - present)

# EXPERIENCE

## Antitrust/Competition

- *In re Rail Freight Fuel Surcharge Antitrust Litigation* – Serving as counsel to dozens of rail-freight shippers in a high-profile antitrust case concerning alleged fuel-surcharge collusion among the nation's largest rail-freight carriers.

# EXHIBIT D



## REPRESENTATIVE AND NOTABLE CLASS ACTION CASES

**Guerrero v. Ruth's Chris Hospitality Group, et al.,** Riverside County Superior Court. Class action on behalf of over 3,000 employees of a national restaurant for unpaid minimum and overtime wages, meal and rest break premiums, and associated penalties under California law. Case settled in 2022 for $6,000,000.00 with Preliminary Approval pending.

**McLemore v. Nautilus Hyosung America, Inc.,** United Stated District Court, Central District of California, Class action seeking minimum wage and overtime compensation for on-call time, break premiums, wage statement penalties, among other penalties, for engineers employed by defendant throughout the country. Plaintiffs' counsel. Case settled in 2018 for $3,000,000, with Final Approval granted and no objections filed.

**Guerrero v. Chefs' Toys LLC,** Orange County Superior Court. Class action seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for hotel staff employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2021 for $1,100,000.00 with Preliminary Approval pending.

**Zamudio v. Letter Ride Inc.,** Plaintiffs' counsel in class action in San Diego Superior Court seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for delivery drivers employed by defendant in the State of California. Case settled in 2019 for $1,000,000.00 with Final Approval granted and no objections filed.

**Manoukian v. John Bean Technologies,** United Stated District Court, Central District of California, Class action seeking minimum wage and overtime compensation, break premiums, wage statement penalties, among other penalties, for non-exempt employees employed by defendant throughout the State of California. Plaintiffs' counsel. Case settled in 2018 for $987,500, with Final Approval granted and no objections filed.

**Medlock v. MedMen Dispensary,** Orange County Superior Court. Class action seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for hotel staff employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2020 for $975,000.00 with Final Approval granted and no objections filed.

**Mayca v. DHL,** Los Angeles County Superior Court. Class action seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for hotel staff employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2019 for $945,000.00 with Final Approval granted and no objections filed.

**Sylvester v. Starwood Inc.,** Los Angeles Superior Court. Class action seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for hotel staff employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2015 for $875,000, with Final Approval granted and no objections filed.

**Patterson v. LA Leasing Inc.,** San Diego Superior Court, Class action seeking minimum wage and overtime compensation, break premiums, wage statement penalties, among other penalties, for employees employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2018 for $425,000, with Preliminary Approval granted and Final Approval pending.

**Sears v. AlliedBarton,** San Bernardino Superior Court, Class action seeking reimbursement of necessary business expenditures, among other penalties, for employees employed by defendant in the State of California. Plaintiffs' counsel. Case settled in 2018 for $425,000, with Preliminary Approval granted and Final Approval pending.

**Prado v. Sand and Sea Inc.,** Plaintiffs' counsel in pending class action in Los Angeles Superior Court seeking overtime compensation, break premiums, wage statement penalties, among other penalties, for front of house/back of house staff employed by defendant in the State of California. Case settled in 2019 for $500,000.00 with Final Approval granted and no objections filed.



**WWW.SLFLA.COM**

**P**: 213.474.3800

**F**: 213.471.4160

**LOS ANGELES**

3435 Wilshire Blvd. Suite 1710
Los Angeles, CA 90010

**ORANGE COUNTY**

1503 South Cost Drive, Suite 210
Costa Mesa, California 92626

## OUR FIRM

Based in Los Angeles, Srourian Law Firm, P.C. handles complex civil and employment matters with an emphasis on data privacy, wage and hour, and employment matters.

Lead attorney Daniel Srourian, Esq. began the firm in 2013 exclusively litigating class actions on behalf of employees and consumers across the country, having recovered over $25 million as lead counsel on over 100 class action lawsuits to date. Mr. Srourian has also obtained two multi-million dollar verdicts in the two cases he has tried to a jury, including the 50th largest jury trial verdict in the State of California in 2016.

Mr. Srourian has been named a Rising Star by Super Lawyers Magazine for eight consecutive years. He currently serves as counsel of record in over 40 pending data breach class action suits.

# EXHIBIT E



**ANDREW J. SCIOLLA, ESQ.**

100 S. Broad Street, Suite 1910
Philadelphia, PA 19110
Office:  (215) 328-5245
Fax:      (215) 972-1545
andrew@sciollalawfirm.com
www.sciollalawfirm.com



# ANDREW J. SCIOLLA, ESQ.

## OWNER/FOUNDER SCIOLLA LAW FIRM, LLC

### EDUCATION

**BEASLEY SCHOOL OF LAW**, Temple University – Juris Doctor
Decorated Trial Team Member
Recipient of Barrister Award and Scholarship,
Recipient of Andrew Gay Award for Trial Advocacy

**UNIVERSITY OF PENNSYLVANIA** - Bachelor of Arts

### ADMISSIONS

Admitted to Practice in Pennsylvania and New Jersey
Admitted to Eastern, Middle and Western Districts of PA
Admitted to District of New Jersey
Admitted to Eastern District of Michigan
Admitted to Third Circuit Court of Appeals

For almost nineteen (19) years, Andrew J. Sciolla has represented Plaintiffs in many types of complex litigation including, but not limited to; consumer fraud, wage and hour violations, pharmaceutical litigation, environmental law and toxic torts, product liability litigation, catastrophic personal injury, medical negligence/malpractice, premises liability and wrongful death.

Andrew J. Sciolla has been lead counsel and/or on the plaintiffs' steering committees in numerous class actions, collective actions, complex litigation cases, and multi-district litigations.  He has also personally conducted all phases of class and merits discovery, motion practice, and settlement negotiations in class action cases.

Below is sampling of class and collective action cases which were successfully litigated and settled by Andrew J. Sciolla in his role as lead, co-lead counsel and/or class counsel on behalf of the respective putative classes:



**ANDREW J. SCIOLLA, ESQ.**

100 S. Broad Street, Suite 1910
Philadelphia, PA 19110
Office: (267) 328-5245
Fax:    (215) 972-1545
andrew@sciollalawfirm.com
www.sciollalawfirm.com

- *Abercrombie v. Pressley Ridge*, Case No.: 09-CV-0468 (U.S.D.C. Western District of Pennsylvania) (lead class counsel on nationwide case against employer that violated state and federal wage and hour laws when compensating employees).

- *Dobbs, et al. v. Forest Laboratories* In Re: Celexa and Lexapro Products Liability Litigation, Case No.: 4:06-MD-01736 (U.S.D.C. Eastern District of Missouri) (Class counsel on behalf of pediatric patients that were prescribed the antidepressant medication Celexa without proper warnings).

- *Sabol v. Apollo Group, Inc., et al.,* Case No.: 09-CV-343 (U.S.D.C. Eastern District of Pennsylvania) (lead class counsel on nationwide case against employer thatviolated state and federal wage and hour laws when compensating employees).

- *Altenbach v. The Lube Center, Inc.*, Case No.: 08-CV-2178 (U.S.D.C. Middle District of Pennsylvania) (lead class counsel on nationwide case against employer that violated state and federal wage and hour laws when compensating employees).

- *Regelman, et al. v. Level 3 Communications, LLC.*, Case No.: 4:09-CV-0024 (U.S.D.C. Middle District of Pennsylvania) (lead class counsel on nationwide case against employer that violated state and federal wage and hour laws when compensating employees).

- *Torres/Thomas v. Rite Aid Corporation,* Case No.: 09-CV-02922) (U.S.D.C. District of New Jersey) (co-lead class counsel on nationwide case against employer that violated state and federal wage and hour laws when compensating employees).



**ANDREW J. SCIOLLA, ESQ.**
100 S. Broad Street, Suite 1910
Philadelphia, PA 19110
Office:  (267) 328-5245
Fax:     (215) 972-1545
andrew@sciollalawfirm.com
www.sciollalawfirm.com

- *Walter, et al. v. Hughes Communications, Inc. and Hughes Network Systems, LLC.,* Case No.: 09-CV-02136 (U.S.D.C. Northern District of California) (co-lead class counsel in case alleging consumer fraud against internet provider).

- *Steinberg v. TD Bank,* Case No.: 1:10-CV-05600 (U.S.D.C. District of New Jersey) (lead class counsel on nationwide case against employer that violated state and federal wage and hour laws when compensating employees).

- *Tyminski v. Illinois Tool Works,* Case No.: 1:11-CV-2746 (U.S.D.C. District of New Jersey) (lead class counsel on nationwide case against employer that violated state and federal wage and hour laws when compensating employees).

- *In Re: Stryker Rejuvenate & ABG II Hip Implant Litigation,* Master Case No. BER-L- 935-13 (Sup. Court of New Jersey, Bergen County) (PSC member for litigation against manufacturers of medical devices used in hip replacement surgeries).

- *Oaks, et al. v. Sears Roebuck and Co.,* Case No. 1:15-cv-11318 (U.S.D.C. Northern District of Illinois) (co-lead class counsel for nationwide case alleging consumer fraud against product manufacturer.)

- *Castillo, et al v. Unilever,* Case No. 1:20-cv-06786 (U.S.D.C. Northern District of Illinois) (co-lead counsel for coordinated proceedings against manufacturers of cosmetic products on behalf of customers who developed allergic skin reaction).

- *Ryan v. Straight Arrow Products, Inc.,* 1:21-cv-04485(U.S.D.C. Southern District of New York)(co-lead class counsel for case against manufacturer of cosmetic products on behalf of customers who developed allergic skin reaction.



**ANDREW J. SCIOLLA, ESQ.**

100 S. Broad Street, Suite 1910
Philadelphia, PA 19110
Office: (267) 328-5245
Fax:     (215) 972-1545
andrew@sciollalawfirm.com
www.sciollalawfirm.com

- *Lewakowski v. Unilever*, Case No. 1:21-cv-03276 (U.S.D.C. Northern District of Illinois) (co-lead class counsel for case against manufacturer of cosmetic products on behalf of customers who developed allergic skin reaction).

- *Lattuca v. John Paul Mitchell Systems*, Case No. 1-21-cv-03122 (U.S.D.C. Northern District of Illinois) (co-lead class counsel for case against manufacturer of cosmetic products on behalf of customers who developed allergic skin reaction).

- *Whipple v. Johnson & Johnson*, Case No. 3:21-cv-19830 (U.S.D.C. District of New Jersey) (co-lead class counsel for case against manufacturer of cosmetic products on behalf of customers who developed allergic skin react

- *Vences v. Waterwipes, Inc.*, Case No. 1:23-cv.00619 (U.S.D.C. Norther District of Illinois)(co-lead class counsel for case alleging consumer fraud for product labeling).

# EXHIBIT F

**LITE DePALMA
GREENBERG &
AFANADOR**

## FIRM BIOGRAPHY

## LITE DEPALMA GREENBERG & AFANADOR, LLC

## May 2025

Lite DePalma Greenberg & Afanador, LLC is a general practice law firm, with offices in Newark and Philadelphia. The firm specializes in commercial and complex litigation with a concentration in class action matters in the areas of securities, antitrust, consumer fraud, and insurance sales practices. More detail about the firm and its attorneys appears on its website, www.litedepalma.com.

### Diversity and Inclusiveness: Our Tradition

Lite DePalma Greenberg & Afanador, LLC has a long-standing tradition of recruitment, retention, and advancement of women and minority attorneys. The firm did not attain its diverse team of partners, associates, and staff as a result of a contemporary mission to create diverse workplaces. Long before multiculturalism became the trend, Lite DePalma Greenberg & Afanador, LLC was committed to diversity in the workplace. Having elected its first minority attorney to the partnership over twenty-five years ago, the firm has continually maintained a team of partners, associates, and staff that is representative of various multicultural backgrounds. The firm is committed to the advancement of women and minority attorneys and currently boasts a team comprised of 50% women and/or minority attorneys at the partnership level. We are also committed to staffing cases with a diverse team of seasoned attorneys that are capable of tending to the needs of our clients in today's increasingly diverse global economy. To that end, Lite DePalma Greenberg & Afanador, LLC actively recruits women and minority attorneys. We are immensely proud to have been part of that journey and have witnessed firsthand how this type of trail blazing motivates and inspires our associates.

**LITE DePALMA
GREENBERG &
AFANADOR**

**Community and Leadership: Our Devotion to the Development of the Newark
Community and Minority / Socioeconomically Disadvantaged Groups**

Founded in 1978, our law firm began its practice in Newark, New Jersey and has remained
a Newark resident at all times. As a proud member of the Newark community, Lite DePalma
Greenberg & Afanador, LLC supports its local charitable, educational, cultural, and pro bono legal
institutions. The firm is heavily involved with Newark's educational institutions. The firm has
participated in a summer hiring program that employs minority students from University High
School on a part-time basis in order to provide inner city students with valuable exposure to a law
practice. It also supports Newark's law schools by supporting Seton Hall and Rutgers-Newark,
financially and otherwise. Our attorneys are deeply committed to both schools and regularly
volunteer their time in alumni, moot court, and other programs. In the cultural arena, the firm was
a Founding Sponsor of the New Jersey Performing Arts Center in Newark and a consistent
financial supporter of NJPAC since its inception. Among the pro bono legal institutions that Lite
DePalma Greenberg & Afanador, LLC has actively assisted are Consumers League of New Jersey
and the Center for Auto Safety in Washington, DC. The firm successfully represented both
organizations as amicus curiae in cases before the Supreme Court of New Jersey. Additionally,
several of our attorneys were among the first in New Jersey to handle pro bono appeals in the New
Jersey Appellate Division's Pro Bono Civil Pilot Program and have participated in several pro
bono matters.

**Loyalty: Our Commitment to Family and Personal Relationships**

Lite DePalma Greenberg & Afanador, LLC has long-realized that promoting healthy
family and personal relationships is a key component to building a successful and cohesive
practice. Mindful of the increase in dual income families, the firm strives to create an environment
that is respectful of family obligations. Lite DePalma Greenberg & Afanador, LLC endeavors to

2

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

facilitate flexible work arrangements by offering a fair family leave policy, flex-time, and telecommuting.

### MEMBERS OF THE FIRM

**JOSEPH J. DEPALMA** (Newark Office), the Firm's Managing Member, has a vast breadth of experience in many types of class action cases involving securities, ERISA, antitrust, product liability, and consumer fraud. Mr. DePalma also handles shareholder derivative litigation, commercial litigation, and transactional matters for the firm's corporate clients. He has a Masters Degree in Business Administration and a J.D. degree from Seton Hall University School of Law.

Mr. DePalma has served as Co-Lead Counsel for the State of New Jersey, Division of Investment, as Lead Plaintiff in two prominent class actions that have resulted in significant recoveries: *Reginald Newton v. Tenet Healthcare Corp.,* (Tenet Healthcare Securities Litigation), cv-02-8462-RSWL (C.D. Cal.) ($281.5 million settlement); *In re Motorola Securities Litig.*, Civ. No. 03-C-287 (N.D. Ill.) ($193 million settlement reached three business days before trial).

Mr. DePalma has also played an active role in obtaining settlements in numerous recognized class actions comprising some of the largest settlements in the nation. Included in such cases are: *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) (over $4 billion paid out in largest insurance sales practices settlement ever) (Liaison Counsel); *In re Lucent Technologies Securities Litig.*, Civil Action No. 00cv621(AJL) (D.N.J.), reported opinions, 2003 WL 25488395 (D.N.J. Dec. 15 2003), 2002 WL 32815233 (D.N.J. July 16, 2002), 217 F. Supp. 2d 529 (D.N.J. 2002), 2002 WL 32818345 (D.N.J., May 9, 2002), 221 F. Supp. 2d 463 (D.N.J. 2001), 221 F. Supp. 2d 472 (D.N.J. 2001) (approximate $610 million settlement) (Liaison Counsel); *Galanti v. Goodyear*, Civil Action No. 03-209(SRC) (D.N.J.) ($300 million product liability settlement) (Liaison Counsel); *In re Aremissoft Corp. Securities Litig.,* Civil



Action No. 01-CV-2486 (JAP) (D.N.J.), reported opinion, 210 F.R.D. 109 (D.N.J. 2002) (over

$250 million recovered to date; case is ongoing) (Liaison Counsel); *In re Royal Dutch/Shell*

*Transport Litigation*, Civil Action No. 04-1398 (JWB) (D.N.J.), reported opinions, 404 F. Supp.

2d 605 (D.N.J. 2005), 380 F. Supp. 2d 509 (D.N.J. 2005) ($90 million ERISA settlement, the

largest settlement ever under ERISA) (Liaison Counsel); *P. Schoenfeld Asset Management, LLC*

*v. Cendant Corp.*, Civil Action No. 98-4734(WHW) ($26 million settlement after precedent-

setting decision in same case); *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000)) (Liaison

Counsel); *Steiner v. MedQuist,* Civil Action No. 04-CV-05487-JBS (D.N.J.), reported opinion,

2006 WL 2827740 (D.N.J. Sept. 29, 2006) ($7.75 million) (Liaison Counsel); *In re Tellium*

*Securities Litig.,* No. 02-CV-5878 (FLW) (D.N.J.), reported opinion, 2005 WL 1677467 (D.N.J.

June 30, 2005) ($5.5 million) (Liaison Counsel); and *In re NUI Securities Litig.,* Civil Action No.

02-CV-5220 (MLC) (D.N.J.), reported opinion, 314 F. Supp. 2d 388 (D.N.J. 2004) ($3.5 million)

(liaison counsel).

Mr. DePalma's years of experience also include the following major matters: *In re*

*Computron Software, Inc. Securities Litig.*, Civil Action No. 96-1911 (AJL) (approximate $15

million settlement) (Liaison Counsel); *In re USA Detergents, Inc. Securities Litigation*, Master

File No. 97-2459 (MTB), District of New Jersey ($10 million settlement) (Liaison Counsel); *In*

*re: The Children's Place Securities Litig.*, Master File No. 97-5021 (JCL), (D.N.J.), reported

opinion, 1998 WL 35167284 (D.N.J. Sept. 4, 1998) ($1.7 million settlement) (Liaison Counsel);

*Arthur Fields, et al. v. Biomatrix, Inc., et al.*, Civil Action No. 00-CV-3541 (WGB), (D.N.J.)

($2.45 million settlement) (Liaison Counsel); *In re Horizon Healthcare Services Inc. Data Breach*

*Litigation*, 2:13-cv-7418 (D.N.J.), reported opinion, 846 F.3d 625 (2017) (case settled) (Co-Lead

**LITE DePALMA
GREENBERG &
AFANADOR**

Counsel); and *In re Atlas Mining Securities Litig.*, Civil Action No. 07-428-N-EJL (D. Idaho)
($1.25 million) (Lead Counsel).

      Some of Mr. DePalma's other court approved class action and mass action settlements,
involved product liability, takeover and ERISA matters. In a complex MDL mass action
proceeding involving the illegal harvesting of body parts and the untested surgical implanting of
those parts, Mr. DePalma, along with a team of nationally recognized colleagues, achieved a global
settlement in a case captioned *In re Human Tissue Product Liability Litig.* (D.N.J.). Mr. DePalma
achieved a settlement on behalf of shareholders in tender offer litigation, *In re Alpharma
Shareholder Litigation*, (N.J. Superior Ct.). In a complex ERISA matter involving two appeals to
the Third Circuit, *In re Schering-Plough Corporation ERISA Litigation*, (D.N.J.), Mr. DePalma
obtained a settlement of $8.5 million on behalf of a class of participants in a retirement plan
alleging breaches of fiduciary duties.

      Mr. DePalma is currently involved in and serves in leadership positions in the following
class actions in the District of New Jersey: *In re: American Medical Collection Agency, Inc.
Customer Data Security Breach Litigation*, Docket No. 19-md-2904 (co-lead counsel); *In re
Emisphere Technologies, Inc. et al., Securities Litigation*, Case No. 2:23-cv-20898-SDW-AME
(liaison counsel); *Mendez v. Avis Budget Group, Inc.*, Docket No. 2:2011-cv-06537 (co-lead
counsel, recently settled for $45 million); *BCR Carpentry LLC v. FCA US LLC*, 3:21-cv-19364-
GC-DEA (liaison counsel); *In re: Fragrance Indirect Purchaser Antitrust Litigation*, 2:23-cv-
03249 (D.N.J.) (liaison counsel for indirect purchaser plaintiff class); *Cornish-Adebiyi v. Caesars
Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.) (liaison counsel); *Vascepa Antitrust Litigation
Indirect Purchaser Plaintiffs*, Docket No. 21-12061 (ZNQ)(LHG) (D.N.J.) (executive committee);
*In Re: Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113 (D.N.J.) (liaison counsel);

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

*In re CityMD Data Privacy Litigation*, No. 2:24-cv-06972 (D.N.J.) (co-lead counsel); and *In re Prudential Financial, Inc. Data Breach Litigation*, No. 2:24-cv-06818 (D.N.J.) (liaison counsel).

Mr. DePalma has represented defendants in class action litigation involving prisoners' rights: *Ford v. Smith*, 1:20-cv-18863 (NLH)(AMD) (D.N.J.) and *Brown v. Warren*, 1:20-cv-7907 (NLH)(AMD) (D.N.J.). Mr. DePalma has also successfully represented customers of Showtime and AMC in mass arbitrations.

Mr. DePalma has achieved excellent results for clients in other areas of litigation. Among other things, he won large settlements for a condominium association on construction defect and legal malpractice claims and has successfully handled securities arbitrations as well.

Mr. DePalma has lectured in the areas of class action law and in complex commercial litigation. He has also served as a member of the New Jersey Supreme Court's District Ethics Committee.

Mr. DePalma served on the Board of Visitors of the Seton Hall University School of Law from 2011 to 2022. Mr. DePalma served as co-chair of the law school's Small Firm Committee and was a member of its Diversity Counsel.

Mr. DePalma was named as a New Jersey Super Lawyer in the 2007-2024 issues of *New Jersey Monthly* magazine. He was also named to ALM's 2012 "New Jersey Top Rated Lawyers," listed under "Business & Commercial."

**BRUCE D. GREENBERG** (Newark Office) has served as Co-Lead Counsel, Executive Committee or Steering Committee member, or Liaison Counsel in major antitrust, defective products, consumer fraud, and securities class action cases. He also handles sophisticated appellate, commercial and real estate litigation.

6

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

A number of Mr. Greenberg's class action cases have resulted in significant settlements. Among his federal court class action successes are a settlement worth more than $750 million for a nationwide class in *Varacallo v. Massachusetts Mutual Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) (Co-Lead Counsel), an insurance sales practices case, a $35.75 million nationwide class settlement in *In re STEC Securities Litig.*, No. SACV 09-01304-JVS (MLGx) (Co-Lead Counsel), a securities fraud case, *Cole v. NIBCO, Inc.*, No. 13-7871 (FLW) (TJB) (Co-Lead Counsel), a $43.5 million nationwide settlement in a defective products case, a nationwide consumer settlement worth up to $13 million in *Schwartz v. Avis Rent a Car System, LLC*, Civil Action No. 11-4052 (JLL) (Co-Lead Counsel), a highly valuable nationwide settlement in *In re Samsung DLP Television Class Action Litigation*, Civil Action No. 07-2141 (GEB) (MCA) (Executive Committee), a $9.59 million settlement in *In re N.J. Tax Sale Certificate Antitrust Litig.*, 750 Fed. Appx. 73 (3d Cir. 2018) (Liaison Counsel), settlements totaling over $200 million for a nationwide class in the multidistrict antitrust litigation captioned *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, Civil Action No. 04-5184 (FSH) (D.N.J.) (Liaison Counsel), *Robinson v. Jackson Hewitt, Inc.*, No. 2:19-cv-9066-MEF-SDA (D.N.J.) ("no poach" antitrust case that settled for $10.8 million), and another antitrust class action, *In re Liquid Aluminum Sulfate Antitrust Litigation*, MDL No. 2687, Civil Action No. 16-md-2687 (JLL) (JAD) (District of New Jersey) (Steering Committee and Liaison Counsel), which produced settlements totaling over $90 million for a nationwide class. His efforts as Co-Lead Counsel for certified classes in the United States District Court for the Western District of Pennsylvania (*Zeno v. Ford Motor Co.*, 238 F.R.D. 173 (W.D. Pa. 2006), and 480 F. Supp. 2d 825 (W.D. Pa. 2007)), and in the Superior Court of New Jersey, led to a four-state settlement that afforded full benefit of the bargain relief to consumers in *Pedersen v. Ford Motor Co.*, No. GIC 821797 (Cal. Super Ct.). Mr. Greenberg was also

7

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

instrumental in *In re Motorola Securities Litig.*, Civ. No. 03-C-287 (N.D. Ill.), where Lite DePalma Greenberg & Afanador, LLC, as Co-Lead Counsel, achieved a $193 million settlement just three business days before trial was to begin.

      Mr. Greenberg's New Jersey state court class actions include a settlement valued at $8.6 million for a nationwide class of current and former merchants in *Roma Pizzeria v. Harbortouch f/k/a United Bank Card*, Docket No. HNT-L-637-12 (Co-Lead Counsel); a $100 million settlement for a nationwide consumer class in *Friedman v. Samsung Electronics America, Inc.*, Docket No. BER-L-7250-01 (Liaison Counsel), a comparably sized settlement for a nationwide consumer class in *Summer v. Toshiba America Consumer Products, Inc.*, Docket No. BER-L-7248-01 (Liaison Counsel), another nationwide consumer class settlement in *Barrood v. IBM*, Docket No. MER-L-843-98 (Co-Lead Counsel), which afforded class members full benefit of the bargain relief (Co-Lead Counsel), a $4.9 million settlement in a Fair and Accurate Transactions Act ("FACTA") case, *Baskin v. P.C. Richard & Son, LLC*, Docket No. OCN-L-911-18 (Co-Lead Counsel), a settlement for a New Jersey consumer class worth over $7 million in *Delaney v. Enterprise Rent-A-Car Co.*, Docket No. OCN-L-1160-01 (Co-Lead Counsel), a $4.5 million settlement for a New Jersey consumer class in *DeLima v. Exxon*, Docket No. HUD-L-8969-96 (Co-Lead Counsel), another consumer class settlement worth $1.875 million in *Collins v. Provident Bank*, Docket No. HUD-L-1429-22, and an unprecedented settlement in a class action involving a merger, *Rubin v. Mercer Insurance Group, Inc., et al.*, Docket No. MER-C-102-10 (Co-Liaison Counsel), which afforded stockholders the opportunity to review forward looking financial information of the company, thus allowing shareholders to make a more informed decision concerning the merger.

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

A 1982 graduate of the Columbia University School of Law, Mr. Greenberg clerked for Justice Daniel J. O'Hern of the Supreme Court of New Jersey for the 1982-83 Term. Before joining the firm, Mr. Greenberg was a partner at one of New Jersey's largest law firms.

Mr. Greenberg appears regularly in the appellate courts. He has argued thirteen times in the Supreme Court of New Jersey, three cases in the Third Circuit Court of Appeals, over 75 cases in New Jersey's Appellate Division, and one case in the Colorado Court of Appeals. Over 40 of his cases have resulted in published, precedential opinions, including major decisions on class actions, mass torts, zoning and land use, restrictive employment covenants, real estate brokerage, and other topics.

Among his many other publications, Mr. Greenberg is the author of the chapter entitled "Supreme Court Review" in *New Jersey Appellate Practice Handbook* (New Jersey ICLE), co-author, with Susana Cruz Hodge, of the chapter entitled "Class Action Litigation" in *New Jersey Federal Civil Procedure* (NJLJ Books (1st ed. 1999 and annual supplements)), and author of "Keeping the Flies Out of the Ointment: Restricting Objectors to Class Action Settlements," 84 St. John's L. Rev. 949 (2010). That and other law review articles that he has written have been cited with approval by the Supreme Court of New Jersey, the Appellate Division, and federal and state courts in other jurisdictions. Mr. Greenberg has lectured on class actions for both New Jersey and Pennsylvania CLE, and he delivered the 27th Annual Evangelides Memorial Lecture at Rutgers University's Eagleton Institute on the topic "Class Action Litigation: Who Benefits?" He has served as an expert witness on attorneys' fees in class actions and Chancery litigation and has also spoken on civil trial preparation, appellate practice and other subjects. Mr. Greenberg also writes the New Jersey Appellate Law blog, http://appellatelaw-nj.com, New Jersey's foremost appellate blog, since 2010.

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

Mr. Greenberg belongs to the New Jersey State Bar Association ("NJSBA") and was Chair of the Association's Appellate Practice Committee from 2004-2006.  He is a past Co-Chair of the NJSBA's Class Actions Committee, a position he held from 2008-2016.  From 1991-2006, Mr. Greenberg was a member of the Supreme Court of New Jersey Committee on Character.  He was also one of the founding members, and a past Chair, of the New Jersey Law Firm Group, a consortium of major law firms to advance hiring of minority lawyers.

Mr. Greenberg has been named to the "New Jersey Super Lawyers" list, for "Appellate Practice," in *New Jersey Monthly* magazine every year since 2005, when that list was first published, and has twice been named to the "New Jersey Super Lawyers" Top 100, most recently in 2020.  Mr. Greenberg has been listed in "Best Lawyers in America®" each year since 2019 for "Appellate Practice."  He was also named a Fellow of the American Academy of Appellate Lawyers, one of only four New Jersey lawyers who are so designated. Mr. Greenberg was also listed in ALM's 2012 "New Jersey Top Rated Lawyers," under "Commercial Litigation."  Mr. Greenberg has an "AV" rating from Martindale-Hubbell.

**VICTOR A. AFANADOR** (Newark Office) chairs the litigation and trial practice group for civil and criminal cases. His experience includes private and public entity litigation including but not limited to tort liability defense, employment related defense of CEPA and LAD matters, police related state and federal civil rights defense, condemnation and redevelopment law, complex commercial litigation, and criminal defense. His experience includes trial, oral advocacy and settlement negotiations before the New Jersey Office of Administrative Law, the Superior Court of New Jersey in various vicinages, the Appellate Division, the United States Court for the District of New Jersey, the United States Third Circuit Court of Appeals and the Supreme Court of the United States. In addition, Mr. Afanador served from September 1999 through May of 2005

10

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

as Deputy Director of Law for the City of Perth Amboy. In that capacity, he provided counsel to the Mayor, the City Council, and City department directors on legal matters.

Mr. Afanador has successfully tried to verdict jury and bench trials in a myriad of matters. In addition to his trial work, Mr. Afanador has also applied his investigative skills in the class action area. He interviewed Spanish-speaking employees and prepared a report for the Court as part of the firm's responsibilities as Class Administrator for an employment discrimination class action.

Mr. Afanador clerked for Judges Mathias E. Rodriguez and Frederick P. DeVesa, Superior Court of New Jersey, Law Division Criminal Part, in Middlesex County from 1998-1999.

Mr. Afanador was appointed by the Essex County Executive in September of 2005 to serve as a Commissioner on the Essex County Board of Public Utilities.  He is a member of the Association of the Federal Bar of the State of New Jersey (Immediate Past President), Seton Hall University School of Law Alumni Association (Past President), New Jersey State Bar Association, the Essex County Bar Association, and the Hispanic Bar Association of New Jersey. He was admitted into the American College of Trial Lawyers as a Fellow in 2023. He is also a proud 2003 Graduate of the Leadership Newark Fellowship Program and has served on the African Globe Theatreworks Board of Directors, a professional theater company based in Newark, New Jersey.

Mr. Afanador was designated a Rising Star in  May 2006, May 2007, May 2008, May 2009, May 2010, May 2011, May 2012, and May 2013 issues of *Super Lawyers* and has been selected as a Super Lawyer every year since 2016 through 2024.  He was also named to the "40 Under 40" issue by the New Jersey Law Journal in 2010.

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

**SUSANA CRUZ HODGE** (Newark Office) is a member of Lite DePalma Greenberg &
Afanador, LLC and focuses her practice on class actions. Her primary focus is on product liability
and consumer fraud cases. Ms. Hodge has participated in numerous consumer cases, including
*Cole v. NIBCO, Inc.*, No. 13-CV-07871 (D.N.J.), a case involving defective plumbing piping,
tubing and fixtures that resulted in a nationwide consumer settlement worth $44 million; *Schwartz
v. Avis Rent a Car System, LLC*, No. 11-4052 (D.N.J.), a case involving fraudulent fee charges that
resulted in a nationwide consumer settlement worth up to $13 million; *In re Shop-Vac Marketing
& Sales Practices Litig.*, No. 4:12-MD-2380 (M.D. Pa.), a case involving misrepresentation of the
peak horsepower of wet/dry vacuums that resulted in a nationwide settlement fund valued at $174
million; and *Mendez v. Avis Budget Group, Inc.*, No. 11-cv-6537 (D.N.J.), a case involving the
misrepresentation of toll charges that resulted in a settlement of $45 million on behalf of a
nationwide class of over 10 million consumers.

Recently, Ms. Hodge was appointed co-lead counsel in *In re Plum Baby Food Litigation*,
No. 4:21-cv-00913 (N.D. Cal.), a multi-state class action filed on behalf of purchaser of Plum baby
food products alleged to contain heavy metals and perchlorate. Ms. Hodge was also appointed as
a member of the Executive Committee in *In re Robinhood Outage Litigation,* No. 20-01626-JD
(N.D. Cal.), which was filed on behalf of users of Robinhood's trading platform. Ms. Hodge was
also actively involved in representing plaintiffs in several consumer class actions involving heavy
metals, BPA, and other contaminants and toxins in food, including, *Zeiger v. WellPet LLC*, No.
3:17-cv-04056 (N.D. Cal.), where a class of California dog food purchasers was recently certified.

Ms. Hodge also represents individual parties in general business disputes arising from
breach of contract and fraud, as well as employment-related issues. In her capacity as a commercial
litigator, Ms. Hodge represented a major food and beverage company in recovering millions of

12

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

dollars fraudulently converted in a Ponzi scheme. She has also represented a struggling local business in closing its doors without filing bankruptcy, which involved negotiating settlements with nearly 100 creditors and successfully pursuing claims against various debtors. Ms. Hodge has investigated, negotiated, and litigated claims by subcontractors and material suppliers in a range of construction-related contractual disputes. Ms. Hodge has also filed and defended commercial and residential construction liens, and payment and performance bond surety claims in cases involving public and private construction projects, and represented developers in breach of contract actions.

Ms. Hodge has briefed and argued before the United States Court of Appeals for the Seventh Circuit, the U.S. District Court for the District of New Jersey, and the New Jersey Superior Court. Ms. Hodge has also participated in appeals to the United States Court of Appeals for the Third, Seventh, and Ninth Circuits, as well as to the Appellate Division of the New Jersey Superior Court involving constitutional and employment law, rent control, and commercial leasing issues.

Ms. Hodge was one of the first attorneys in New Jersey to handle pro bono appeals in the New Jersey Appellate Division's Pro Bono Civil Pilot Program and has participated in several pro bono matters. Notably, Ms. Hodge represented an individual in an emergency application to the New Jersey Appellate Division, which led to the client avoiding eviction, and secured a dismissal of a temporary restraining order in another matter that would have imposed automatic prison time for her client.

Ms. Hodge is co-author, with Bruce D. Greenberg, of the chapter entitled "Class Action Litigation" in New Jersey Federal Civil Procedure and has been a panelist in various seminars such as "Significant Developments in Class Actions," hosted yearly by the New Jersey Institute for

13

**LITE DePALMA**
**GREENBERG &**
**≡≡ AFANADOR**

Continuing Legal Education, and "The Evolving Nature of Class Actions," hosted by New Jersey State Bar Association.

Ms. Hodge is a graduate of Boston College (2001) and Boston College Law School (2005). Prior to joining private practice, Ms. Hodge clerked for the Hon. Thomas J. LaConte, Superior Court of New Jersey, Passaic County. She also taught Legal Writing at Seton Hall University Law School to first year law students prior to joining Lite DePalma Greenberg & Afanador, LLC. Prior to attending law school, Ms. Hodge taught Portuguese, English, and math to young students in Rio de Janeiro, Brazil, as part of Projeto Unicom Rocinha, a Brazilian non-profit organization. Ms. Hodge was named as a "Rising Star" in *New Jersey Monthly* magazine from 2014 to 2019 and has since been named to the "New Jersey Super Lawyers" list every year.

## COUNSEL

**STEVEN J. GREENFOGEL** (Philadelphia Office) is Counsel to the firm and is resident in the firm's Philadelphia office. Throughout his over fifty-year career, Mr. Greenfogel has specialized in class action antitrust litigation, including many of the most significant multidistrict class action price fixing cases of modern times.  He has served as Co-Lead Counsel in *In re Chain Link Antitrust Litigation*, Master File CLF-1 (D. Md); *In re Industrial Silicon Antitrust Litigation*, 95-2104 (W.D. Pa) (which he tried to verdict), *In re Isostatic Graphite Antitrust Litigation*, No. 2000-cv-4965 (E.D. Pa); and *Gordon v. Amadeus IT Group, S.A.*, 15-cv-03457-KPF (S.D.N.Y.). Mr. Greenfogel also served as one of the main trial counsel as well as co-chairman discovery in *In re High Pressure Laminates Antitrust Litigation*, No. 00-MD-1368(CLB) (S.D.N.Y.) (tried to verdict) and *In re Carbon Dioxide Antitrust Litigation,* MDL 940 (M.D. Fla) (settled after jury selection). In addition to being Co-Chairman of Discovery in *In re Infant Formula Antitrust Litigation*, Master File No. MDL 878 (N.D. Fla), Mr. Greenfogel served as one of plaintiff's trial

14

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

counsel (settled after jury selection). He has served as a member of Plaintiffs' Executive Committee in numerous cases, including: *In re Municipal Derivatives Antitrust Litigation*, MDL 1950 (S.D.N.Y. 2008); *In re Static Random Access Memory (SRAM) Antitrust Litigation,* cv-1819 (N.D. Cal 2007); and *In re Publication Paper Antitrust Litigation*, MDL 1631 (D. Ct . 2004). Mr. Greenfogel has also played a major role in numerous other multidistrict antitrust class actions, including: *O'Bannon v. National Collegiate Athletic Ass'n, et al.*, 4:09-cv-3329 (N.D. Cal 2009) (member of Plaintiff's trial team and co-chairman of discovery); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 1827 (N.D. Cal 2006); *In re Direct Random Access Memory (DRAM) Antitrust Litigation*, No. 02-cv-01486-OHG (N.D. Cal 2002); *In re NASDAQ Market Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.) (chairman of discovery); *In re Brand Names Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.); *In re Commercial Tissue Antitrust Litigation*, MDL 1189 (N.D. Fla); *In re Infant Formula Antitrust Litigation*, MDL 878 (N.D. Fla); *Cumberland Farms v. Browning Ferris Industries, Inc*., A.A. No. 87-3717; *Superior Beverage/Glass Container Antitrust Litigation*, 89 C 5251 (N.D. Ill.); *In re Chlorine & Caustic Soda Antitrust Litigation*, 86-5428 (E.D. Pa); *In re Records & Tapes Antitrust Litigation*, No. 82 C 7589 (N.D. Ill.); and *In re Broiler Chicken Antitrust Litigation*, No. 18-cv-8637 (N.D. Ga).

Earlier in his career from 1977 to 1980, Mr. Greenfogel served as an Assistant Attorney General in the Commonwealth of Massachusetts and was the first Chief of its Antitrust Division. He was the author of the Commonwealth's Antitrust Law (M.G.L. 93). During that time, he was a panelist at the New England Antitrust Conference in Boston as well as speaking on antitrust matters at various venues in Massachusetts.

Mr. Greenfogel served as a member of the Board of Trustees of Camden County College from 2000 through 2017, having been appointed to that position by Governors Whitman,

1022265.2

**LITE DePALMA**
**GREENBERG &**
**▬▬ AFANADOR**

McGreevy and Corzine. He has been selected fourteen times as one of the Top Attorneys in Pennsylvania by *Philadelphia Magazine* and has an "AV" rating from Martindale Hubbell.

**CATHERINE B. DERENZE** (Newark Office) is Counsel with the firm. Catherine plays a significant role in a diverse range of class action matters at the firm, including data privacy and security, antitrust, and consumer litigation. Representative matters include: *In re Samsung Customer Data Security Breach Litig.*, No. 23-md-3055 (D.N.J.) (appointed liaison counsel); *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, No. 19-md-2904 (D.N.J.) (secured a $6.5 million settlement with one defendant); *Cornish-Adebiyi v. Caesars Entertainment, Inc.*, No. 23-cv-2536 (D.N.J.); *In re Wawa, Inc. Data Security Litig.*, No. 19-cv-6019 (E.D. Pa.) (settlement pending); *In re: Hard Disk Drive Suspension Assemblies Antitrust Litig. ("In re HDD")*, No. 19-md-02918 (N.D. Cal.); *In re: Generic Pharmaceutical Pricing Antitrust Litigation*, No. 16-md-2724 (E.D. Pa.); *In Re: Apple Inc. Smartphone Antitrust Litigation*, No. 2:24-md-03113 (D.N.J.); *Anaya v. Cencora, Inc.*, et al., 2:24-cv-02961 (E.D. Pa.); *In re CityMD Data Privacy Litigation*, No. 2:24-cv-06972 (D.N.J.); *In re Prudential Financial, Inc. Data Breach Litigation*, No. 2:24-cv-06818 (D.N.J.); and *In re Plum Baby Food Litig.*, No. 1:21-cv-2417 (N.D. Cal.).

Ms. Derenze is also developing a burgeoning appellate practice. Notable accomplishments include successfully briefing and arguing before the New Jersey Supreme Court on behalf of amici in *DiFiore v. Pezic*, 254 N.J. 212 (2023).

Ms. Derenze is a graduate of the College of the Holy Cross (2013) and Seton Hall University School of Law (2018). She is a member of the bars of the State of New Jersey and the Federal Bar of New Jersey. Ms. Derenze is also a member of the New Jersey Bar Association and is currently serving for her second year as the co-chair of its Appellate Practice Committee. Before

16

**LITE DePALMA**
**GREENBERG &**
**AFANADOR**

joining LDGA, Ms. Derenze clerked for the Honorable Heidi Willis Currier, J.A.D., of the Appellate Division of the New Jersey Superior Court. Prior to that, she served as an extern to the Honorable Patty Shwartz, of the United States Court of Appeals for the Third Circuit.

In 2023 and 2024, Ms. Derenze spoke on recent trends in class action litigation for the New Jersey Institute for Continuing Legal Education ("NJICLE") and the New Jersey State Bar Convention, and has spoken for NJICLE several times on appellate practice. She was also named as a "Rising Star" for "Appellate Practice" on the 2024 and 2025 "New Jersey Super Lawyers" list.

**GARY S. LIPSHUTZ** (Newark Office) is Counsel with the firm. Mr. Lipshutz joined the firm in 2024 after spending more than two decades with the City of Newark Law Department, where he was First Assistant Corporation Counsel. Mr. Lipshutz has been certified by the New Jersey Supreme Court as a Civil Trial Attorney since 2013 (having been recertified twice, in 2018 and 2023). Mr. Lipshutz has extensive trial and appellate experience in diverse litigated matters, including federal and state civil rights claims, Tort Claim Act, LAD and CEPA, contract, public bidding, and redevelopment matters. Mr. Lipshutz was the City of Newark's lead counsel in connection with the Consent Decree between United States Department of Justice and the City's Department of Public Safety, Division of Police. He also was lead counsel who handled the United States Coast Guard investigation into July 2023 ship fire at Port Newark that caused the death of two Newark firefighters. Mr. Lipshutz is a graduate of the University of Pennsylvania (B.A.) and the University of Florida (J.D.). He is admitted to the New Jersey and Florida bars.

**NICHOLAS R. McCLELLAND** (Newark Office) is Counsel with the firm. He was admitted to the bar in New Jersey in 2018 and is also admitted to practice in the United States District Court for the District of New Jersey. He attended Syracuse University (B.A. in Philosophy

17

LITE DePALMA
GREENBERG &
AFANADOR

and Political Science 2015) and Seton Hall Law School (J.D. 2018). Following law school, Mr. McClelland served as Judicial Law Clerk to the Honorable Alan G. Lesnewich, J.S.C., of the Superior Court of New Jersey, Union County. Prior to joining LDGA, Mr. McClelland was engaged in the practice as a civil litigation associate at a regional law firm based in Monmouth County.

## ASSOCIATES

**ANTHONY ZATKOS** (Newark Office) is an associate with the firm in our Newark office. He was admitted to the bar in New Jersey and the United States District Court for the District of New Jersey in 2002 and the bar in New York in 2003. He is a graduate of Seton Hall University (B.S., Mathematics 1996) and the Seton Hall University School of Law (J.D. 2002).

Early in his legal career, Mr. Zatkos practiced personal injury and civil rights law in New York City, as well as family law in New Jersey. He also served as a contributing writer and editor on The Yudes Family Law Citator, published each year by the New Jersey Institute of Legal Education. Since that time, his focus in practice has been electronic discovery, where Mr. Zatkos has learned the nuances of this growing field. With this experience, he has worked on cases covering a myriad of matters, including pharmaceutical patents, mergers, due diligence, residential mortgage-backed securities, anti-trust, bankruptcy, fraud, contract, and, most recently, class action. Prior to joining the firm, Mr. Zatkos worked directly with firm members on several class-action matters.

**NICOLE A. FLYNN** (Newark Office) is an associate with the firm in our Newark office. She was admitted to the bar in New Jersey in 2023. Ms. Flynn returned to LDGA in September of 2023 after working as a law clerk at the firm in the summer of 2022. During law school, Ms. Flynn worked as a legal intern for Advocates for Children of New Jersey in Newark. She graduated from

**LITE DEPALMA**
**GREENBERG &**
**≡AFANADOR**

Rutgers University with a Bachelor's Degree in History and a Master's Degree in Education. Ms. Flynn earned her Juris Doctor from Seton Hall School of Law, where she was in the part-time program. While in law school, she taught full-time at a middle school in Bergen County.

**COLLIN J. SCHAFFHAUSER** (Newark Office) is an associate with the firm in our Newark office. He was admitted to the bar in New Jersey in 2023. Mr. Schaffhauser graduated from Rutgers University New Brunswick in 2016 with a Bachelor's degree in Political Science and Minors in History and German. Prior to law school, Mr. Schaffhauser worked as a paralegal handling matters related to debtors' and creditors' rights. Mr. Schaffhauser then obtained his J.D. from Rutgers Law School Newark in 2023.

While in law school, Mr. Schaffhauser was a member of the Rutgers Moot Court Board, the Rutgers Journal of Law and Public Policy, and the National Appellate Advocacy Team. In these endeavors, Mr. Schaffhauser argued before the Honorable Kevin McNulty (U.S.D.J.) and won the 2022 Nathan Baker Mock Trial Competition; wrote a note, "A Restraint of Speech as a Restraint of Trade: How Rediscovering Antitrust's Equitable Origins and Evolution Can Help Protect America's Democracy and Economy," published in the Journal of Law and Public Policy in August 2024; and won the second-best brief and fourth-best oralist awards in the 2023 Touro Law – Law & Religion Appellate Competition. Mr. Schaffhauser also worked at a civil litigation firm during law school and handled contract, employment, and personal injury cases, conducting legal research and drafting legal documents for state and federal courts at both the trial- and appellate-level.

Prior to joining LDGA, Mr. Schaffhauser served as a judicial law clerk to the Honorable Maritza Berdote Byrne, J.A.D., of the Appellate Division of New Jersey Superior Court. Outside of LDGA, Mr. Schaffhauser coaches for the Rutgers Law School Newark National Appellate

19

**LITE DePALMA
GREENBERG &
AFANADOR**

Advocacy Team and helped coach the winners of the 2024 Touro Law – Law & Religion Appellate Advocacy competition.

**ERIN M. McNAMARA** (Newark Office) is an associate with the firm in our Newark office. She was admitted to the bar in New Jersey in 2023. Ms. McNamara graduated from Boston College in 2020 with Bachelor's degrees in English and Psychology. She then obtained her J.D. from Seton Hall Law School in 2023, where she was a Chancellor Scholarship recipient. During law school, she served as a Mock Trial Board Member and worked as a law clerk at a Plaintiff's personal injury firm in Chatham, New Jersey. Prior to joining LDGA, Ms. McNamara served as a Judicial Law Clerk to the Honorable Rosemary E. Ramsay, P.J. Cv. in the Morris County Superior Court, Civil Division.